UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED BY _____ D.C.

MAY 09 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

**UNITED STATES OF AMERICA**,

Plaintiff,

vs.

**THEODORE FARNSWORTH and J. MITCHELL LOWE**,

Defendants.

Case No.: 22-cr-20521-RNS

<u>**PETITION FOR LEAVE OF COURT TO FILE AMICUS BRIEF, AND PROPOSED AMICUS BRIEF**</u>

Shadwrick Vick, Community Organizer of
www.BBIGfamily.com
Amicus Curiae, *In Pro Per*
305 Trilith Pkwy Ste 300 #1660
Fayetteville, GA, 30214
Telephone: (801)-755-9966

**TO THE HONORABLE ROBERT N. SCOLA JR. JUDGE OF THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA, AND TO THE UNITED STATES ATTORNEY AND TO HIS ASSISTANT UNITED STATES ATTORNEYS, AND TO THE DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:**

The undersigned is a shareholder of common stock in Vinco Ventures, Inc., a Nevada Corporation (herein, BBIG), and the community organizer of www.bbigfamily.com, which has **1,570** shareholders (members) who collectively (as of said date) own **47,816,302** shares of common stock in BBIG, and the undersigned hereby requests the permission of this Court to file this *Amicus Curiae* brief concerning the impact on stock market investors due to the terms of Bond release for Defendant Theodore Farnsworth based upon the past, present and future actions of defendant Farnsworth, and of his surety Roderick Vanderbilt.

Mr. Vanderbilt is the 'domestic partner' and business partner of Defendant Farnsworth and at the same time, he serves as the Chairman of the Board of Vinco Ventures, Inc.

The bond conditions in the above-captioned case (specifically page 7, paragraph 3 second clause) give Defendant Farnsworth court approved license to continue to engage in Securities fraud and wire fraud on a scale that is much larger than that of Helios and Matheson Analytics and its subsidiary, MoviePass (herein HMNY). The average retail shareholder has experienced a loss on their investment of 98% since defendant Farnsworth and Mr. Vanderbilt gained control of Vinco Ventures in October 2021. During this time the company has seen more than one billion dollars in shareholder capital raised evaporate to $1.5 million in unrestricted cash.

Defendant Farnsworth is utilizing many of the same tactics he used with HMNY to commit securities fraud with BBIG, though doing on a scale that is significantly more egregious and devastating to shareholders. Moreover, most of

the co-conspirators are identical and, as detailed herein, actively working in tandem as of the date of this petition to defraud investors for financial gain.

Page 7, paragraph 3 of that document which is entitled 'Additional Special Conditions of Bond' states that:

> Mr. Farnsworth is prohibited from the sale, offering, or promotion of any securities, including equity, debt, or hybrid securities, without the permission of the government or Pretrial Services, **except for any securities of, or relating to, (a) Zash Global Media, Vinco Ventures, Inc. or Icon Publishing, or any affiliates or subsidiaries of these entities, or (b) any transactions relating to or involving Zash Global Media, Vinco Ventures, Inc. or Icon Publishing, or any affiliates or subsidiaries of these entities.**

Petitioner believes the Government was unaware Defendant Farnsworth is presently engaged in Securities and wire fraud (identical to that for which he is currently being prosecuted, as well as also committing the crimes of 'structuring' per 26 U.S.C. § 60501 and 31 U.S.C. § 5324, which additional charges might also be applicable to the above-captioned case) through at least four business entities: **Zash Global Media, ZVV, Vinco Ventures, Inc. and Icon Publishing. The current securities and wire fraud of Defendant Farnsworth (and his co-conspirators, including his 'life partner' and 'business partner' Roderick Vanderbilt who is the surety on the bond in the above-captioned case, and who is also the Chairman of the Board of Directors at Vinco, dwarfs the securities fraud and wire fraud (and possible tax fraud) committed in** HMNY.

Thus far, Defendant Farnsworth's attorneys successfully deceived three entities: the United States attorney, the United States Probation Department, and this honorable court into writing into his Bond release a court endorsement for Defendant Farnsworth to commit more and more extensive securities and wire fraud crimes while under the watchful eye of this court, pretrial release, and that of the United States Attorney's office.

