UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE № 22-20521-CR-BB

UNITED STATES OF AMERICA,

    *Plaintif,*

v.

THEODORE FARNSWORTH,

    *Defendant.*

_____/

### MOTION TO RECONSIDER ORDER REVOKING PRETRIAL RELEASE

The Defendant, **THEODORE FARNSWORTH**, (hereinafter "**MR. FARNSWORTH**") by and through undersigned counsel, files the foregoing Motion to Reconsider the Court's Order Revoking Pretrial Release pursuant to 18 U.S.C. §§ 3142 and 3148 and the Due Process Clause of the Fifth Amendment.[1] As grounds therefore, **MR. FARNSWORTH** avers the following:

### SUMMARY OF THE ARGUMENT

The Court erred in revoking **MR. FARNSWORTH'S** bond because it incorrectly determined that **MR. FARNSWORTH'S** travel to the Southern District of Florida required advance notification to his probation officer. This notification requirement was imposed by the probation officer, and not the Magistrate Judge, in violation of 18 U.S.C. § 3142 and **MR. FARNSWORTH'S** due process rights, and thus should not have been considered as a basis for revocation.  Moreover, the Court erred in failing to consider additional

_____

[1]    We wanted to present this motion to Judge Scola because he entered the initial Order of Revocation by motion filed at ECF № 107, however, he declined to retain jurisdiction over the matter (ECF № 108).

_____

Motion to Reconsider Order Revoking Pretrial Release
Page 1 of 23

Rabin & Lopez, P.A. • One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Tel: (305) 358-1064

conditions of release in lieu of revocation that could satisfy the requirements of 18 U.S.C. § 3148, given the complexity and voluminous discovery in the case.[2]  We respectfully request that this Court reconsider the Order and release **MR. FARNSWORTH** on bond pending trial.

## PROCEDURAL HISTORY

1.      On November 17, 2022, **MR. FARNSWORTH** and his co-defendant, J. Mitchell Lowe, appeared before Magistrate Judge Melissa Damian for their initial appearances and arraignments.  (ECF № 8 – 9).  The Magistrate Judge granted pretrial release for both defendants but imposed different bond conditions related to their travel and the necessary permission each required to travel.  (ECF № 10 and 13).

2.      J. Mitchell Lowe's bond paperwork reflects that section "u" of the "Special Conditions of Bond" list is checked off.  A copy of Mr. Lowe's bond documentation is attached hereto and incorporated by reference as Exhibit № 1.  Section "u" of the "Special Conditions of Bond" reads "[m]ay travel to and from: '(see below)' and must notify Pretrial Services of travel plans before leaving and upon return."  *Id.*  Section "v" which immediately follows section "u" reads: "Comply with the following additional conditions of bond: 'See attached (Page Five).'"  *Id.*  Page five (5) lists the following additional conditions of bond:

> Defendant may travel to the Southern District of Florida, Northern District of California, the Western District of Washington and the Southern District of New York.

---

[2]      Although we do not think it necessary, total lockdown in home detention with advanced permission to work on his case at counsel's office, is one alternative that would satisfy any concerns the Court may have about releasing **MR. FARNSWORTH** and afford him the opportunity and ability to prepare for trial.

Rabin & Lopez, P.A. • One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Tel: (305) 358-1064

The defendant may travel elsewhere within the United States with advance notice and as authorized by Pretrial Services, but without further leave of Court.

Defendant will be allowed periodic travel to Mexico with advance notice to the government and Pretrial Services, including a detailed itinerary.  While in Mexico, defendant will surrender his passport to a third party as directed by the government or Pretrial Services.

*Id.*

3.      Consistent with his bond paperwork, the Magistrate Judge stated in open court "Mr. Lowe is permitted to travel to Mexico with advanced notice and a detailed itinerary in coordination with Pretrial Services." Hr'g Tr. 37:22–24, Nov. 17, 2022.

4.      On the other hand, section "u" of **Mr. Farnsworth's** bond paperwork, requiring *notification* to Pretrial Services of travel plans prior to departure and after arrival, is *not* checked off.[3]  A copy of **Mr. Farnsworth's** bond documentation is attached hereto and incorporated by reference as Exhibit № 2. Section "v" reads: "Comply with the following additional conditions of bond: '<u>See attached document listing additional conditions of bond</u>.'" *Id.*  The attached document lists the following additional conditions of bond:

        1.      The defendant may travel to the Southern District of Florida, The [sic] Northern District of New York, the Southern District of New [sic] for purposes of conducting business, and the District of Columbia metropolitan area for purposes of meeting with counsel.  He is also authorized to travel as needed to go between these districts.

        2.      The defendant may travel throughout the United States as authorized by Pretrial Services in advance of any such travel, but without further leave of Court.