## **ARGUMENT**

### I.

### SECURITES FRAUD & WIRE FRAUD DEFENDANTS SHOULD NOT HAVE BOND CONDITIONS PERMITTING COMMISSION OF IDENTICAL CRIMES UTILIZING SAME *MODUS OPERANDI* & SAME CO-CONSPIRATORS

Defendant Farnsworth is charged by felony indictment in Federal Court with one count of Securities Fraud and two counts of Wire Fraud. Defendant Farnsworth has a long history of operating in the corporate world using LLC's, Partnerships, and other business entities in order to commit fraud by operating publicly held companies and driving them into financial disaster and bankruptcy while pilfering all the cash and other valuable assets.

The United States attorney, the United States Probation Department, and this honorable court recognized their duty to take precautionary measures to protect the public from Defendant Farnsworth and his criminal partners.

One of those criminal partners (Roderick Vanderbilt) is also Defendant Farnsworth's 'domestic partner' as well as business partner on a number of LLCs and corporations. Mr. Vanderbilt is Chairman of the Board of Vinco Ventures and signing off on deals on behalf of Vinco with Defendant Farnsworth, Zash and Icon Publishing. He is also a key figure with power and authority of assets in Vinco Ventures, a publicly traded company, that Defendant Farnsworth has targeted for fraud and has actively pursued that criminal enterprise for the past several years, and his grand plan is rapidly approaching completion, all under the watchful eye of this honorable court.

Defendant Farnsworth should have his Bond revoked, and he should be remanded and held pending trial or change of plea to guilty. He should be precluded from transacting any business in relation to Zash Global Media, ZVV, Vinco Ventures, Inc. and Icon Publishing. He should be ordered to have NO CONTACT with Roderick Vanderbilt (who is intimately involved in at least two or three of the above companies) by internet, email, text, voice chat, or even hard copy mail through USPO,

FEDEX, UPS, or any other hard copy delivery service. The same order should cover all board members, including Lisa King, Brian Hart, Jesse Law and Richard Levychin (board members of Vinco Ventures who are collaborating with and approving deals with Farnsworth).

On April 11, 2023, a Civil Lawsuit was filed against Defendant Theodore Farnsworth in Nevada State Court, Case number A-23-868781-B, *Vick, et. al, v. Farnsworth*. The lawsuit alleges that Defendant Theodore Farnsworth is committing crimes (including securities fraud) in connection with a stock that trades under the symbol BBIG (and TYDE). I, Shadwrick J. Vick am one of three Plaintiffs in this case. Farnsworth refused to appear in an emergency hearing in Nevada Court on Friday April 21, 2023 according to his lawyer, due to an "emergency dental procedure".

On April 14, 2023, another Civil Lawsuit was filed in Nevada State Court, Case number A-23-868781-C, *Ma & Butta, et. al, v. Farnsworth*. The lawsuit alleges that Defendant Theodore Farnsworth is committing crimes (including securities fraud) in connection with a stock that trades under the symbol BBIG (and TYDE).

Prior to these two cases, on August 3, 2022, the first Civil Lawsuit was filed against Defendant Theodore Farnsworth: Case number A-22-856404-B, Vinco Ventures v. Theodore Farnsworth. The lawsuit alleges that Defendant Theodore Farnsworth is committing crimes (including securities fraud) in connection with a stock that trades under the symbol BBIG (and TYDE).

On November 17, 2022, Defendant Theodore Farnsworth signed Bond release conditions, which included 'Additional Special Conditions of Bond' on page 7.

Page 7, paragraph 3 of that document which is entitled 'Additional Special Conditions of Bond' states that:

> Mr. Farnsworth is prohibited from the sale, offering, or promotion of any securities, including equity, debt, or hybrid securities, without the permission of the government or Pretrial Services, **except for any securities of, or relating to, (a) Zash Global Media, Vinco Ventures, Inc. or Icon Publishing, or any affiliates or subsidiaries of these entities, or (b) any transactions relating to or involving Zash Global Media, Vinco Ventures, Inc. or Icon Publishing, or any affiliates or subsidiaries of these entities.**

The first part of the above paragraph would go a long way toward insuring that the general public and the investing public will be protected from the possibility of the defendant committing new crimes against more victims. But the highlighted second portion starting with the word 'except' creates an exception that literally eliminates the rule. This is so because each of the companies that are exempted from the trading ban are the very business entities defendant Theodore Farnsworth is currently operating in order to commit newer financial crimes of a larger magnitude than that for which defendant Farnsworth is currently under indictment and out on bond.

Most likely Defendant Farnsworth and his lawyers performed exceptional lawyering to hoodwink the United States Attorney's Office and the United States Probation Office into taking Defendant (a con man) at his word that the companies exempted would not be used for nefarious purposes.