---

[3]      The Probation Officer testified that "I never asked him to receive our authorization to travel. It was our notification to travel, which, that, he failed to do." Hr'g Tr. 52:6–8, Sept. 7, 2023.

*Id.*

5.      During the proceedings, **MR. FARNSWORTH'S** counsel represented to the Magistrate Judge that the parties' agreement as to travel was the following:

> **in addition** to the Northern District of New York and the Southern District of Florida,[4] we have agreed with the government that Mr. Farnsworth can also travel to the Southern District of New York for business purposes. And in addition to that, then Mr. Farnsworth can also travel to the DC metropolitan area to meet with his counsel for purposes of preparing for this case.

Hr'g Tr. 9:20–10:1, Nov. 17, 2022 (emphasis added).  The government agreed with the representations.  *Id.* at 11.

6.      On July 28, 2023, the United States Probation Office (hereinafter "Probation") filed a Petition for Action on Conditions of Pretrial Release alleging that **MR. FARNSWORTH** violated his pretrial release conditions by failing to obtain authorization to travel to the Southern District of Florida.  (ECF № 57).

7.      On August 2, 2023, **MR. FARNSWORTH** was arrested in the Northern District of New York due to his alleged violation of the aforementioned pretrial release condition.

8.      On August 3, 2023, the Court permitted **MR. FARNSWORTH** to attend his mother's funeral after which he was to self-surrender on August 9, 2023.  (ECF № 63).

9.      On August 8, 2023, the government filed a motion to revoke **MR. FARNSWORTH'S** pretrial release order citing a number of alleged violations. (ECF № 67).

10.     On August 9, 2023, **MR. FARNSWORTH** surrendered in the Southern District

---

[4]      Here, there is no doubt that defense counsel and the government distinguished between travel in the Southern District of Florida and the Northern District of New York, which imposed no limitations and travel to the Southern District of New York and DC, which *did* have limitations.

of Florida after attending his mother's funeral.  (ECF № 72).

11.     On August 23, 2023, **MR. FARNSWORTH** filed his response in opposition to the government's motion.  (ECF № 76).

12.     On August 30, 3034, the government filed a reply.  (ECF № 79).

13.     On September 7, 2023, the Court held an evidentiary hearing on the government's motion.[5]   At the conclusion of the hearing Judge Scola granted the government's motion, revoked **MR. FARNSWORTH'S** bond, and detained him pending trial. (ECF № 86).

14.     On October 3, 2023, the Court issued a written Order memorializing its findings and conclusions from the September 7, 2023, hearing.  (ECF № 94).  The Court's Order concludes that **MR. FARNSWORTH** committed the following "non-exhaustive" list of violations of bond: (1) failing to notify his probation officer of his travel to Miami; (2) failing to provide his probation officer with evidence that his trip to Miami was for a business purpose and where he was staying; (3) failing to notify his probation officer that he had contact with law enforcement and denying same when prompted; (4) failing to report his contact with law enforcement in his pretrial services supervision reports; and (5) denying and later minimizing his involvement in pending civil matters.  *Id.*  The Court held that the government established by a preponderance of the evidence that **MR. FARNSWORTH** would not abide by any conditions of release.  *Id.*

15.      By the instant motion, we respectfully request that this Court reconsider the Order revoking **MR. FARNSWORTH'S** bond because we respectfully suggest that Judge

---

[5]       The evidentiary hearing was held before Judge Scola, the presiding judge prior to this matter being transferred.

Rabin & Lopez, P.A. • One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Tel: (305) 358-1064

Scola erroneously based his ruling on a violation of a condition of bond that the Magistrate Judge never imposed, namely that **MR. FARNSWORTH** was required to provide notice and an itinerary of his travel to the Southern District of Florida to his Probation Officer, Michael Christopher, (hereinafter "Probation Officer").

16.     The Probation Officer's unilateral imposition and enforcement of additional conditions to **MR. FARNSWORTH'S** bond represents a stark departure from the Magistrate Judge's bond Order and constitutes an improper encroachment on the functions of a judicial officer.   Simply put, **MR. FARNSWORTH'S** pretrial detention premised upon an erroneous reading of the Magistrate Judge's bond Order and probation's unilateral imposition of additional bond conditions violates the very guarantees of our Constitution that no personal shall be deprived of liberty without due process of law.   U.S. CONST. amend. V.

17.     Finally, the Court erred in failing to adequately consider additional conditions that could ensure **MR. FARNSWORTH'S** compliance pending trial when it determined that he was unlikely to abide by any conditions of release.

## MEMORANDUM OF LAW

Motions for reconsideration have been permitted by parties in criminal matters notwithstanding the fact that there is no specific Rule that authorizes such motions. *Serrano v. United States*, 411 F.App'x. 253, 255 (11th Cir. 2011).   Accordingly, courts apply the civil standard for such motions when determining whether any of the following three (3) factors justify reconsideration of a prior court ruling: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *United States v. Grobman*, 548 F.Supp.3d 1344,

Rabin & Lopez, P.A. • One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Tel: (305) 358-1064

1347 – 48 (S.D. Fla. 2021).