But Defendant Farnsworth is no ordinary criminal. He is a highly sophisticated white collar criminal specializing in creating companies that are taken public and designed to fail, but not before he and his partners in crime steal all the assets and money of said companies. He uses a very complex technique called 'Warrant Cascade', *aka* 'Warrant Spiral'.[1]

Petitioner feels that this court would be very interested in learning that through defense manipulation and prosecution and probation office lack of due diligence, the defendant has succeeded in getting this honorable court to literally place its US stamp of government approval upon his current crimes by stating in writing that he is allowed to conduct business with these entities.

---

[1] A warrant spiral, also known as a warrant cascade, is an investment strategy that involves the buying and selling of warrants to profit from price discrepancies between the warrants and their underlying assets, such as stocks or bonds. Warrants are financial instruments that give the holder the right, but not the obligation, to buy or sell the underlying asset at a specific price (strike price) before a certain expiration date. The warrant spiral strategy typically involves the following steps: Identifying Discrepancies: The investor identifies a discrepancy between the price of a warrant and the price of its underlying asset. For example, the warrant may be trading at a discount to its intrinsic value, which is the difference between the underlying asset's current market price and the warrant's strike price.

For a good explanation of how Defendant Farnsworth's criminal plan with the companies exempted in paragraph 3 work see the case we filed in Nevada 8th judicial court.

Also referenced are the declarations of shareholders Christopher Muntz, Mamadou Coulibaly, Shadwrick Vick, Michael Miziker, Christopher Sparacio and Austin Gilmore. Petitioner was one of three pro per plaintiffs in case number A-23-868781-B, and pleadings from that case and Exhibits "1", "2", "3", "4", "5" and "6", are available upon request or at the following link:

https://www.dropbox.com/sh/gtn8xefag2ddo9r/AAAcEsX7LDZjq1b601BIO8WMa?dl=0

Petitioner is confident that once this court is made aware of these facts that it may wish to contact the Honorable Timothy C. Williams, and Nancy L. Allf, Judges presiding in the Eighth Judicial District Court of the State of Nevada, to discuss the evidence of securities fraud, wire fraud crimes that have thus far been presented in his courthouse in three separate but related cases, this court will recognize the urgent need to have the United States Marshal pick the Defendant up and bring him to court so that the court can revoke his bond and remand him to the nearest MDC pending trial and sentencing.

According to the bond Farnsworth was required to turn over his passport and limited geographically to his US travels. Upon information and belief, it is alleged Farnsworth may have traveled outside of the approved locations up to and including Israel.

## II.
## THEODORE FARNSWORTH'S MONEY-MAKING SCHEME

1. Theodore Farnsworth is a co-founder of private company Zash Global Media ("Zash"), which is entangled through numerous connections with the Company such as joint ventures, co-investments, loans, payments, and other ties, which amount to a scheme to defraud the public Company shareholder investors as explained in more detail herein.

2. This is not Theodore Farnsworth's first foray into publicly financing his private company. Mr. Farnsworth masterminded a similar scheme with regard to HMNY (a publicly traded company), which led to its stock price eventually dropping all the way to zero and HMNY declaring bankruptcy. Mr. Farnsworth has been charged

with crimes against the public related to his role in the MoviePass failure. (United States v. Theodore Farnsworth and J. Michell Lowe | CRIMINAL-VNS | Department of Justice).

3. Prior to his role at HMNY, Theodore Farnsworth merged private company Venture Beverage with Red Carpet Entertainment to form the Purple Beverage Company (PPBV) and became CEO (https://www.sec.gov/Archives/edgar/data/1178513/000114420407067434/v097109_8k.htm). Among his first actions as CEO Mr. Farnsworth entered into a promissory note for $1M with GCQ Consultants of which Barry Honig was the President (https://www.sec.gov/Archives/edgar/data/1178513/000114420408015911/v107232_8k.htm). In 2018 Barry Honig was charged by the SEC of leading a group of prolific South Florida-based microcap fraudsters to manipulate the share price of the stock of three companies in classic pump-and-dump schemes (SEC.gov | SEC Charges Microcap Fraudsters for Roles in Lucrative Market Manipulation Schemes).