Here, reconsideration of the Court's Order revoking MR. FARNSWORTH'S bond is necessary to correct clear error and prevent manifest injustice because: (1) it is premised upon a violation of a condition of bond that was imposed by the probation officer, and not the Magistrate Judge, in violation of 18 U.S.C. § 3142 and MR. FARNSWORTH'S due process rights; and (2) it failed to consider additional conditions of release in lieu of revocation that could satisfy the requirements of 18 U.S.C. § 3148.

## I. THE COURT ERRED IN DETERMINING THAT MR. FARNSWORTH VIOLATED A CONDITION OF BOND THAT PROBATION UNILATERALLY IMPOSED WITHOUT AUTHORITY

In revoking MR. FARNSWORTH'S pretrial release, the Court determined that MR. FARNSWORTH failed to provide his probation officer with notice of his travels to the Southern District of Florida and proof that such travel was for a business purpose.  Neither a "judicial officer" nor the Magistrate Judge imposed the notice and purpose requirements at issue.  18 U.S.C. § 3142.  Instead, the probation officer unilaterally imposed the conditions under the façade of "supervision."  The notice and purpose requirements restrict MR. FARNSWORTH'S right to interstate travel and cannot be categorized as "supervision." *McAffee v. City of Clearwater*, No. 22-12320, 2023 WL 2823392, at *1, *2 (11th Cir. Apr. 7, 2023) (Recognizing that a "restriction on [a defendant's] right to travel interstate" constitutes an "ongoing deprivation of liberty" under the Fourth Amendment.); *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) ("Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty.").

In addition to violating 18 U.S.C. § 3142, the probation officer's restriction of MR. FARNSWORTH'S right to interstate travel, and by extension, deprivation of his liberty, failed

to comport with the Due Process Clause of the Fifth Amendment because **MR. FARNSWORTH** was deprived of the opportunity to be heard at a meaningful time and in a meaningful manner before an impartial and disinterested tribunal. *Cleveland Bd. Of Educ. V. Loudermill*, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case.") (internal citations omitted).   Accordingly, the Court's finding that **MR. FARNSWORTH** violated conditions of bond that were imposed by the probation officer in violation of 18 U.S.C. § 3142 and **MR. FARNSWORTH'S** due process rights constitutes clear error and manifest injustice warranting reconsideration of the Court's order revoking pretrial release.

> A.   <u>The Magistrate Judge did not impose a notice and purpose requirement for **MR. FARNSWORTH'S** travel in the Southern District of Florida.</u>

There is no question that 18 U.S.C. § 3142, governing pretrial release and detention, grants a judicial officer, and a judicial officer *alone*, with the discretion to order pretrial release or detention.[6]  This discretion encompasses the judicial officer's authority to impose conditions of bond that will reasonably assure the appearance of the defendant and the safety of the community.[7]  *Id.*  18 U.S.C. § 3156(a) defines "judicial officer" as

> unless otherwise indicated, any person or court authorized pursuant to section 3041 of this title, or the Federal Rules of Criminal Procedure, to detain or release a person before trial or sentencing or pending appeal in a

---

[6]    18 U.S.C. § 3142 ("Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be— (1)released on personal recognizance or upon execution of an unsecured appearance bond, under subsection (b) of this section; (2)released on a condition or combination of conditions under subsection (c) of this section; (3)temporarily detained to permit revocation of conditional release, deportation, or exclusion under subsection (d) of this section; or (4)detained under subsection (e) of this section.").

[7]    *Id.*

court of the United States, and any judge of the Superior Court of the District of Columbia.

A straightforward reading of this definition establishes that a probation officer is not a "judicial officer" and cannot avail itself of the authority vested in "judicial officers" pursuant to 18 U.S.C. § 3142 to impose conditions of pretrial release.[8]

The Magistrate Judge did not impose a notice and purpose requirement for **MR. FARNSWORTH'S** travel in the Southern District of Florida.  On the other hand, the Magistrate Judge was careful in choosing when to order Mr. Lowe to provide advanced notice to Pretrial Services and a detailed itinerary when traveling to Mexico. Hr'g Tr. 37:22–24, Nov. 17, 2022.  Mr. Lowe's bond paperwork corroborates this.[9]  In **MR. FARNSWORTH'S** case, the Court did not mention advanced notice to Pretrial Services or reference any detailed itinerary when traveling to the Southern District of Florida during the hearing or in his bond paperwork.  Likewise, the Court did not impose a business purpose condition to his travel to the Southern District of Florida.  Rather, the probation officer claims that he tells *every defendant* he supervises that they need to provide notice when leaving the Northern District of New York as "mere supervision practices." Hr'g Tr. 9:20–25, Sept. 7, 2023.  In other words, the probation officer essentially overruled the Magistrate Judge's analysis of what conditions were necessary to ensure **MR. FARNSWORTH'S** appearance and the safety of the community in violation of 18 U.S.C. §

---

[8]    A Magistrate Judge is clearly a "judicial officer" that can impose conditions of pretrial release.