4. On April 11, 2019 investigative journalist, Teri Buhl, published a report titled: "Hudson Bay Capital tied to Barry Honig Pump and Dump Ring : MabVax $MBVX." (Hudson Bay Capital tied to Barry Honig Pump and Dump Ring : MabVax $MBVX (teribuhl.com). The report states, "[i]n a lawsuit filed in Superior Court of California this week, MabVax Therapeutics Holdings details how New York-based Hudson Bay Capital played a pivotal role in inducing the company to go public via a reverse merger so that Barry Honig and his crew could take control of the board and manipulate the stock." Theodore Farnsworth has a long-standing association with Hudson Bay Capital. They were a significant investor and financier for MoviePass. More recently, they have primarily financed Vinco Ventures through convertible notes and warrant exercise agreements.

5. Farnsworth's money-making scheme is as follows. Farnsworth creates a private shell company such as private company with the intent to merge the shell company with a public company. Shell company takes control of the Board of Directors of the public company. Public companies establish financing with Farnsworth's

associates (e.g., Hudson Bay Capital) in the form of notes and warrants to generate capital. Farnsworth creates fake businesses and/or assets and fraudulent agreements to siphon public company's cash to his private company through loans that will never be repaid or by undeserved transaction fees such as "finder fees". Farnsworth's financier associates pump the price of the stock and execute their warrants/notes for large profits while creating mass dilution of the outstanding stock of the public company. Farnsworth gets paid in spades by the scheme, and the financiers get paid, but the common shareholders of the public company suffer massive losses at Farnsworth's hands.

6. In the present case, Farnsworth created private shell company Zash Global Media with the intent to merge with public company Vinco. Zash has taken control of the Board of Directors of Vinco by placing Vanderbilt as chairman of the board, as well as Vinco board member Lisa King who is former CEO of Zash. Current Vinco board members Jesse Law and Brian Hart were placed on the Board by Lisa King and Rod Vanderbilt following the resignation of the 3 remaining directors. appointed Both Hart and Law had prior association and business relations with Farnsworth as they were hired as Zash managers on July 28, 2022. By controlling 4 out of the 5 board of director seats, Farnsworth has no roadblocks to executing deals that favor him.

7. The Company's court-appointed CEO Ross Miller left the Company on Dec 15, 2022 and the Company did not replace him with a new CEO until Apr 20, 2022, causing Vanderbilt to run Vinco as the Executive Chairman during that time. While Vanderbilt was Executive Chairman, Vinco established financing with Farnsworth's associates at Hudson Bay Capital, 5NL and other hedge funds in the form of notes and warrants to generate capital.

8. Farnsworth has created shell businesses and assets in Zash, Love is Blurred (LIB), and Icon Publishing. These shell businesses siphon Vinco's cash to Farnsworth through loans that will never be repaid or by undeserved transaction fees, such as a finder's fee for bringing asset AdRizer to Vinco. Hudson Bay Capital and the other financiers pump the price through stock market manipulation and execute their warrants and notes for large profit while creating massive dilution of the

outstanding common stock, thereby destroying billions of dollars of shareholder value over the last two years.

9. Now that Zash has seemingly exhausted its ability to feign value to the company, it appears Farnsworth is attempting to execute the same scheme to defraud investors with Icon Publishing through its new joint venture with Vinco Ventures, VVIP. As part of this arrangement, Vinco Ventures along with Icon Publishing will be acquiring the National Enquirer, Globe, and National Examiner from a360 Media. This requires shareholder approval in order to complete the transaction. It is unclear at this point how this financial agreement benefits Farnsworth and Vinco, and how much consideration Vinco is actually giving up unfairly, as we have seen with prior deals.

### III.

### VINCO'S UNLAWFUL ISSUANCE OF PREFERRED SHARES TO OFFSET THE POWER OF THE RETAIL SHAREHOLDER VOTE

10. On October 14, 2022, Vinco filed an amendment to its Articles of Incorporation to reallocate its previously authorized 250 million shares of stock as 245 million shares of Common Stock and 5 million shares of Preferred Stock.

11. On October 20, 2022, an SEC form 8k was filed by the Company (Exhibit 1). A copy of the Certificate of Amendment is attached hereto and incorporated herein as (Exhibit 2) and (Exhibit 3).

12. On November 17, 2022, the Company filed an amendment to its Articles of Incorporation to reallocate its previously authorized 250 million shares of stock as 249 million shares of Common Stock and 1 million shares of Preferred Stock. No filing was done with the SEC to report the amendment.