[9]    *See* Exhibit № 1 ("The defendant may travel elsewhere within the United States with advance notice and as authorized by Pretrial Services, but without further leave of Court. Defendant will be allowed periodic travel to Mexico with advance notice to the government and Pretrial Services, including a detailed itinerary.  While in Mexico, defendant will surrender his passport to a third party as directed by the government or Pretrial Services.").

3142.[10]

> B. <u>A probation officer's supervision authority does not encompass the authority to impose a notice and purpose requirement to a defendant's interstate travel.</u>

To begin, it defies logic that a probation officer would have the authority to unilaterally impose a notice requirement to travel when the standard bond documentation in the Southern District of Florida specifically lists notice requirements to travel as special conditions of bond that a "judicial officer" can impose in granting pretrial release. In other words, notice of travel is clearly not an extension of probation's supervision obligations if it is also considered a "condition" of pretrial release pursuant to 18 U.S.C. § 3142. The same reasoning applies with equal force to the purpose requirement. The probation officer does not have the authority to demand evidence of the purpose of MR. FARNSWORTH'S trip to the Southern District of Florida because the Magistrate Judge imposed a purpose condition to MR. FARNSWORTH'S travel in other jurisdictions yet chose not to for his travel in the Southern District of Florida.

The Administrative Office of the United States Courts issued an Overview of Probation and Supervised Release Conditions in November 2016 that clearly indicates that supervision does not require notice of *all* travel in *every* case. A copy of the Overview of Probation and Supervised Release Conditions is attached hereto and incorporated by reference as Exhibit № 3. In a section titled "Leaving the Judicial District," it notes that a

---

[10]     18 U.S.C. § 3154, governing the functions and powers relating to pretrial services, permits Pretrial Services to make recommendations to the judicial officer as to whether a defendant "should be released or detained and, if release is recommended recommend appropriate conditions of release." The judicial officer's ability to accept, deny, or modify pretrial services' recommendations makes the probation officer's conduct in the instant case even that more egregious.

Court can require a defendant to obtain permission from the court or a probation officer before leaving the jurisdiction of the Court as a condition of probation or supervised release.  Exhibit № 3 at 19.  When permission from a probation officer is *required*[11] for travel outside of the judicial district, "[t]he defendant should be instructed to submit any travel request in advance to allow the probation officer sufficient time to verify the nature and purpose of the travel" and "[a]ll defendants granted permission to travel should be instructed to call the probation officer upon their return." *Id.* at 20–21. In other words, The Administrative Office of the United States Courts (the very office that oversees Probation and Pretrial Services) considers advanced notice and purpose requirements to travel, the very conditions that the probation officer characterizes as "mere supervision," as a method of supervising a defendant who *must* obtain permission to travel from the probation officer in the first place.[12]

In the absence of an express pretrial release condition properly imposed by a "judicial officer" requiring **Mr. Farnsworth** to obtain authorization or provide notification to his probation officer of his travel, there is absolutely no need for **Mr. Farnsworth** to provide his probation officer with advance notice of his travel to locations that the "judicial officer" has already determined he can freely travel to.  In the instant case, the probation officer even went as far as to conclude that he had to know where **Mr. Farnsworth** is at

---

[11]     Only a Court can order that a defendant obtain permission from a probation officer before leaving the judicial district.

[12]     Here, the implication from the Magistrate Court's decision *not* to impose an authorization and notice requirement for **Mr. Farnsworth's** travel is that such a condition is not necessary to assure his appearance and the community's safety.  The probation officer does not have the authority to override the Magistrate Court's analysis of the 18 U.S.C. § 3142 factors by unilaterally imposing a notice requirement.

"at all times."[13]  Hr'g Tr. 10:18–19, Sept. 7, 2023.  If the Magistrate Judge believed that probation needed to know *every single movement* by **MR. FARNSWORTH** at any given time, in order to ensure his appearance and community safety, she would have ordered location monitoring services that accounted for **MR. FARNSWORTH** at all times.[14]  She did not.

To be clear, this is not a case where the probation officer's imposition of a notice requirement is ancillary to its authority to authorize or deny travel as ordered by a "judicial officer."  In those cases, it is clear that probation's ability to enforce the judicial officer's condition, to wit: prior authorization to travel, would undoubtedly entail notice, even in the absence of a direct order from the Court that such notice is required.  Here, the Magistrate Judge chose not to provide the probation officer with the discretion to impose a notice requirement for **MR. FARNSWORTH'S** travel.