13. The Company filed an amendment to its Articles of Incorporation Pursuant to Nevada Revised Statutes (NRS) 78.380 as shown in (Exhibit 4). NRS 78.380 only allows "At least two-thirds of the incorporators or of the board of directors of any corporation to amend the articles of incorporation", if no voting stock of the corporation has been issued.

14. On May 23, 2022, there were 210,590,593 shares for the registrant's common stock outstanding. A copy of Form 10-Q is attached hereto and incorporated herein

as (Exhibit 5).

15. As the signer of the Certificate of Amendment, Roderick Vanderbilt, chairman of Vinco Ventures, Inc. board of directors knew or should have known that shares of common stock were already issued as of October 14, 2022. Roderick Vanderbilt signed the Certificate of Amendment affirmatively declaring that, as of the date of the Certificate, no stock of the corporation had been issued.  As indicated in Paragraph 12 herein, stock of the corporation had in fact been issued, thus making Vanderbilt's declaration false and misleading to shareholders.

16. On February 5, 2023, the Company entered into a Securities Purchase Agreement with unidentified investors for the purchase of a $1,500,000 principal amount convertible note, a $10,000,000 principal amount convertible note and shares of Series A perpetual non-convertible preferred stock of the Company designated as Series A Preferred Stock. The holders of each share of Series A Preferred Stock were deemed to have the right to vote, in an amount equal to one percent (1%) of the total voting power of then-outstanding shares of Common Stock of the Company entitled to vote in such class.

17. The Series "A" Preferred Stock has the potential of granting up to 50% of total voting power to unidentified investors, which would effectively offset the voting power of retail common stockholders.  A copy of the 8K is attached hereto and incorporated herein as (Exhibit 6) and the CERTIFICATE OF DESIGNATION OF SERIES A NON-CONVERTIBLE PREFERRED STOCK OF VINCO VENTURES, INC. (Exhibit 18).

18. By creating Series "A" Preferred Stock, each share of which carries voting power of 1% of the outstanding shares, Vinco's Board appears to intend to dilute shareholders voting power without submitting itself to the rules and law governing the amendment as shown in (Exhibit 3) and (Exhibit 6) and (Exhibit 18).

19. The Series "A" Preferred Stock referenced in Paragraphs 17-19 herein is not the first instance wherein Vinco's board of directors has attempted to authorize preferred stock shares without seeking legally required shareholder approval.  On March 25, 2020, Edison Nation, Inc. (which was the former name of Vinco Ventures Inc.) filed a certificate of amendment to the Company's articles of

19. incorporation with the Secretary of State of the State of Nevada in order to: (i) increase the number of shares of the Company's authorized preferred stock, par value $0.001 per share, from 0 shares to 30,000,000 shares of preferred stock. A copy of the 8K is attached hereto and incorporated herein as (Exhibit 7), (Exhibit 8) and (Exhibit 9).
20. On September 7, 2021, Vinco filed a Certificate of Correction to cancel the previous filing on the date of March 25, 2020. A copy of the Certificate of Correction is attached hereto and incorporated herein as (Exhibit 10).
21. On May 27, 2022, Vinco invited the shareholders to an annual meeting to be held on July 1, 2022, with the proposals. (Exhibit 11).  The Def14-a for the expected annual meeting indicated that Nevada law requires approval from shareholders. Hence, Vanderbilt and the Board were aware of this required approval.
22. The annual meeting announced for July 1, 2022, was cancelled, and no annual meeting was held in 2022.

## IV.

## FARNSWORTH'S RECENT FAILURES LEADING PUBLIC COMPANIES AND INVESTIGATIONS BY FEDERAL REGULATORS

23. As indicated in Vinco Ventures, Inc. v. Theodore Farnsworth *et al.*, Nevada Supreme Ct. CASE NO: A-22-856404-B, Page 6-8 #24-29 (Exhibit 14):
24. "From January 2017 through September 2019, Farnsworth served as Chairman of the Board and Chief Executive Officer of Helios and Matheson Analytics Inc. ("Helios"), a former Nasdaq listed and publicly traded company."
25. In December 2017, Helios, which was operating under Farnsworth's control, acquired a controlling interest in MoviePass, Inc. ("MoviePass"). Farnsworth then became a director for MoviePass until September 2019, when MoviePass ceased operations."
26. "Helios and the Company are similar in that both companies owned a major subsidiary upon which virtually all of its operations are based."
27. "On January 28, 2020, after suffering over $150 million in losses under Farnsworth's control, Helios filed for Chapter 7 Bankruptcy."
28. "On June 7, 2021, the Federal Trade Commission (the "FTC") filed a complaint

against MoviePass, Helios, Farnsworth and another officer of MoviePass whereby the FTC alleged that, among other things, MoviePass, Helios, Farnsworth and the other officer deceptively marketed MoviePass services and employed tactics to prevent subscribers from using the MoviePass service as advertised."