Moreover, to the extent that the probation officer felt it was appropriate to impose a notice and purpose requirement to **MR. FARNSWORTH'S** travel, the correct mechanism was to "recommend appropriate modifications of release conditions" to the Court and the United States consistent with the authority that Congress vested Pretrial Services in 18

---

[13]    Under Pretrial Services' expansive interpretation, **MR. FARNSWORTH** would have to notify his probation officer every time he left the home, even if he remained in the Northern District of New York. This is clearly not the case, yet it illustrates the potential for abuse and selective enforcement by the probation officer that severely diminishes consistency and uniformity in the supervision context.

[14]    The U.S. Court's website represents that even in the case of electronic monitoring, "Officers do not track a person's movement in the community in real time, 24 hours a day, seven days a week. But activity reports and emergency alerts can help officers intercede if conditions ordered by the judge are violated."  https://www.uscourts.gov/services-forms/probation-and-pretrial-services/supervision/federal-location-monitoring

Rabin & Lopez, P.A. • One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Tel: (305) 358-1064

U.S.C. § 3154.[15]   In conclusion, the probation officer's authority to "supervise" **MR. FARNSWORTH** does not provide him with the unfettered authority and discretion to impose additional bond conditions that are squarely within the sole discretion of a "judicial officer."

          c.  <u>Notice and purpose requirements limit **MR. FARNSWORTH'S** right to interstate travel and thus must comply with due process.</u>

Although probation may characterize its unilateral imposition of a notice and purpose requirement for interstate travel as "mere supervision practices" it is indisputably a condition of bond that amounts to a deprivation of **MR. FARNSWORTH'S** liberty in violation of the Fifth Amendment of the Constitution.[16] The Supreme Court has repeatedly emphasized the right to interstate travel.  *See Kent v. Dulles*, 357 U.S. 116, 125 (1958)

---

[15]     Indeed, Probation followed the proper procedure in its Violation Memorandum – Request for Petition and Warrant, when it requested modification of **MR. FARNSWORTH'S** conditions of pre-trial release to include "the special condition that, for travel throughout the United States, the defendant must seek authorization from Pretrial Services in advance of any and all travel." Violation Memo. at 3.

[16]     As further support of the significance of the imposition of restrictions to a defendant's right to interstate travel, Courts have also determined that interstate travel restrictions constitute a seizure within the meaning of the Fourth Amendment.  *McAffee v. City of Clearwater*, No. 22-12320, 2023 WL 2823392, at *1, *2 (11th Cir. Apr. 7, 2023) (internal citations omitted) (". . . [F]or a condition of pretrial release to constitute a seizure, the plaintiff must show some significant, ongoing deprivation of liberty, such as a restriction on his right to travel interstate."); *Evans v. Ball*, 168 F.3d 856, 861 (5th Cir. 1999) (abrogated on other grounds) ("We conclude, in light of these authorities, that Evans's summons to appear in court, coupled with the requirements that he obtain permission before leaving the state, report regularly to pretrial services, sign a personal recognizance bond, and provide federal officers with financial and identifying information, diminished his liberty enough to render him seized under the Fourth Amendment."); *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998) (Ruling that the defendant was seized because his pretrial bond conditions required him to: (1) post a $10,000, bond; (2) attend all court hearings; (3) contact Pretrial Services on a weekly basis; and (4) refrain from any travel outside of New Jersey and Pennsylvania.); *Murphy v. Lynn*, 118 F.3d 938, 945 (2d Cir. 1997) (cert denied) (internal citations omitted) ("While the constitutional underpinnings of the right to travel throughout the United States are perhaps not found solely in the Fourth Amendment itself (indeed, its roots have never been identified with particularity,) the characterization of interstate travel as a basic right under the Constitution, occupying a position fundamental to the concept of our Federal Union, is sufficient to demonstrate that restriction of that right as a result of a pending criminal proceeding is a restriction that has Fourth Amendment implications.").

---

Rabin & Lopez, P.A. • One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Tel: (305) 358-1064

("The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment. Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage. Travel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values."); *United States v. Guest*, 383 U.S. 745, 759 (1966) ("In any event, freedom to travel throughout the United States has long been recognized as a basic right under the Constitution."); *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969) (overruled on other grounds) ("This Court long ago recognized that the nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement."); *Califano v. Gautier Torres*, 435 U.S. 1, 4 n. 6 (1978) ("The constitutional right of interstate travel is virtually unqualified.").[17]   Accordingly, **MR. FARNSWORTH'S** right to travel is a liberty of which he cannot be deprived of without due process of law.  *United States v. Karper*, 847 F.Supp.2d 350, 357 (N.D. NY 2011) citing *City of Chicago v. Morales*, 527 U.S. 41, 54 (1999).  However, that is precisely what occurred here.