29. "On October 1, 2021, the FTC, Farnsworth and the other defendants finalized a settlement of the FTC's allegations. Pursuant to Farnsworth's settlement with the FTC, Farnsworth is barred for twenty (20) years from, among other things, misrepresenting his business and security practices and collecting or sharing consumers' personal information without first implementing stringent safeguards and controls."

30. Due to the conduct described in Paragraph 24, the Company has notified the FTC, SEC and Nasdaq regarding potential violations of the FTC settlement order and other applicable laws, rules and regulations.

## V.

### INHERENT CONFLICT OF INTEREST CREATED FARNSWORTH'S LONGSTANDING PERSONAL RELATIONSHIP (both as 'life partner' and as business associate) WITH VANDERBILT

31. As discussed in the pleadings of *Vinco v. Farnsworth, et al.*, CASE NO: A-22-856404-B Page 6-8 #30-36 (Exhibit 14):

32. "Upon information and belief, Vanderbilt and Farnsworth have over a twenty-year personal and business relationship."

33. "Upon information and belief, Farnsworth and Vanderbilt share common property, one appears as trustee on the other's trust documents, and the two have been directly involved in various business ventures over the years, including MoviePass."

34. "From October 2017 to September 2019, Vanderbilt served as Brand Manager of MoviePass while Farnsworth was in control of MoviePass. Vanderbilt's former position with MoviePass is the same position he held with the Company until he was terminated on July 24, 2022."

35. "Vanderbilt and Farnsworth also co-founded ZASH Global Media and Entertainment Corporation ("ZASH") together, and Vanderbilt served as ZASH's

Business Development Manager and President from January 2021 until October 2021."

36. "From June 2021 to December 2021, Vanderbilt also served as one of ZASH's appointees on the board of managers of ZVV Media Partners, LLC ("ZVV"), a joint venture between the Company and ZASH."
37. "Vanderbilt also currently serves as the President of Farwest Haiti Mission, a nonprofit organization that he co-founded with Farnsworth in 2007."
38. "These are just a few of the most recent business ventures in which Farnsworth and Vanderbilt are involved and show they have a long history together."
39. Vanderbilt and Farnsworth co-founded ZASH Global Media and Entertainment. (Exhibit 15)
40. As shown on the July 8, 2022, 8k signed by Lisa King (then CEO) of Vinco Ventures, Inc., Vanderbilt was Co-Founder of Zash, served as Zash President, and was and is Vinco's Chairman of the board. (Exhibit 17)
41. The July 8, 2022 8k states:
42. "Vanderbilt, co-founded ZASH and served as the President of ZASH, and has a pre-existing personal and business relationship with Mr. Farnsworth, who is the controlling shareholder of Zash."
43. "Vanderbilt was the original signer on the incorporation of Zash in Florida." (Exhibit 17)
44. When Farnsworth was released on bond on November 17, 2022, by the court in United States v. Theodore Farnsworth and J. Michell Lowe, Court Docket No.: 22-20521-CR, Vanderbilt was the signer of the bond, describing his relationship between the two as "partner". (Exhibit 16)
45. On January 24, 2021, ZVV MEDIA PARTNERS, LLC ("ZVV") was incorporated with the Nevada Secretary of State with the officers of the company being Roderick Vanderbilt, Ted Farnsworth, Brian McFadden and Brett Vroman. A copy of the entity information is attached hereto and incorporated herein as Exhibit 13.
46. On May 28, 2021, ZVV was converted to a joint venture between Zash and Vinco Ventures, Inc. with the initial Vinco Managers of the joint venture ZVV being Chris Ferguson and Brett Vroman, and the initial ZASH Managers of the joint venture

ZVV being Theodore Farnsworth, Roderick Vanderbilt, and Lisa King. A copy of the Amendment Agreement is attached hereto and incorporated herein as Exhibit

47. As shown in Schedule A of the Amendment Agreement (Exhibit 13), the initial unreturned capital of Vinco Ventures, Inc., was $125,000,000 with a membership interest of 50%. Zash contributed an amount equal to the average of the "low" and the "high" "Equity Value" allocated to ZASH with respect to Lomotif Private Limited which equals a value of $338 million for the Zash Initial Unreturned Capital Account as set forth in the Fairness Opinion of Gemini Valuation Services dated as of March 28, 2020 with a membership interest of 50%.