Due process entails the opportunity to be heard at a meaningful time and in a meaningful manner, *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), before an impartial

---

[17]       To be clear, **MR. FARNSWORTH** is not arguing that *any* restriction upon his right to travel is unconstitutional.  Rather, that any restriction imposed upon his right to travel, including the requirement of advanced notice, by a probation officer, rather than a judicial officer, lacks the procedural safeguards to satisfy due process in violation of the Fifth Amendment.  *See Carey v. Piphus*, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property.").

Rabin & Lopez, P.A. • One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Tel: (305) 358-1064

and disinterested tribunal, *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980), prior to being deprived of a fundamental right.  Here, the probation officer unilaterally imposed a notice requirement for **MR. FARNSWORTH'S** travel without providing him with the opportunity to be heard before an impartial and disinterested tribunal.

The probation officer's unilateral imposition of a notice condition is akin to the mandatory provisions of the Adam Walsh Act which imposed mandatory curfew and electronic monitoring for any defendant released pretrial that is charged with an offense involve child pornography or against a minor.  In *United States v. Karper*, the defendant moved to strike the mandatory curfew and electronic monitoring conditions of the Adam Walsh Act because it is imposed "in every case without an opportunity to be heard as to these conditions and without the benefit of a court's discretion."  *United States v. Karper*, 847 F.Supp.2d 350, 356 (N.D. NY 2011).  The district court agreed with the defendant and held that the mandatory conditions of the Adam Walsh Act violated the Due Process Clause of the Fifth Amendment.  *Id.* at 360.  The court reasoned:

> The absence of procedural due process means that every defendant charged with receipt and possession of child pornography is outright denied an opportunity (1) to rebut the need to restrict his freedom of movement, (2) to interject his presumed innocence against the notion that he will prospectively engage in future crimes, and (3) to have an independent judicial evaluation of the compelling facts before a court.

*Id.*

While the notice and purpose conditions at issue in the instant case were imposed by Pretrial Services, and not mandated by Statute, the same reasoning applies with equal force.  By unilaterally imposing a notice and purpose requirement *after* the formal bond hearing, Pretrial Services deprived **MR. FARNSWORTH** of the opportunity to rebut the need

Rabin & Lopez, P.A. • One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Tel: (305) 358-1064

to restrict his freedom of movement, through notice and purpose requirements, and to avail himself of an independent judicial evaluation of the facts.[18]

D. <u>Any uncertainties should be resolved in **MR. FARNSWORTH'S** favor.</u>

Lastly, 18 U.S.C. § 3142(h) commands that in a release order, the judicial officer shall "include a written statement that sets forth all the conditions to which the release is subject, in a manner sufficiently clear and specific to serve as a guide for the person's conduct."[19]   There is no question that **MR. FARNSWORTH'S** bond paperwork does not contain, or even reference, a notification or purpose condition for his travel to the Southern District of Florida.  *See* Exhibit № 2. The purpose behind 18 U.S.C. § 3142(h)'s command of a clear and specific written statement of conditions was illustrated by this Court's questioning during the September 7, 2023, bond revocation hearing.  Namely, even when **MR. FARNSWORTH** attempted to comply with his probation officer's additional conditions by notifying him of his travel in Miami, this Court asked counsel for **MR. FARNSWORTH**

> What about - - even that one.  Why is he sending an e-mail at 6:30 at night when he had left at 5:20 in the morning? He would have had to contract the airline, find a flight, do all the stuff. I mean, why can't he send an e-mail at the same time saying – for 12 hours that day, his whereabouts are completely unknown to probation.

Hr'g Tr. 124:25–125:5, Sept. 7, 2023.  During the hearing, the probation officer never even stated "advanced" notice was required, just notice.  How was **MR. FARNSWORTH**

---

[18]     The similarities between the mandatory Adam Walsh Act conditions and the notice condition imposed in the instant case are further illustrated by the probation officer's admission that he imposes the same notice requirement for every defendant as "mere supervision practices." Hr'g Tr. 9:20–25, Sept. 7, 2023.

[19]     There is no question that a probation officer's oral, or even written, statement of conditions of bond does not satisfy the language of 18 U.S.C. § 3142(h).