48. As indicated in ARTICLE VIII of the "SECOND AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT OF ZVV MEDIA PARTNERS, LLC" (available at https://www.sec.gov/Archives/edgar/data/1717556/000149315221017599/ex10-7.htm), the distribution by the company members was done as follows;

49. First, to the Members, pro rata in proportion to their respective Unreturned Capital, until the Unreturned Capital of each Member is reduced to zero; and

50. Thereafter, to the Members pro rata on the basis of 75% to the ZASH Member and 25% to the Vinco Member.

51. On July 19, 2021, ZASH, Lomotif, the Lomotif Selling Shareholders and ZVV entered into a Deed of Variation and Supplement whereby, among other things, ZASH novated all of its rights and obligations under the Lomotif SPA to ZVV and ZVV assumed all of ZASH's rights and obligations under the Lomotif SPA. On July 25, 2021, ZVV completed the acquisition of an 80% equity ownership interest in Lomotif on a fully diluted basis for a total purchase price of $109,765,000.

52. The deed of variation allowed Zash to transfer the cost of buying Lomotif to Vinco Ventures, Inc., its also allowed Zash to enter in a joint venture with Vinco Ventures, Inc. with a 50% membership and a 75% financial interest without having to invest any capital.

53. As of June 30, 2022, Vinco Ventures, Inc. has loaned $19,500,250 to ZASH under multiple financings, $18,451,250 of which is outstanding. The interest rates on the notes are 3% or 6% per annum. The loans are due in 2023 with $10,000,000

classified as current and $8,451,250 classified as non-current. The purpose of the loans is to engage in the acquisition, development and production of consumer facing content and related activities.

54. On December 19, 2022, Vinco Ventures, Inc. entered into a material definitive agreement to complete the purchase of the membership interests ("Membership Interests") in ZVV Media Partners from ZASH Global Media. The purchase price shall be (a) 10 shares of Vinco Ventures, Inc.'s Series B Preferred Stock (which shall be convertible into 144 million common shares of ZVV Media Partners, for which issuance will be subject to Nasdaq rules) and for which a Certificate of Designation was to be filed in the State of Nevada before December 21, 2022 (and will be issued in the near future), was subject to approval of both ZVV Media Partners and ZASH Global Media and compliance with all Nasdaq and SEC compliance ("Purchase Equity"), and (b) the deemed satisfaction of all outstanding indebtedness and other obligations owing from ZASH Global Media to ZVV Media Partners or the ZVV Media Partners, including, without limitation, pursuant to (i) the Promissory Note issued by ZASH Global Media to ZVV Media Partners dated February 18, 2021 in the original principal amount of $5,000,000, and (ii) the Secured Promissory Note issued by ZASH Global Media to Vinco Ventures, Inc. dated June 29, 2022 in the original principal amount of $56,955,168. Vinco Ventures, Inc.

55. Vinco, and specifically Defendant Theodore Farnsworth 'pumped' the stock dividend of the Vinco spin-off TYDE (now OCTO) which offered a 1 for 10 dividend in the (then prospectively new) publicly traded company Cryptyde (TYDE).

56. When the dividend was paid out, the options chain was married to BBIG, the Share Price of BBIG was adjusted downward by 40% and 'main street' retail traders were unable to sell their shares which were entered at a basis of approximately $17 per share. But Institutions were able to sell, and they did sell. The price plummeted to $3 before main street retailers could sell a single share.

57. TYDE share price did nothing but drop until it was well below the $1 threshold and as a result it reverse split.

58. The vote to reverse split was manipulated the same as the vote to reverse split

has been done on BBIG.

59. Since the split, the scheme of warrant cascade (see footnote 1) has resulted in continued decline as the company heads back below the $1 threshold.

60. Petitioner believes that TYDE was a securities fraud manipulation which also violated wire fraud laws and that it was used for at least two reasons, first to dramatically reduce BBIG share price in one day, two, to hide short positions and help Short hedge funds like Hudson Bay avoid being forced to buy shares to close naked short positions, and finally, Petitioner believes TYDE was used as a BETA test for BBIG securities and wire fraud techniques that have recently been utilized and for actions about to happen.