Rabin & Lopez, P.A. • One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Tel: (305) 358-1064

expected to comply with "notice" when he wasn't informed of what "notice" was?[20]

## II. THE COURT ERRED BY FAILING TO CONSIDER ADDITIONAL CONDITIONS OF PRETRIAL RELEASE PRIOR TO REVOKING MR. FARNSWORTH'S BOND

18 U.S.C. § 3148, governing sanctions for violations of a release condition, provides this Court with the discretion to revoke pretrial release when there is probable cause to believe that the person committed a crime or clear and convincing evidence that the person violated a condition of release.  However, commission of a crime or a violation of a release condition, *alone*, is insufficient to warrant detention.  18 U.S.C. § 3148(b).  Prior to revoking pretrial release, the Court must also determine whether (1) "based on the factors set forth in section 3142(g) of this title, there [are] no condition[s] or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community" or (2) "the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b)(2).  Here, the Court ordered detention based upon a determination that MR. FARNSWORTH is unlikely to abide by any conditions of pretrial release.  (ECF № 94).  During the hearing, the Court even went as far as to opine that MR. FARNSWORTH is "just the kind of person that doesn't believe that the rules apply to him."  Hr'g Tr. 131:25–132:1, Sept. 7, 2023

The fact that MR. FARNSWORTH may have violated the conditions of his pretrial release should not, on its own, render MR. FARNSWORTH as unwilling or unable to abide by any conditions of release for purposes of 18 U.S.C. § 3148.  Indeed, if that were the case, every violation of a condition of bond would result in automatic pretrial detention,

---

[20]     The potential for confusion and necessity of a clear written Order is heightened by the fact that the standard bond paperwork in the Southern District of Florida uses "notice" to refer to information relayed before travel *and* upon return.

without consideration of the additional factors enumerated in 18 U.S.C. § 3148.  Put differently, Congress did not intend for the Courts to impose a strict liability standard when confronted with violations of pretrial conditions.  Rather, Congress provided "judicial officers" with the discretion to determine whether other conditions could be imposed that could potentially remedy the noncompliance at issue.  18 U.S.C. § 3148(b)(2).  As outlined below, several courts in this district have elected to exercise this discretion and impose additional conditions of bond before resorting to revoking bond.

In fact, this very Court affirmed a Magistrate Judge's Order that denied the government's motion to revoke bond and imposed additional conditions *after* the defendant had been arrested for threatening to shoot up a school. *United States v. Buelvas*, No. 21-cr-20090-BLOOM, 2023 WL 4295318, at *1-*2 (S.D. Fla. June 30, 2023). In *Buelvas*, the defendant had been sentenced to twenty-four (24) months imprisonment for aggravated identity theft and was awaiting her voluntary surrender date when she was arrested for threatening to "buy a gun and shoot up her daughter's school 'like Nashville'" and "cut-up and eat a security guard."  *Id.*  The Magistrate Judge refused to revoke bond based on the defendant's arrest and imposed additional conditions of release which included a stay away order from the school and GPS location monitoring.  *Id.* at *3.  This Court ultimately affirmed the Magistrate Judge's denial to revoke bond, holding that there was no evidence of risk of flight, and any potential danger to the community was offset by the additional bond conditions imposed.   *Id.* at *3.  Here, revocation of **MR. FARNSWORTH'S** bond for alleged nonviolent and technical allegations of violations of pretrial release conditions appears disproportionate in comparison to the defendant in *Buelvas* who was permitted to remain on bond even after her arrest for threatening to

Rabin & Lopez, P.A. • One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Tel: (305) 358-1064

shoot up a school and cut up a security guard.

Likewise, in *United States v. Colbert*, the defendant, a former attorney, was awaiting sentencing when the government moved to revoke pretrial release due to allegations of unauthorized practice of law. *United States v. Colbert*, No. 3:15cr36-MCR, 2017 WL 1880682, at *1 (N.D. Fla. May 3, 2017). The Magistrate Judge determined that probable cause existed that the defendant violated a Florida statute by appearing in court and arguing a motion for summary judgment on behalf of his client. *Id.* Nevertheless, the Magistrate Judge refused to revoke pretrial release despite the "defendant's significant missteps" and accepted the defendant's invitation to appoint a third-party custodian to maintain daily contact with the defendant and notify probation of any improper conduct by the defendant. *Id.* In arriving at its conclusion, the Magistrate Judge also conducted an analysis of the 18 U.S.C. § 3142 factors and determined that there was no evidence that the defendant was a danger to the community or posed a risk of flight. *Id.* at *3. On appeal, the District Court affirmed the Magistrate Judge's Report and Recommendation. *United States v. Colbert*, No. 3:15cr36-MCR, 2017 WL 1855754, at *1 (N.D. Fla. May 5, 2017).

Here, there are additional conditions that can ensure that **MR. FARNSWORTH** will abide by all conditions of bond if permitted to remain at liberty pending trial. **MR. FARNSWORTH** went from virtually unrestricted release conditions to incarceration. Clearly, the Court can fashion restrictive conditions of release that will allay any concerns the Court may have. For example, this Court could consider imposing GPS monitoring, a third-party custodian or security team financed by the defendant, a limitation of his prior travel allotments, and even complete house arrest. *See United States v. Musgrove*, No.