## VI.
## POSSIBLE EVIDENCE OF VIOLATION OF CRIMINAL STRUCTURING (MONEY LAUNDERING) LAWS

61. Defendant Theodore Farnsworth and his 'partner' Roderick Vanderbilt (unindicted co-defendant in MoviePass, as well as surety to the bond in the above-captioned case, are part of a nonprofit for many years known as Farwest Haiti Mission Inc.

62. Petitioner is informed and believes and thereupon alleges that Farwest Haiti Mission Inc has not filed with the IRS in the last 5 years.

63. Defendant Theodore Farnsworth and his 'partner' Roderick Vanderbilt were consistent every year prior to last filed in Dec 2017. See exhibits xyz

64. Petitioner is informed and believes and thereupon alleges that a large sum of money may have been funneled through Farwest Haiti Mission Inc, and the government should investigate this avenue because at a minimum there may be a fortune to be seized to make victims whole.

## VII.
## CONCLUSION

Defendant Theodore Farnsworth is a major and serial financial conspirator who has repeatedly defrauded investors. He has many equally dangerous co-conspirators, many of whom worked with him (including his domestic/business partner, and current Chairman of Vinco Ventures, Roderick Vanderbilt) and has caused Billions of dollars in damage to investors over the course of his life.

Defendant Theodore Farnsworth should not be allowed to remain out on Bond pending the charges in the above captioned case. He should be remanded into the custody of the United States Marshall and housed during pretrial in a Bureau of Prisons Metropolitan Detention Center, with orders that he not be allowed any form of communication with anyone connected with any of the entities named in Paragraph 3 of Page 7 of his current 'additional bond conditions'.

Even if the court finds that revocation of bond is too draconian, Defendant Farnsworth should certainly not be allowed to commit crimes with (implicit) court approval memorialized in official binding court documents.

The investing public deserves to be protected from this Serial Financial Terrorist, and his co-conspirators, including his 'life partner' and longtime business associate and unindicted co- conspirator (Vanderbilt). It is time to stop protecting the Defendant and start protecting the public.

### **PRAYER FOR RELIEF REQUESTED BY WAY OF AMICUS BRIEF**

Petitioner prays (on his behalf but more importantly in the interest of justice and for the protection of all persons who invest in the United States financial markets of this court immediate action as follows:

This honorable court should:

1. Immediately instruct the United States Marshal and Pretrial services (United States Probation Department) to detain Defendant Farnsworth and bring him to court; and
2. Revoke his bond and place him in the custody of the Federal Bureau of Prisons in Pretrial detention in the Metropolitan Detention Center in Southern District of Florida; and
3. Revoke the second half of Page 7, paragraph 3 of that document which is entitled 'Additional Special Conditions of Bond' and make new and different orders outside of any bond, specifically prohibiting any and all activity with respect to each and every business entity mentioned therein and also to add to that list Defendant Farnsworth's latest business entity Icon Publishing and
4. Make orders that Defendant Farnsworth be prohibited from having any contact with Roderick Vanderbilt, or any member of the Board of Directors of Vinco Ventures, including that none of these individuals shall be allowed personal visits with

defendant in the BOP, and none shall be allowed to communicate with him or *visa versa via* USPO, the Corlinks email system, or the Prison phone system. All communication between Farnsworth (the puppet master) and his co-conspirators (puppets) must be effectively quashed, pending the outcome of the above captioned case; and

5. This honorable court should immediately refer this matter to the Security Exchange Commission, the FBI, the DOJ, the AG, and the United States Attorney's Office, for further criminal and civil investigation, including but not limited to adding new charges and new co-conspirators, starting with Roderick Vanderbilt, Lisa King, Jesse Law, Brian Hart, and Richard Levychin; and

6. This court should order that Vinco Ventures be commanded to cease and desist from effecting any of proposals invalidly approved at the shareholder meeting on Apr 27, 2023 until further order of this court, or in the alternative to contact Judge Nancy Allf of the Eighth Judicial District in the Nevada (state) District Court and recommend that she make such orders in case number A-23-868781-B, *Vick, et. al, v. Farnsworth, et. al.*; and

7. This court should order that all trading of any shares, options, warrants or other securities related to BBIG be suspended or halted until further order of this court.

Respectfully submitted,

**Dated**: May 8, 2023

_____
Shadwrick J. Vick, and www.biggfamily.com, Petitioner
*Amicus Curiae*