3:10-cr-19-TKW, 2023 WL 6626140, at *1 (N.D. Fla. Oct. 11, 2023) (Refusing to revoke the defendant's release, despite clear and convincing evidence that the defendant violated conditions of release by using controlled substances on at least six (6) occasions, because "while a very close call, [] the Government has not shown by a preponderance of the evidence that Defendant is unlikely to abide by the conditions of his release."); *United States v. Tolley*, No. 14-80206-CR-MARRA/MATTHEWMAN, 2016 WL 5387463, at *1 (S.D. Fla. Sept. 22, 2016) (Refusing to revoke the defendant's bond, despite clear and convincing evidence that the defendant contacted a former employee in violation of his bond, because "the Court does not find that there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community.").

The Court's consideration of other conditions of bond is especially warranted in the instant case where pretrial detention will significantly impact MR. FARNSWORTH'S ability to meet with counsel and prepare his defense.  Specifically, the government's allegations concern numerous statements by MR. FARNSWORTH and others, over various media, that require an extremely fact specific and individualized review by MR. FARNSWORTH and his defense team.  Discovery in this matter consists of voluminous electronic records and files which are extremely burdensome to review with MR. FARNSWORTH if he remains incarcerated pending trial.  To date, the government has made at least thirty-one (31) discovery productions, totaling more than 6,840,318 individual files.[21]   Likewise, the

---

[21]     To be clear, it is *not* 6,840,318, pages of discovery. It is 6,840,318, files without regard to the number of pages contained in each of the 6,840,318, files.  In terms of the sheer

instant case will require the use of several experts, in areas ranging from data science to the entertainment industry.  MR. FARNSWORTH'S participation in the selection and review of experts is paramount given his profound understanding and experience within the industry.  Simply put, MR. FARNSWORTH'S continued detention will result in great hardship to his counsel, experts, and witnesses, and will only serve to limit MR. FARNSWORTH'S ability to personally participate in his defense.[22]

## CONCLUSION

The Court erred when it determined that MR. FARNSWORTH'S conditions of bond required him to provide advance notice and evidence of a business purpose for his travel to the Southern District of Florida.  Clear error, warranting reconsideration of the Court's Order, is established by the mere fact that the Court's decision to revoke MR. FARNSWORTH'S pretrial release is premised in part on an alleged violation of a condition of bond that was improperly imposed by a probation officer rather than a "judicial officer." Likewise, the Court's generalized determination that MR. FARNSWORTH "doesn't believe that the rules apply to him" without consideration of additional conditions that could be imposed, deprived MR. FARNSWORTH of the individualized assessment guaranteed by 18 U.S.C. § 3148. To date, MR. FARNSWORTH has been incarcerated at FDC Miami for almost

---

size of the discovery here, it is estimated to be between 1.8 and two terabytes.  One terabyte is equivalent to 6.5 million document pages or 1300 physical filing cabinets of paper.

[22]      FDC Miami is presently on modified operations, which means that MR. FARNSWORTH has been on lockdown since approximately December. During lockdown, inmates are only allowed outside of their cells for two (2) hours a day, during which they are permitted to use computers and phones. Given its limited operations and the fact that sixty (60) to seventy (70) inmates are released during that two (2) hour window, wait times to use the phones and computers are unusually long. Presently, only five (5) of six (6) computers on MR. FARNSWORTH'S floor are operational. During Christmas, all computers on his floor were not operational for two (2) weeks.

six (6) months. The Court has certainly impressed upon him the importance of strictly adhering to pretrial release conditions. We respectfully submit he deserves a second chance.

WHEREFORE, based upon the above, the Defendant, THEODORE FARNSWORTH, prays that this Honorable Court will reconsider its Order revoking bond and impose additional conditions to allow him to be readmitted to pretrial release.

## CERTIFICATE PURSUANT TO LOCAL RULE 88.9

Undersigned Counsel conferred with government counsel prior to filing the instant motion.  Government counsel advised us that the government objects to the relief requested in the instant motion.

Respectfully submitted,

**RABIN & LOPEZ, P.A.**
One Southeast Third Avenue
Suite 2600
Miami, FL  33131
Tel:  305•358•1064
Email:  sjr@miamilawyer.com

*s/ Samuel J. Rabin, Jr.*

SAMUEL J. RABIN, JR.
Florida Bar № 273831

*s/ Jessica Duque*

JESSICA DUQUE
Florida Bar № 1031237

_____
Motion to Reconsider Order Revoking Pretrial Release
Page 22 of 23

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of February 2024, a true and correct copy of the foregoing Motion to Reconsider Order Revoking Pretrial Release was furnished via the CM/ECF system to all parties designated to receive the electronic filings in this cause.

*s/ Samuel J. Rabin, Jr.*

SAMUEL J. RABIN, JR.

Rabin & Lopez, P.A. • One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Tel: (305) 358-1064