# **EXHIBIT 3**



**Administrative Office of the United States Courts**
**Probation and Pretrial Services Office**

Overview of Probation and Supervised Release Conditions

November 2016

## Table of Contents

Chapter 1: Overview ..................................................................................................................... 1

    I.    Purpose ................................................................................................................... 1

    II.   Authority ................................................................................................................ 1

        A.   Statutory Authority ......................................................................................... 1

        B.   Federal Rules of Criminal Procedure ............................................................ 4

        C.   Principles of Supervision ................................................................................ 5

    III.  Social Science Research .......................................................................................... 10

    IV.  Adoption of Standard Conditions by District Courts .......................................... 13

    V.   Scope ...................................................................................................................... 13

Chapter 2: Standard Conditions of Supervision ....................................................................... 14

    I.    Initial Reporting to Probation Office .................................................................... 14

    II.   Reporting to Probation Officer ............................................................................. 16

    III.  Leaving the Judicial District .................................................................................. 19

    IV.  Answering Truthfully Probation Officer's Questions .......................................... 21

    V.   Notification of Change in Residence .................................................................... 24

    VI.  Visits by Probation Officer ................................................................................... 25

    VII.  Lawful Employment and Notification of Change in Employment........................ 29

    VIII. Communicating/Interacting with Persons Engaged in Criminal Activity and Felons.................... 32

    IX.  Notification of Arrest or Questioning by Law Enforcement Officer ................... 33

    X.   Possession of Firearm, Ammunition, Destructive Device, or Dangerous Weapon........................ 34

    XI.  Acting as Confidential Human Source Informant ................................................ 36

    XII.  Notification of Risk Posed by Defendant ............................................................. 38

    XIII. Following Instructions Related to Conditions of Supervision .............................. 40

Chapter 3: Special Conditions of Supervision .......................................................................... 42

    I.    Substance Abuse Treatment, Testing, and Abstinence ....................................... 42

    II.   Mental Health Treatment ..................................................................................... 47

    III.  Financial Requirements and Restrictions............................................................. 52

    IV.  Employment Restrictions ..................................................................................... 56

    V.   Association and Contact Restrictions.................................................................... 57

VI.    Place Restrictions ................................................................................................................ 60

VII.   Supporting Dependents ........................................................................................................ 63

VIII.  Gambling-Related Conditions .............................................................................................. 63

IX.    Community Service ............................................................................................................... 64

X.     Cognitive Behavioral Treatment .......................................................................................... 66

XI.    Educational or Vocational Services ...................................................................................... 68

XII.   Location Monitoring.............................................................................................................. 70

XIII.  Residential Reentry Center .................................................................................................. 74

XIV.   Intermittent Confinement ................................................................................................... 77

XV.    Search and Seizure ............................................................................................................... 78

XVI.   Immigration-Related Requirements ..................................................................................... 80

XVII.  Restrictions on Viewing Sexually Explicit Materials............................................................. 82

XVIII. Sex Offense-Specific Assessment, Treatment, and Physiological Testing ........................... 84

XIX.   Polygraph for Sex Offender Management ............................................................................ 87

XX.    Computer and Internet Restrictions .................................................................................... 90

APPENDIX: CONDITION LANGUAGE............................................................................................... 94

# Chapter 1: Overview

## I.      Purpose

A.   Under 18 U.S.C. § 3601, a defendant who has been sentenced to probation or supervised release is required to be supervised by a United States probation officer "to the degree warranted by the conditions specified by the sentencing court."[1]

B.   The conditions of supervision set the parameters of supervision. They define the sentence to be executed, establish behavioral expectations for defendants, and provide the probation officer with tools to keep informed and bring about improvements in a defendant's conduct and condition. Probation officers recommend and implement conditions and monitor defendants' compliance with those conditions. They also work with defendants to facilitate their reintegration into the community as law-abiding and productive members of society.

C.   This document is designed to provide judges, prosecutors, defense attorneys, and other criminal justice practitioners with a list and description of the most common discretionary conditions of federal post-conviction supervision.

## II.     Authority

A.   Statutory Authority

1.   Mandatory Conditions of Supervision: Under 18 U.S.C. §§ 3563(a) and 3583(d), the sentencing court is required to impose specified conditions of probation and supervised release.[2] The mandatory conditions are set forth below.

a.   Probation and Supervised Release

i.   New Crime: That the defendant not commit another federal, state, or local crime.

ii.  Drug Possession: That the defendant not unlawfully possess a controlled substance.

iii. Drug Use/Testing: That the defendant refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on probation or supervised release and at least two periodic drug tests

---

[1] United States probation officers also supervise persons released early from their prison sentences on parole or mandatory release by the U.S. Parole Commission (Parole Commission) or military authorities. The Parole Commission has a direct policy and decision-making role in the supervision of those under its jurisdiction. Probation officers are required to follow the Parole Commission's rules relating to supervision and the Commission has the responsibility and authority for all decisions relating to the imposition and modification of conditions of release and for the revocation of parole supervision.

[2] The mandatory conditions of parole are set forth at 18 U.S.C. § 4209.

thereafter (as determined by the court) for use of a controlled substance. This condition may be ameliorated or suspended by the court for any individual defendant if the defendant's presentence report or other reliable sentencing information indicates a low risk of future substance abuse by the defendant.

iv.  Sex Offender Registration: For a defendant required to register under the Sex Offender Registration and Notification Act, that the defendant comply with the requirements of that Act.

v.  DNA Collection: That the defendant cooperate in the collection of a DNA sample from the defendant if the collection of such a sample is authorized under section 3 of the DNA Analysis Backlog Elimination Act of 2000.

vi.  Domestic Violence Program: For a domestic violence crime as defined in 18 U.S.C. § 3561(b) by a defendant convicted of such an offense for the first time, that the defendant attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, in consultation with State Coalition Against Domestic Violence or other appropriate experts, if an approved program is readily available within a 50-mile radius of the legal residence of the defendant.

b.  Probation Only

i.  Fine: If the court has imposed and ordered execution of a fine, that the defendant pay the fine or adhere to the court-established installment schedule.

ii.  Publicly Discernible Penalty: Under 18 U.S.C. § 3563(a)(2), for a felony, that the defendant also abide by at least one condition set forth in 18 U.S.C. § 3563(b)(2) or 3563(b)(12) unless the court has imposed a fine under this chapter, or unless the court finds on the record that extraordinary circumstances exist that would make such a condition plainly unreasonable, in which event the court is directed to impose one or more of the other conditions set forth under 18 U.S.C. § 3563(b).

iii.  Restitution and Special Assessment: That the defendant make restitution in accordance with 18 U.S.C. §§ 2248, 2259, 2264, 2327, 3663, 3663A, and 3664; and pay an assessment imposed in accordance with 18 U.S.C. § 3013 and 18 U.S.C. § 3014 (when applicable).

iv.  Notification of Change in Ability to Pay: That the defendant will notify the court of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution, fines, or special assessments.

2. Discretionary Conditions of Supervision: Under 18 U.S.C. §§ 3563(b) and 3583(d), the court may order additional conditions of probation or supervised release. These conditions may be imposed to the extent that they:

    a. are reasonably related to the relevant sentencing factors listed at 18 U.S.C. § 3553(a);[3]

    b. involve only such deprivations of liberty or property as are reasonably necessary for the relevant sentencing purposes listed at 18 U.S.C. § 3553(a);[4] and

    c. are consistent with any pertinent policy statements issued by the Sentencing Commission.[5]

3. Modification of Discretionary Conditions of Supervision

    a. Under 18 U.S.C. § 3563(c), the court may "modify, reduce, or enlarge the conditions of a sentence of probation at any time prior to the expiration or termination of the term of probation, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the conditions of probation."

    b. Under 18 U.S.C. § 3583(e)(2), the court may, after considering the applicable factors in 18 U.S.C. § 3553(a), "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision[.]"

4. Statutory Duties of Probation Officers: The duties of United States probation officers are set forth at 18 U.S.C. § 3603.[6] This statute requires probation officers, *inter alia*, to:

---

[3] For supervised release cases, these factors are (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) deterrence; (4) protection of the public; and (5) providing needed correctional treatment to the defendant. 18 U.S.C. §§ 3583(d)(1), 3553(a)(1), 3553(a)(2)(B)-(D). For probation cases, these factors are the same as in supervised release cases and also include reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment for the offense. 18 U.S.C. §§ 3563(b) and 3553(a)(1)-(2).

[4] For supervised release cases, conditions must involve "no greater deprivation of liberty than is reasonably necessary" for the purposes of deterrence; protection of the public; and providing needed correctional treatment to the defendant. 18 U.S.C. §§ 3583(d)(2) and 3553(a)(2)(B)-(D). For probation cases, they must "involve only such deprivations of liberty or property as are reasonably necessary" for the purposes of deterrence; protection of the public; providing needed correctional treatment to the defendant; and promoting respect for the law, and providing just punishment for the offense. 18 U.S.C. §§ 3563(b) and 3553(a)(2).

[5] 18 U.S.C. § 3583(d)(3).

[6] These duties are expanded to the parole population by 18 U.S.C. §§ 4203 and 3655.

a. Instruct a probationer or a person on supervised release, who is under his or her supervision, on the conditions specified by the sentencing court, and provide him or her with a written statement clearly setting forth all such conditions;[7]

b. Keep informed, to the degree required by the conditions specified by the sentencing court, of the conduct and condition of a probationer or a person on supervised release, who is under his or her supervision, and report his or her conduct and condition to the sentencing court;

c. Use all suitable methods, not inconsistent with the conditions specified by the court, to aid a probationer or a person on supervised release who is under his or her supervision, and to bring about improvements in his or her conduct and condition;

d. Be responsible for the supervision of any probationer or a person on supervised release who is known to be within the judicial district;

e. Keep a record of his or her work, and make such reports to the Director of the Administrative Office of the United States Courts (AO) as the Director may require; and

f. Keep informed of the conduct, condition, and compliance with any condition of probation, including the payment of a financial penalty of each probationer under his or her supervision, and report these to the court placing such person on probation; also report to the court any failure of a probationer under his or her supervision to pay a fine in default within 30 days after notification of the default so that the court may determine whether probation should be revoked.

B. Federal Rules of Criminal Procedure

1. Under Rule 32(c)(1)(A), the probation officer must generally conduct a presentence investigation and submit a report to the court before it imposes sentence.

2. Under Rule 32(d)(2), the presentence report must contain the defendant's history and characteristics, including any prior criminal record and any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment. The report must also contain any other information that the court requires, including information relevant to the factors under 18 U.S.C. § 3553(a).

---

[7] *See also* 18 U.S.C. §§ 3563(d) and 3583(f) (requiring the court to direct that the probation officer provide the defendant with a written statement that sets forth all the conditions of probation and supervised release and is "sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required").

3. Under Rule 32.1(c)(2), the court may modify the conditions of probation or supervised release without a hearing if the defendant waives the hearing; or the modification is "favorable to the [defendant]" and does not extend the term of probation or of supervised release, and the U.S. Attorney has received notice of the modification sought and has had a reasonable opportunity to object and has not done so. Although the court must satisfy these procedural requirements and ensure that any modified condition meets statutory sentencing objectives (see: Chapter 1, Section II(A)(3)), no specified quantum of evidentiary proof is required to justify the modification, and there is no requirement that the modification of conditions be predicated upon a violation of an existing condition or a change in the defendant's circumstances.

C. Principles of Supervision[8]

   1. Federal Supervision Model

      a. The federal supervision model is founded on the conditions of release and comprises both controlling and correctional strategies consistent with those conditions that are sufficient, but no greater than necessary, to facilitate achievement of the desired outcomes.

      b. The desired outcomes of supervision are the execution of the sentence and the protection of the community by reducing the risk and recurrence of crime and maximizing defendant success during the period of supervision and beyond. The goal in all cases is the successful completion of the term of supervision, during which the defendant commits no new crimes; is held accountable for victim, family, community, and other court-imposed responsibilities; and prepares for continued success (i.e., refraining from further crime) through improvements in his or her conduct and condition.

      c. Research has demonstrated that a blending of controlling and correctional strategies is far more effective than selecting one strategy over the other. Controlling strategies serve the dual purpose of: (1) maintaining awareness of a defendant's activities and (2) encouraging compliance. Correctional strategies are designed to provide the defendant with additional information, skills, resources, and treatment for the purpose of facilitating positive behavioral change during the period of supervision and beyond.

---

[8] The Judicial Conference of the United States (hereafter, "Judicial Conference") was established by Congress in 1922 as the principal policy-making body concerned with the administration of the United States courts, including the probation and pretrial services system. While the Judicial Conference approves national policies to guide the courts and probation offices in the individual districts, many districts also have local written policies that substantially supplement national policies. The Judicial Conference approves policies that apply to United States district court employees, including employees of the United States probation and pretrial services system, in the performance of their duties.

d.  Principles of Good Supervision: The principles of good supervision are designed to ensure that supervision comports with the requirements and limitations inherent in statutory directives and is purposefully directed toward achieving desired outcomes. Their application in every case will also ensure that the majority of supervision resources are dedicated to those defendants who need them most in order to successfully complete their community sentences.

i.  Good supervision is purposeful. Every supervision activity should be related to the statutory purposes for which the term of supervision was imposed and the related objectives established for the individual case. Initial and subsequent supervision planning should develop specific goal-directed objectives to be accomplished by this defendant during the term of supervision and the strategies that the probation officer will undertake to monitor compliance and facilitate the accomplishment of those objectives. Every supervision contact should be integral to implementing the overall supervision strategies and have a purpose that is directly related to case objectives.

ii.  Good supervision is individualized. It is tailored to the risks, needs, and strengths presented by the individual defendant as determined by careful assessment of each case. Probation officers carry out their responsibilities by assessing the risks, needs, and strengths of each defendant to determine the appropriate level of supervision.

iii.  Good supervision is proportional. Supervision monitoring and intervention strategies are to involve no greater deprivations of liberty or property than are reasonably necessary to address relevant sentencing purposes. Supervision programs and tools are to be used when, but only when, they are the least intrusive means necessary to facilitate supervision goals.

iv.  Good supervision is multidimensional. Probation officers use skills from various disciplines to simultaneously monitor and, as necessary, control and correct defendant behavior. These include the investigative skills of law enforcement and the treatment and service-delivery skills of social workers. Investigative skills are used for the primary purpose of planning for success rather than documenting failure. The primary focus of treatment and service-delivery skills is to improve circumstances that are linked to criminal behavior or affect effective supervision practices (e.g., substance abuse, mental health, employment, education, and family and community support). The purpose of these interventions is to establish an environment designed to prevent noncompliance before it occurs. Although the appropriate blend of controlling and correctional strategies may differ from case to case, it is never appropriate for a supervision plan to be aimed solely at catching the defendant doing something wrong (the

6

job of law enforcement) or solely at providing social services to the defendant (the job of social workers).

   v.  Good supervision is proactive in implementation. Probation officers should be aware of changes in defendants' circumstances throughout the period of supervision and actively engage in assessing the impact of any changes on the appropriate level and type of supervision. Depending on the risk and needs in the individual case, this may not be accomplished solely from the probation office or with information provided by the defendant alone. In some cases, probation officers should independently assess a defendant's circumstances through contacting the defendant and his or her social network in the community.

   vi.  Good supervision is responsive to changes. Probation officers should adjust supervision as required on an ongoing basis to intervene with controlling and correctional strategies to address indications of heightened risk or to respond to behaviors that do not comply with the conditions of release. Response to noncompliance should be purposeful and proportionate, certain and timely, realistic and escalating; and should include elements designed to both provide a negative consequence for the behavior and change the circumstances that led to the noncompliance. On the other hand, there is a rebuttable presumption that the intrusiveness and frequency of supervision activities will be reduced over time for stable, compliant defendants who are meeting their supervision objectives. In implementing supervision, officers should be as quick with praise and other incentives for a defendant's accomplishments as they are to respond swiftly with both negative consequences and correctional interventions to noncompliant behavior.

e. Risk-Based Supervision

   i.  Certain core activities are to be undertaken during the course of supervision in every active supervision case to meet the probation officer's responsibility to stay informed, including visits to the defendant's home and contacts with members of the defendant's social network. In addition to keeping the probation officer informed, these core activities can also be used to implement controlling and correctional interventions. The frequency of core activities is to be dictated by the relevant issues at each stage in each case.

   ii.  Probation officers must carefully assess the risks and needs in all active supervision cases throughout the course of supervision. For defendants categorized as Low Risk by the Post Conviction Risk Assessment (PCRA), officers should generally supervise a case under standards that

require less intervention and less in-person contact with the defendant and his or her social network.[9]

2. Discretionary Conditions of Supervision: Discretionary conditions of supervision are differentiated into "standard" and "special" conditions. Standard conditions are applicable to all defendants. Special conditions provide for additional sanctions (in the case of probation or parole), restrictions, correctional interventions, or monitoring tools as necessary to achieve the purposes of sentencing in the individual case.

   a. Standard Conditions of Supervision

      i. Standard conditions are basic behavioral expectations for the defendant and minimum tools required by probation officers to adequately monitor the conduct and condition of all defendants under supervision.

      ii. The basic behavioral expectations set by the standard conditions coincide with avoidance of risk-related factors such as substance abuse and criminal associations and the strengthening of prosocial factors such as employment. The tools they provide include such basic strategies as reporting to the probation officer, providing notification of changes in residence or employment, and seeking permission to travel.

      iii. Since courts may, by local rule, modify, delete, or add to the standard conditions, standard conditions in one district may not be the same as those in another district. It is the conditions imposed on the judgment in the individual case that set both requirements for and limitations on the activities that officers may undertake in the individual case.

      iv. On the other hand, some level of consistency in standard conditions is necessary because approximately 20 percent of defendants are supervised in a district different than the sentencing district. As part of a national system, districts have a shared responsibility to maximize the effectiveness of supervision, regardless of where the defendant was sentenced.

   b. Special Conditions of Supervision

      i. Special conditions are to be recommended by probation officers only when the deprivation of liberty or property they entail is tailored specifically to address the issues presented in the individual case.

      ii. The most common special conditions impose additional sanctions for probation or parole cases (e.g., community service); restrictions on location, movement, and/or associations (e.g., community confinement,

---

[9] For an overview of the Federal Post Conviction Risk Assessment, *see* http://www.uscourts.gov/uscourts/ FederalCourts/PPS/PCRA_Sep_2011.pdf.

home confinement); correctional interventions (e.g., substance abuse or mental health treatment, financial counseling); or additional monitoring tools (e.g., substance abuse testing, financial disclosure).

iii. Other specifically crafted conditions may be imposed to address particular types of risks or needs presented in the individual case.

iv. In recommending a unique special condition, probation officers should ensure that the recommended wording is clear, legally sound, and meets the intended purpose.

v. Before recommending special conditions, probation officers should consider all of the mandatory and standard conditions that may already address a particular risk or need. If the probation officer determines that the mandatory and standard conditions do not adequately address the defendant's risks and needs, he or she should consider recommending a special condition.

vi. When considering special conditions, probation officers should avoid presumptions or the use of set packages of conditions for groups of defendants and keep in mind that the purposes vary depending on the type of supervision. Probation officers should ask first whether the circumstances in the specific case require such a deprivation of liberty or property to accomplish the relevant sentencing purposes.

vii. Probation officers generally recommend special conditions prior to the imposition of sentence. For defendants facing lengthy terms of imprisonment, probation officers should consider whether the risks and needs present at the time of sentencing will be present when the defendant returns to the community. In some cases, it may be appropriate to avoid recommending special conditions until the defendant is preparing to re-enter the community from prison.

viii. Throughout the ongoing supervision assessment and implementation process, probation officers recommend the addition, modification, deletion, amelioration, or suspension of conditions. Probation officers should recommend that unnecessary or unenforceable conditions be formally removed.

ix. When testing, evaluation, and treatment services are ordered (e.g., substance abuse treatment, mental health treatment, sex offender treatment), defendants should be required to pay for these services to the degree that they are able. The collection of reasonable co-payments for services meets both administrative and treatment objectives. It provides good stewardship of public money and ensures that limited funding resources are used for maximum benefit. Collection also meets the

treatment purpose of providing a symbol for defendants of their investment in the treatment process. Research has shown that if a defendant feels invested in the treatment process, he or she is more likely to achieve success. It is also important that the wording of the requirement to contribute to the cost of treatment does not inadvertently delegate the establishment of the amount of the co-payment to the probation officer. Districts are encouraged to establish a court-approved sliding scale for treatment services that is responsive to changes in a defendant's financial circumstances.

### III.    Social Science Research

A. The major theories and perspectives on the causes and most effective ways to reduce crime have been classified in various ways. The most established theories and perspectives include:

1. Principles of Effective Correctional Intervention

   a. Social science research has consistently demonstrated that some approaches to correctional intervention are more effective at reducing recidivism. In particular, researchers emphasize that effective interventions follow the principles of "risk," "need," and "responsivity."

      i. According to the risk principle, interventions should target those defendants with a higher probability of recidivism. Low-risk defendants may not continue to commit crimes even without intervention. Additionally, excessive correctional intervention for low-risk defendants may increase the probability of recidivism by disrupting prosocial activities and exposing defendants to antisocial associates. The majority of resources, therefore, should be devoted to higher-risk defendants. The risk level should be determined by actuarial classification instruments that measure static risk and dynamic risk factors.

      ii. Under the need principle, correctional interventions should be rooted in empirical knowledge about the sources of criminal conduct and should target known predictors of crime and recidivism that can be changed (also known as "dynamic risk factors" or "criminogenic needs"). Research has shown that criminogenic needs include such characteristics as procriminal cognitions, procriminal social networks, impulsivity, risk-taking, weak problem-solving and self-control skills, substance abuse, and deficits in educational, vocational, and employment skills.

      iii. According to the responsivity principle, interventions should be generally responsive, meaning that they should use the treatment modality that is capable of changing the major known predictors of recidivism. Research has demonstrated that the most effective approach is to use cognitive-

behavioral techniques. Cognitive-behavioral treatment involves exercises and instructions designed to alter the dysfunctional thinking patterns exhibited by many defendants. In addition to being generally responsive, correctional interventions must also be delivered in a style and mode that is specifically responsive to the learning styles and abilities of defendants. Depending on their characteristics (e.g., intelligence, levels of anxiety), defendants may have different learning styles and thus respond more readily to some techniques than to others.

2. Social Learning Theory

   a. According to social learning theory, social interactions differentially expose individuals to learning environments conducive to illegal conduct. Different social interactions shape thoughts that are negative or positive toward criminal behavior or that are neutralizing in the sense that they encourage offending by justifying or excusing it. Once internalized, these thoughts continue to regulate people's decisions.

   b. People can also become involved in crime through imitation – that is, modeling criminal conduct. Once people have initial forays into crime through both thoughts and imitation, they continue criminal acts through social reinforcements – rewards and punishment. The continued involvement depends on exposure to social reinforcements that reward this activity.

3. Social Control Theory

   a. According to social control theory, control is sustained by individuals' continuing relationship with the conventional order – by their bonds to family, school, work, everyday activities, and beliefs.

   b. As social bonds strengthen, "social capital" rises. Social capital is the resource produced by the quality of relationships between people (e.g., social support, contacts for jobs). Such capital furnishes resources that can be used to solve problems. For example, when an individual finds a job or a healthy relationship, social bonds can develop, social capital can be produced, and constraints previously absent from a person's life can become controlling.

4. Opportunity Theories

   a. According to opportunity theories, for a criminal event to occur, two ingredients must converge in time and space. First, there must be a person motivated to commit a criminal act. Second, the person must have the opportunity to commit a crime. Opportunity theories focus on the second ingredient.

b.  The effectiveness of community supervision will be increased to the extent that probation officers systematically work with persons on supervision, family and community members, and law enforcement agencies to reduce the extent to which individuals on supervision come into contact with opportunities for crime.

  i.  Probation officers may try to disrupt activities that increase crime opportunities for persons on supervision. For instance, probation officers may seek to prohibit contact with specific people (e.g., past co-offenders), traveling on specific streets, and access to specific establishments (e.g., bars where interpersonal conflict often ensues).

  ii.  Probation officers might also attempt to replace criminal opportunities with preferred alternatives. This process might involve officers "brokering" prosocial activities – that is, developing activities in the community or at home to lead persons on supervision away from crime opportunities.

  iii.  Probation officers may attempt to enlist a defendant's family, prosocial friends, and community members (e.g., minister, teacher) to assist in designing an opportunity reduction plan. Beyond those personally affiliated with persons on supervision, probation officers might develop relationships with other members of the community – from bartenders, to store owners, to parking lot attendants, to security guards, to police officers. These community members could be used to contact probation officers when defendants are entering locations where, in the past, there has been criminal activity. It might be possible to secure their assistance to help monitor when a specific defendant enters specific places.

  iv.  Probation officers monitor defendants through phone calls and personal contacts; monitor defendants through contacting others, including family members, employers, and treatment providers; and manage any risk they pose to individuals or the community by verifying their employment, monitoring their associates, restricting their travel, and taking other actions to make sure they are obeying the law.

Sources

D.A. Andrews & James Bonta, *The Psychology of Criminal Conduct*, Matthew Bender & Company, Inc. (2010).

Francis Cullen & Cheryl Johnson, "Rehabilitation and Treatment Programs" in *Crime and Public Policy* (pp: 293-344). J.Q. Wilson and J. Petersilia (Eds.), Oxford University Press (2011).

Francis Cullen, John Eck, & Christopher Lowenkamp, "Environmental Corrections – A New Paradigm for Effective Probation and Parole Supervision," *Federal Probation* (September 2002).

Robert Lilly, Francis Cullen, & Richard A. Ball, *Criminological Theory: Context and Consequences*, Sage Publications (2002).

Doris MacKenzie, *What Works in Corrections: Reducing the Criminal Activities of Offenders and Delinquents*, Cambridge University Press (2006).

Lawrence Sherman et al., *Preventing Crime: What Works, What Doesn't, What's Promising: A Report to the United States Congress.* 1997. Washington, DC, National Institute of Justice, available at: https://www.ncjrs.gov/works.

## IV.   Adoption of Standard Conditions by District Courts

It is recommended that each district court issue a local rule or standing order adopting the standard conditions listed in this document (see: Chapter 2). Some level of national uniformity is necessary, because approximately 20 percent of persons under supervision were sentenced in districts other than the district of supervision. Additionally, standard conditions represent core supervision practices required in every case to fulfill the statutory duties of probation officers under 18 U.S.C. § 3603. Finally, uniformity in standard conditions ensures efficient policy development and training at the national level.

## V.   Scope

A.  Chapter 2 describes the standard conditions approved by the Judicial Conference at its September 2016 session.  Chapter 3 describes the most common special conditions.

B.  For each condition, this document describes the:

1.  Statutory authority,[10]

2.  Standard condition language or sample special condition language,[11]

3.  Purpose, and

4.  Method of implementation.[12]

---

[10] The statutory authority for imposing discretionary conditions of probation is set forth at 18 U.S.C. § 3563(b). The statutory authority for imposing discretionary conditions of supervised release is set forth at 18 U.S.C. § 3583(d), which incorporates section 3563(b) by reference. While section 3563(b) lists optional conditions that may be imposed, section 3563(b)(22) also states that the court may provide that the defendant "satisfy such other conditions as the court may impose." This catchall provision "makes clear that the enumeration [in section 3563(b)] is suggestive only, and not intended as a limitation on the court's authority to consider and impose any other appropriate conditions." S. Rep. No. 98-225, at 93 (1983).

[11] While this section includes sample condition language for special conditions that is intended to be clear and legally sound, there may be cases where the court or the parties determine that different language is necessary to account for the individual circumstances in that case.  There may also be case law in individual circuits requiring variations from the sample special condition language. For instance, circuits vary in the level of specificity required in conditions to prevent over-delegation of authority to probation officers. Each district should fashion special conditions that comport with circuit case law requirements.

# Chapter 2: Standard Conditions of Supervision

## I.    Initial Reporting to Probation Office

A.  Statutory Authority

Under 18 U.S.C. § 3563(b)(15), the court may provide that the defendant "report to a probation officer as directed by the court or the probation officer."

B.  Standard Condition Language

You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.[13]

C.  Purpose

1.  This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).

2.  This condition enables the probation officer to satisfy the statutory requirements to be responsible for any defendant known to be in the judicial district, instruct the defendant about the conditions of supervision specified by the sentencing court, keep informed of the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(1)-(4) and (7), 3563(d), 3583(f).

3.  This condition allows the probation office to begin the supervision process. Social science research indicates that many of the defendants who violate their conditions do so during the first six months of supervision. It is therefore important that probation officers become involved as early as possible in planning the transition from prison to community-based supervision.

---

[12] The description of the method of implementation is based in part on guidance provided to probation officers by Judicial Conference policy. See note 8, *supra*.

[13] This condition applies to defendants released to the community after a period of imprisonment. For probation cases, the condition is: "You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of the time you were sentenced, unless the probation officer instructs you to report to a different probation office or within a different time frame."

D. Method of Implementation

1. In cases where defendants are released to the community after a period of imprisonment, the probation office collaborates with the Bureau of Prisons to monitor pending release dates for defendants. This practice allows the probation office to assign a probation officer to each defendant in advance of release from custody.

2. After notification of a defendant's projected release date, the probation officer provides instructions to the defendant regarding the preferred method of satisfying the requirement to report to the probation office. When the defendant is imprisoned, the instructions may be communicated through a Bureau of Prisons representative, by letter, or through a family member involved in the release planning process. When the defendant is released from a residential reentry center, the instructions may be communicated at an in-person meeting. (Note: The term "residential reentry center" applies to the variety of community facilities with which the Bureau of Prisons contracts for halfway house services.)

3. The initial investigation of defendants released from imprisonment starts as soon as the probation office is advised of the defendant's upcoming release. The probation officer develops the initial supervision plan within 30 days after the start of the supervision term, unless notice of the defendant's pending arrival was not received in time. If notice of the defendant's pending arrival is not received in time, the probation officer develops the initial supervision plan within 60 days after the start of the supervision term. For probationers, the initial supervision plan is developed within 60 days of the start of the supervision term.

4. The objective is to have as much of the supervision structure as possible in place before the beginning of supervision. For example, as necessary, probation officers should develop relationships with the defendant's social support network in the community, initiate requests for modification of conditions, make arrangements for basic needs (e.g., housing), and make appropriate referrals so that any required restrictive and correctional placements will coincide as closely as possible with release.

5. Bureau of Prisons inmates generally spend a portion of the final months of the term of imprisonment in a period of prerelease custody in home confinement or a residential reentry center in the community.[14] In these cases, the probation office collaborates with the Bureau of Prisons to assist with community reintegration and begin the community supervision process.

---

[14] Under 18 U.S.C. § 3624(c)(1)-(2), the Bureau of Prisons shall, to the extent practicable, ensure that an inmate spends a portion of the final months of the term of imprisonment under conditions (including in home confinement or at a residential reentry center) that will afford the inmate a reasonable opportunity to adjust to and prepare for reentry into the community. Under 18 U.S.C. § 3624(c)(3), the United States Probation System shall, to the extent practicable, offer assistance to an inmate during this period of prerelease custody.

6. In some cases, inmates are released from the Bureau of Prisons without a period of prerelease custody in home confinement or a residential reentry center.[15] The probation system uses various methods to track inmate release dates to ensure that inmates released without a period of prerelease custody receive community supervision, including monitoring release through electronic case management systems and contacting local and state jails or prisons where inmates are held.

7. When defendants fail to report to the probation office within 72 hours of release or sentencing, the probation office initiates efforts to locate the defendant, including relying on automated criminal record checks, contacting last-known associates, or requesting assistance from other law enforcement agencies. Failure to promptly locate the defendant results in notification to the court.

## II.   Reporting to Probation Officer

A. Statutory Authority

Under 18 U.S.C. § 3563(b)(15), the court may provide that the defendant "report to a probation officer as directed by the court or the probation officer."

B. Standard Condition Language

After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

C. Purpose

1. This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).

2. This condition enables the probation officer to satisfy the statutory requirements to be responsible for any defendant known to be in the judicial district, instruct the defendant about the conditions of supervision specified by the sentencing court, keep informed of the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(1)-(4) and (7), 3563(d), 3583(f).

3. This condition imposes an obligation on the defendant to maintain contact with the probation officer.

---

[15] This may occur for numerous reasons including when defendants have local, state, or federal detainers for new crimes or violations during prior terms of community release; when defendants have immigration detainers; when the Bureau of Prisons determines that inmates are not in need of reentry services; and when the Bureau of Prisons determines that inmates present a risk to community safety.

16

4.  By allowing the probation officer to keep informed of the defendant's conduct and condition, this condition facilitates the implementation of supervision methods demonstrated by social science to be effective at achieving positive outcomes.

    a.  Research suggests that correctional interventions that follow the principles of evidence-based practices (e.g., the risk principle, the need principle, and the responsivity principle) promote positive change in the defendant and reduce the probability of recidivism. Probation officers employ evidence-based correctional practices in their interactions with defendants and direct defendants to services to assist them – such as substance abuse or mental health treatment, medical care, training, or employment assistance – as ordered by the court. If probation officers are not aware of the defendant's conduct and condition, they are less able to employ effective practices in their interactions with defendants or to monitor their participation in correctional programs (see: Chapter 1, Section III(A)(1)).

    b.  Research suggests that exposure to antisocial associates increases the probability of recidivism. If probation officers keep informed of the defendant's conduct, including the defendant's associations, they may be able to implement strategies to reduce antisocial associates (see: Chapter 1, Section III(A)(2)).

    c.  Research suggests that the probability of recidivism is reduced when defendants develop and maintain prosocial bonds to family, school, and work. If the probation officer is informed of the defendant's conduct, the officer may be able to implement supervision strategies to assist with the development and maintenance of prosocial bonds (see: Chapter 1, Section III(A)(3)).

    d.  Research suggests that for a criminal event to exist, there must be an opportunity to commit a crime. Probation officers may work with defendants on supervision, family members, neighbors, other community members, and law enforcement agencies to structure and monitor the defendant's routine activities and reduce the extent to which defendants come into contact with criminal opportunities. Probation officers may also monitor defendants through contacts with the defendant and his or her social network; verifying employment; restricting travel; and providing positive reinforcement for prosocial routine activities. If probation officers are informed of the defendant's conduct and condition, they may be able to implement supervision strategies to reduce criminal opportunities (see: Chapter 1, Section III(A)(4)).

D.  Method of Implementation

1.  Reporting by the defendant to the probation officer is a core supervision strategy required for the probation officer to stay informed and implement controlling and correctional supervision strategies.

2.  At the beginning of the supervision process, the probation officer instructs the defendant about the conditions of supervision and provides the defendant with a written statement of the conditions. Additionally, the probation officer explains the required manner of reporting (i.e., in writing, by telephone, electronically, by visiting the probation office, by allowing visits to the home or elsewhere in the community) and the required frequency of reporting.

3.  Regardless of the reporting method, probation officers assess numerous factors, including the defendant's residence (e.g., the identity of other residents, the identity of frequent visitors), employment (e.g., work hours, reasons for any absences from work), financial statements (e.g., changes in cash inflows or outflows, unusual expenditures), and associations with others (e.g., whether defendant has prosocial or negative associations).

4.  Supporting documentation to reporting may include, as appropriate, written documents to verify change in residence, employment, expenses, community service hours, attendance at a community-sponsored drug or alcohol support program, or automobile registration.

5.  Throughout the period of supervision, the probation officer may adjust the frequency of reporting depending on the defendant's risk level and his or her progress on supervision. For instance, in the case of lower-risk defendants who demonstrate positive supervision progress, the probation officer may require the defendant to report less frequently. Conversely, in the case of higher-risk defendants or those who do not demonstrate positive supervision progress, the probation officer may require the defendant to report more frequently.

6.  The probation officer may also adjust the manner of reporting (i.e., visiting the defendant at the home rather than requiring visits to the probation office or permitting reporting by telephone rather than in writing) depending on the risk and needs in the individual case. In some circumstances, reporting to the probation officer at the home, the place of employment, or other locations in the community may be more informative and minimize disruption to the defendant's employment, family, or home environment. In other circumstances, reporting to the probation office itself may be more appropriate, including during an initial interview to review file documentation and clarify supervision obligations; when needed to collect and review complex financial documentation; when a safe environment is needed to discuss noncompliance with conditions of supervision or other difficult issues; and when repeated attempts to locate the defendant in the community have failed.

7. Probation officers are to respond immediately to indications of heightened risk by formulating strategies designed to prevent or ameliorate the effects of behavior not in compliance with the conditions of supervision. Among the early warning signs that a defendant may be at risk to recidivate are that the defendant does not report on time to the probation officer or the defendant's demeanor and attitude toward the probation officer change dramatically.

8. For defendants who qualify for low-risk supervision standards under Judicial Conference policy (see: Chapter 1, Section II(C)(1)), probation officers should generally use written, electronic, or telephonic reporting as the primary method of keeping informed rather than in-person reporting, and they should review and compare any documents accompanying reports to verify residence, employment, and payment of outstanding financial penalties.

## III.  Leaving the Judicial District

A.  Statutory Authority

Under 18 U.S.C. § 3563(b)(14), the court may provide that the defendant "remain within the jurisdiction of the court, unless granted permission to leave by the court or a probation officer."

B.  Standard Condition Language

You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

C.  Purpose

1. This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).

2. This condition enables the probation officer to satisfy the statutory requirements to be responsible for any defendant known to be in the judicial district, instruct the defendant about the conditions of supervision specified by the sentencing court, keep informed of the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(1)-(4) and (7), 3563(d), 3583(f).

3. This condition allows the probation officer to supervise the defendant by setting boundaries for travel without permission and by keeping the probation officer informed of the defendant's whereabouts.

19

4. This condition allows the probation officer to implement supervision methods demonstrated by social science to be effective at achieving positive outcomes.

   a. Research suggests that correctional interventions that follow the principles of evidence-based practices (e.g., the risk principle, the need principle, and the responsivity principle) promote positive change in the defendant and reduce the probability of recidivism. Probation officers employ evidence-based correctional practices in their interactions with defendants and direct defendants to services to assist them – such as substance abuse or mental health treatment, medical care, training, or employment assistance – as ordered by the court. If probation officers are not aware of the defendant's whereabouts, they are unable to implement effective supervision practices (see: Chapter 1, Section III(A)(1)).

   b. Research suggests that exposure to antisocial associates increases the probability of recidivism. If probation officers are not aware of the defendant's whereabouts, they are not able to implement strategies to reduce antisocial associations (see: Chapter 1, Section III(A)(2)).

   c. Research suggests that the probability of recidivism is reduced when defendants develop and maintain prosocial bonds to family, school, and work. If probation officers are not aware of the defendant's whereabouts, they are not able to implement strategies to assist with the development and maintenance of prosocial bonds (see: Chapter 1, Section III).

   d. Research suggests that for a criminal event to occur there must be an opportunity to commit a crime. Probation officers may work with defendants on supervision, family members, neighbors, other community members, and law enforcement agencies to structure and monitor the defendant's routine activities and reduce the extent to which defendants come into contact with criminal opportunities. Probation officers may also monitor defendants through contacts with the defendant and his or her social network, verifying employment, restricting travel, and providing positive reinforcement for prosocial routine activities. If probation officers are not aware of the defendant's whereabouts, they are not able to implement supervision strategies to reduce criminal opportunities (see: Chapter 1, Section III(A)(4)).

D. Method of Implementation

   1. At the beginning of the supervision process, the probation officer explains – and ensures that the defendant understands – the geographical boundaries of the judicial district.

   2. The probation officer also explains and ensures that the defendant understands the procedure for requesting permission to travel outside of the district. The defendant

20

should be instructed to submit any travel request in advance to allow the probation officer sufficient time to verify the nature and purpose of the travel.

3. Before allowing travel outside of the district, probation officers should make an assessment of any risk to others that would be posed by the travel; determine whether the defendant is in compliance with conditions of supervision (particularly those requiring payment of criminal or family financial obligations); and assess whether travel would disrupt defendant needs, including the maintenance or securing of employment, the participation in educational programs, or the strengthening of family ties.

4. All defendants granted permission to travel should be instructed to call the probation officer upon their return. Probation officers may also require higher-risk defendants to take extra measures, including calling the probation officer at specified times.

5. Probation officers should seek the express consent of the court before granting a defendant permission to travel outside of the United States. Before initiating the request with the court, probation officers should check with the consulate of the visited country to ensure that any special requirement or restriction on defendant travel can be met.

**IV.    Answering Truthfully Probation Officer's Questions**

A. Statutory Authority

Under 18 U.S.C. § 3563(b)(17), the court may provide that the defendant "answer inquiries by a probation officer."

B. Standard Condition Language

You must answer truthfully the questions asked by your probation officer.

C. Purpose

1. This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).

2. This condition enables the probation officer to satisfy the statutory requirements to keep informed of the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(4).

3. The purpose of this condition is to build positive rapport and facilitate an open and honest discussion between the probation officer and the defendant. Complete

21

and accurate information about the nature and circumstances of the offense and the history and characteristics of the defendant is necessary to implement effective supervision practices. This condition also promotes the safety of the probation officer by notifying him or her of possible safety threats (e.g., weapons or other occupants in the defendant's home with a history of violence). The probation officer attempts to develop and maintain a positive relationship with the defendant through transparent communication and the implementation of core correctional practices (e.g., active listening, development of problem-solving skills, and effective reinforcement).

4. This condition allows the probation officer to implement supervision methods demonstrated by social science to be effective at achieving positive outcomes.

   a. Research suggests that correctional interventions that follow the principles of evidence-based practices (e.g., the risk principle, the need principle, and the responsivity principle) promote positive change in the defendant and reduce the probability of recidivism. Without complete and accurate information about the nature and circumstances of the offense and the history and characteristics of the defendant, the probation officer cannot effectively assess the risk level of the defendant, identify criminogenic needs to address, and implement supervision practices that are responsive to the learning style and abilities of the defendant and demonstrated to alter thinking patterns (see: Chapter 1, Section III(A)(1)).

   b. Research suggests that exposure to antisocial associates increases the probability of recidivism. Without complete and accurate information about the nature and circumstances of the offense and the history and characteristics of the defendant, probation officers cannot implement strategies to reduce antisocial associations (see: Chapter 1, Section III(A)(2)).

   c. Research suggests that the probability of recidivism is reduced when defendants develop and maintain prosocial bonds to family, school, and work. Without complete and accurate information about the nature and circumstances of the offense and the history and characteristics of the defendant, probation officers cannot implement strategies to assist with the development and maintenance of prosocial bonds (see: Chapter 1, Section III(A)(3)).

   d. Research suggests that for a criminal event to occur there must be an opportunity to commit a crime. Probation officers may work with defendants on supervision, family members, neighbors, other community members, and law enforcement agencies to structure and monitor the defendant's routine activities and reduce the extent to which defendants come into contact with criminal opportunities. Probation officers may also monitor defendants through contacts with the defendant and his or her social network, verifying employment, restricting travel, and providing positive reinforcement for

prosocial routine activities. Without complete and accurate information about the nature and circumstances of the offense and the history and characteristics of the defendant, probation officers cannot implement supervision strategies to reduce criminal opportunities (see: Chapter 1, Section III(A)(4)).

D.  Method of Implementation

1.  The initial interview with the defendant is focused on orienting the defendant to the supervision process, establishing rapport with the defendant, exploring the defendant's goals, establishing initial expectations regarding the defendant's conduct and responsibilities, and developing supervision objectives.

2.  Through the initial interview and follow-up interviews, the probation officer identifies other members of the defendant's social network who should be interviewed and, as appropriate, enlisted as partners in the supervision process. Family members, friends, and other people who are important to the defendant can be ongoing sources of information for probation officers on emerging risk issues and can support the defendant in accomplishing supervision objectives.

3.  Through follow-up interviews with the defendant, probation officers gain additional knowledge about the level and type of supervision required to facilitate desired outcomes. Often, what probation officers learn in the process will require them to arrange additional meetings with the defendant to review the information, discuss objectives that may differ from those explored at the initial interview, and/or provide more detail on the specific requirements of certain conditions. Follow-up interviews also provide additional opportunities to discuss obstacles to desired outcomes and ways of addressing them and to provide information about what can be expected (and when) in terms of positive incentives for progress and disincentives for lack of progress.

4.  Probation officers are to respond immediately to indications of heightened risk by formulating strategies designed to prevent or ameliorate the effects of behavior that is not in compliance with the conditions of supervision. Among the early warning signs that a defendant may be at risk to recidivate are that the defendant is evasive or not truthful.

5.  Under Judicial Conference policy, if the defendant refuses to answer a specific question during an interview on the grounds that it is incriminating, the probation officer may not compel (e.g., through threat of revocation) the defendant to answer the question. If there is uncertainty about whether the invocation of the privilege against self-incrimination is valid (i.e., whether the specific question may lead to a realistic chance of incrimination), the probation officer should refer the matter to the court to make this determination.[16]

---

[16] *See also* David N. Adair, Jr., "The Privilege Against Self-Incrimination and Supervision," *Federal Probation* (June 1999); Stephen E. Vance, "Looking at the Law: An Updated Look at the Privilege Against Self-Incrimination in Post-Conviction Supervision," *Federal Probation* (June 2011).

**V.     Notification of Change in Residence**

A.  Statutory Authority

Under 18 U.S.C. § 3563(b)(17), the court may provide that the defendant "notify the probation officer promptly of any change in address."

B.  Standard Condition Language

You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

C.  Purpose

1.  This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).

2.  This condition enables the probation officer to satisfy the statutory requirements to keep informed of the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

3.  The purpose of this condition is to notify the probation officer of changes in a defendant's residence so that the probation officer can determine whether such a change poses a risk to the community or impacts the defendant's risk and needs. Advance notice of such a change is necessary to allow time to assess the suitability of the new residence.

4.  This condition allows the probation officer to implement supervision methods demonstrated by social science to be effective at achieving positive outcomes.

a.  Research suggests that correctional interventions that follow the principles of evidence-based practices (e.g., the risk principle, the need principle, and the responsivity principle) promote positive change in the defendant and reduce the probability of recidivism. These principles include targeting for intervention those defendants with the highest risk of recidivism and addressing their criminogenic needs. Changes in a defendant's residence may indicate a change in risk level and criminogenic needs (see: Chapter 1, Section III(A)(1)).

    b.   Research suggests that exposure to antisocial associates increases the probability of recidivism. Changes in a defendant's residence may indicate a change in the defendant's exposure to antisocial associates (see: Chapter 1, Section III(A)(2)).

    c.   Research suggests that the probability of recidivism is reduced when defendants develop and maintain prosocial bonds with family and prosocial associates. Changes in a defendant's residence may indicate a change in the defendant's bonds with family and prosocial associates (see: Chapter 1, Section III(A)(3)).

    d.   Research suggests that for a criminal event to occur there must be an opportunity to commit a crime. Probation officers may work with defendants on supervision, family members, neighbors, other community members, and law enforcement agencies to structure and monitor the defendant's routine activities and reduce the extent to which defendants come into contact with criminal opportunities. Probation officers may also monitor defendants through contacts with the defendant and his or her social network, verifying employment, restricting travel, and providing positive reinforcement for prosocial routine activities. Changes in a defendant's residence or employment may indicate a change in crime opportunities (see: Chapter 1, Section III(A)(4)).

D.  Method of Implementation

    1.   At the beginning of the supervision process, the probation officer explains to the defendant how notification of changes in residence should be made (i.e., by telephone, in writing, etc.).

    2.   If the defendant intends to change or has changed the place or circumstances of his or her residence, the probation officer assesses whether the change is appropriate to meet the defendant's risk and needs and whether it poses any risk to the defendant or to others.

**VI.**    **Visits by Probation Officer**

A.  Statutory Authority

    Under 18 U.S.C. § 3563(b)(16), the court may provide that the defendant "permit a probation officer to visit him at his home or elsewhere as specified by the court."

B.  Standard Condition Language

You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

C.  Purpose

1.  This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).

2.  This condition enables the probation officer to satisfy the statutory requirements to keep informed of the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

3.  This condition allows the probation officer to implement effective supervision strategies by making the probation officer aware of the defendant's living environment, standard of living, and ability to pay criminal debt; by facilitating the development of rapport with the defendant's family members, friends, and other members of the defendant's support network; and by providing an environment that may in some cases be more conducive to open and honest communication than the probation office.

4.  This condition allows the probation officer to implement supervision methods demonstrated by social science to be effective at achieving positive outcomes.

    a.  Research suggests that correctional interventions that follow the principles of evidence-based practices (e.g., the risk principle, the need principle, and the responsivity principle) promote positive change in the defendant and reduce the probability of recidivism. Allowing officers to visit the home, work, and the community permits them to be aware of the defendant's risk level and criminogenic needs throughout the period of supervision and to implement supervision practices that are responsive to the learning style and abilities of the individual defendant and are demonstrated to alter thinking patterns (see: Chapter 1, Section III(A)(1)).

    b.  Research suggests that the probability of recidivism is reduced when defendants develop and maintain prosocial bonds to family, school, and work. Allowing the probation officer to be aware of the defendant's home, family, and work environment through home and community visits helps the probation officer become aware of the defendant's social environment and assists with the creation of a prosocial environment (see: Chapter 1, Section III(A)(2)).

    c.  Research suggests that exposure to antisocial associates increases the probability of recidivism. Home and community visits permit the probation

officer to remain aware of the defendant's associates (see: Chapter 1, Section III(A)(3)).

    d.   Research suggests that for a criminal event to occur there must be an opportunity to commit a crime. Probation officers may work with defendants on supervision, family members, neighbors, other community members, and law enforcement agencies to structure and monitor the defendant's routine activities and reduce the extent to which defendants come into contact with criminal opportunities. Probation officers may also monitor defendants through contacts with the defendant and his or her social network, verifying employment, restricting travel, and providing positive reinforcement for prosocial routine activities. Allowing the probation officer to visit the home, work, or elsewhere in the community permits the probation officer to be aware of the defendant's living environment and social network in order to implement supervision strategies to reduce criminal opportunities (see: Chapter 1, Section III(A)(4)).

## D. Method of Implementation

1. Certain core activities are to be undertaken during the course of supervision to meet the probation officer's responsibility to stay informed and to implement correctional and controlling supervision strategies. These activities include visiting the defendant's home and developing contacts within the defendant's social network.

2. The supervision planning process begins with an initial investigation during which probation officers review documentation, meet with defendants, conduct on-site examinations of their residence, and develop contacts within the defendant's social network.

3. The first visit to the defendant's home is generally more thorough than subsequent visits and serves multiple purposes: to gather information regarding the home and its occupants, to encourage and answer questions regarding the supervision process, to enlist on-the-scene supervision partners, and to observe for weapons or other potential safety hazards. The probation officer asks the defendant to submit some form of documentation of residency, which may include a mortgage, lease, or utility bill, and attempts to meet with other occupants. The probation officer also requests consent to walk through each room in the home and any structures on the defendant's property. Should the probation officer view any items prohibited by the conditions of supervision in plain view, he or she may seize and remove them. The probation officer does not enter any closed areas without the consent of the defendant. The information obtained during the first home visit is used to assess the defendant's risks, needs, and strengths for the purpose of preparing the initial supervision plan.

4. Following the first home visit, the probation officer continues to conduct visits in a manner and at a frequency specifically tailored to the risk and needs of the defendant and the overall goals of supervision. Some visits are brief, with a functional purpose (e.g., deliver paperwork related to supervision or other court correspondence). Others may involve a lengthy discussion of a specific goal of supervision, such as assessing mental health stability or offering assistance in securing employment. Home visits are often conducted in a manner that prevents disruption of the defendant's prosocial activities (e.g., work), routinely requiring probation officers to conduct visits during non-traditional work hours (e.g., evenings and weekends). Probation officers may use home visits to relieve certain defendants of the obligation or burden often associated with reporting to a probation office, particularly when defendants lack transportation, are physically disabled, live in a remote area, care for small children, or otherwise find it difficult to travel to a probation office.

5. The probation officer may also visit the defendant at other locations within the community, such as the defendant's place of employment; a treatment, volunteer, or community service agency; or a family member or significant other's residence. These visits are used to verify compliance with employment, training, community service, or treatment conditions, or to accommodate the defendant's regular schedule of activities. At all times during these visits, probation officers are sensitive to the need for discretion and protection of confidential information related to supervision. Probation officers should also strive to create on-the-scene partners in the supervision process by developing sources of information and positive support for defendants. These early contacts provide the first opportunity to establish rapport with family members and significant others. During home visits, the probation officer notes and assesses unexplained changes in financial condition, symptoms of mental health crisis or substance abuse relapse, signs of a need for subsistence assistance, or potential return to criminal activity.

6. Probation officers are to respond immediately to indications of heightened risk by formulating strategies designed to prevent or ameliorate the effects of behavior that is not in compliance with the conditions of supervision. Among the early warning signs that a defendant may be at risk to recidivate is that the defendant can seldom be found at the residence.

7. The frequency of core supervision activities such as visits to the home or elsewhere in the community is to be dictated by the relevant issues in each case. For defendants who qualify for low-risk supervision standards under Judicial Conference policy (see: Chapter 1, Section II(C)(1)), some of the core activities will be undertaken only during the initial assessment, near the end of the supervision term, or in response to changed circumstances. In higher-risk cases, the supervision objectives and the purpose(s) of each activity are to guide the establishment of a fieldwork schedule, which should incorporate non-traditional early morning, evening, and/or weekend hours as necessary to promote compliance and accomplish the objectives in the individual case.

**VII.    Lawful Employment and Notification of Change in Employment**

A.  Statutory Authority

Under 18 U.S.C. § 3563(b)(4), the court may provide that the defendant "work conscientiously at suitable employment or pursue conscientiously a course of study or vocational training that will equip him for suitable employment."

Under 18 U.S.C. § 3563(b)(17), the court may provide that the defendant "notify the probation officer promptly of any change in . . . employment."

B.  Standard Condition Language

You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

C.  Purpose

1.  This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).

2.  This condition enables the probation officer to satisfy the statutory requirements to keep informed of the conduct and condition of the defendant and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

3.  This condition allows the officer to implement supervision methods demonstrated by social science to be effective at achieving positive outcomes.

a.  Research suggests that correctional interventions that follow the principles of evidence-based practices (e.g., the risk principle, the need principle, and the responsivity principle) promote positive change in the defendant and reduce the probability of recidivism. One of the evidence-based practices principles is that officers should address criminogenic needs, including unemployment. Criminal behavior increases with frequent unemployment and longer periods of unemployment. There is also evidence for the importance of obtaining meaningful, long-term employment in desisting from crime (see: Chapter 1, Section III(A)(1)).

29

    b. Research suggests that exposure to antisocial associates increases the probability of recidivism. Employment in a suitable environment may reduce access to antisocial peers and increase associations with prosocial peers (see: Chapter 1, Section III(A)(2)).

    c. Research suggests that the probability of recidivism is reduced when defendants develop and maintain prosocial bonds to work (see: Chapter 1, Section III(A)(3)).

    d. Research suggests that for a criminal event to occur there must be an opportunity to commit a crime. Probation officers may work with defendants on supervision, family members, neighbors, other community members, and law enforcement agencies to structure and monitor the defendant's routine activities and reduce the extent to which defendants come into contact with criminal opportunities. Probation officers may also monitor defendants through contacts with the defendant and his or her social network, verifying employment, restricting travel, and providing positive reinforcement for prosocial routine activities. Lawful employment may reduce opportunities for crime by increasing monitoring of activities by employers and other prosocial individuals and providing structured and prosocial routine activities (see: Chapter 1, Section III(A)(4)).

4. Lawful employment may also help defendants develop financial stability and pay any court-imposed fees, fines, or restitution.

D. Method of Implementation

1. Federal regulations define full-time employment as at least 30 hours per week.[17]

2. Probation officers are to assist all defendants, as necessary, in seeking and maintaining employment commensurate with their earning ability.

3. Securing a job is difficult for many former prisoners as they may lack basic skills, have low levels of education, and have limited work experience history. Additionally, formerly incarcerated individuals often face restricted access to particular jobs or opposition from employers because they are reluctant to hire someone with a felony conviction.

4. Defendants who lack educational and employment skills will require referral for correctional interventions suitable to their circumstances, such as job training, education, or literacy. Defendants who have not had experience holding down a job will also likely require job referral services and assistance in acquiring basic job search, application, and interview skills and assistance in preparing for the

---

[17] *See*, *e.g.*, Internal Revenue Service Special Rules Relating to Group Health Plans, 26 C.F.R. § 54.9831–1.

work environment. Defendants who do not actively seek employment might be required to report daily or weekly on their job search activities.

5. Under this condition, the defendant is required to maintain lawful employment unless excused by the probation officer. Reasons for excusing a defendant from full-time employment may include schooling, vocational training, childcare obligations, eldercare obligations, disability, age, or a serious health condition.

6. Whatever the reason for employment problems, probation officers should strive to have all defendants productively occupied throughout the year, and no defendants should be permitted to be idle for a prolonged period unless excused due to disability or earned retirement. Probation officers should consider requesting a period of community service (see: Chapter 3, Section IX) for those defendants who are not productively occupied.

7. Employment or the defendant's efforts at securing employment are to be verified in every case. Employment may be verified through a careful review of paper documentation (including, where appropriate, tax returns), contacts with employers, or observation of the defendant at work. The choice of verification strategies is to be determined by the nature of the employment, the potential for loss of employment, the financial responsibilities of the defendant, and the risk factors presented by the employment. Probation officers should be as discreet as possible in making employment inquiries and have case-specific reasons before undertaking verification strategies that have the potential to jeopardize employment.

8. In higher-risk cases where employment has been identified as a risk factor, the probation officer should ordinarily observe the place and general operation of the employment and make direct contact with the employer.

9. Probation officers are to respond immediately to indications of heightened risk by formulating strategies designed to prevent or ameliorate the effects of behavior that is not in compliance with the conditions of supervision. Among the early warning signs that a defendant may be at risk to recidivate are that the defendant changes jobs frequently for no apparent reason.

10. At the beginning of the supervision process, the probation officer explains to the defendant how notification of changes in employment should be made (i.e., by telephone, in writing, etc.).

11. If the defendant intends to change or has changed the place or circumstances of his or her employment, the probation officer assesses whether the change is appropriate to meet the defendant's risk and needs and whether it poses any risk to the defendant or to others.

12. When a defendant changes employment frequently, abruptly, or for reasons that are unclear, the probation officer should contact the former employer to determine the circumstances under which the defendant left. Contact with the former employer may highlight specific issues, such as absenteeism or conflicts with supervisors or co-workers, that may indicate a need for correctional intervention.

## VIII. Communicating/Interacting with Persons Engaged in Criminal Activity and Felons

A. Statutory Authority

Under 18 U.S.C. § 3563(b)(6), the court may provide that the defendant "refrain from . . . associating unnecessarily with specified persons."

B. Standard Condition Language

You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

C. Purpose

1. This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).

2. This condition enables the probation officer to satisfy the statutory requirements to keep informed of the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

3. The purpose of this condition is to prevent antisocial relationships and to encourage prosocial relationships. It provides defendants with a justification to avoid associating with persons convicted of felonies and may deter future criminal conduct that may be jointly undertaken with those persons.

4. This condition allows the probation officer to implement supervision methods demonstrated by social science to be effective at achieving positive outcomes.

a. Research suggests that correctional interventions that follow the principles of evidence-based practices promote positive change in the defendant and reduce the probability of recidivism. One of the principles is that probation officers should address criminogenic needs, including antisocial associates (see: Chapter 1, Section III(A)(1)).

b. Research suggests that exposure to antisocial associates increases the probability of recidivism. Antisocial associates provide opportunities to learn

the techniques of crime and the learning of antisocial attitudes (see: Chapter 1, Section III(A)(2)).

    c. Research suggests that the probability of recidivism is reduced when defendants develop and maintain bonds to prosocial individuals and institutions (see Chapter 1, Section III(A)(3)).

    d. Research suggests that for a criminal event to occur there must be an opportunity to commit a crime. Probation officers may work with defendants on supervision, family members, neighbors, other community members, and law enforcement agencies to structure and monitor the defendant's routine activities and reduce the extent to which defendants come into contact with criminal opportunities. Probation officers may also monitor defendants through contacts with the defendant and his or her social network, verifying employment, restricting travel, and providing positive reinforcement for prosocial routine activities. If the defendant communicates or interacts with a person whom he or she knows to be engaged, or planning to be engaged, in criminal activity, the defendant is exposed to opportunities to commit crimes (see: Chapter 1, Section III(A)(4)).

D. Method of Implementation

The strategies for monitoring a defendant's associations with others include inquiring into the identities of unknown persons present during visits by the probation officer to the defendant's home or elsewhere in the community, noting the license plate numbers of unknown vehicles seen during visits to the defendant's home for verification of ownership, randomly checking telephone toll records, and/or investigating the identity and criminal history of prospective employers or employees. Probation officers also encourage defendants to be engaged in prosocial activities (e.g., employment, education) with prosocial associates.

## IX.  Notification of Arrest or Questioning by Law Enforcement Officer

A. Statutory Authority

Under 18 U.S.C. § 3563(b)(18), the court may provide that the defendant "notify the probation officer promptly if arrested or questioned by a law enforcement officer."

B. Standard Condition Language

If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

C. Purpose

1. This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).

2. This condition enables the probation officer to satisfy the statutory requirements to keep informed as to the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

3. This condition allows the probation officer to be aware of potential criminal activity or involvement in high-risk situations by the defendant, and it assists in ensuring that the defendant is complying with other conditions, such as the prohibition on committing new crimes (see: Chapter 1, Section II(A)(1)) or associating with those involved in criminal activity (see: Chapter 2, Section VIII).

D. Method of Implementation

1. The probation officer relies on automated criminal record checks and periodically conducts criminal record checks.

2. For higher-risk defendants or for cases where the defendant's criminal history includes violence or a pattern of criminal activity or criminal associations, the probation officer should make frequent contact with law enforcement agencies that may have information about the activities of the defendant. In dealing with other agencies, probation officers should assess how much disclosure is necessary and proper in order to obtain the necessary cooperation from the other agency and be sensitive to the court's confidentiality policies. Any doubts should be resolved by securing court permission for the disclosure.

## X.   Possession of Firearm, Ammunition, Destructive Device, or Dangerous Weapon

A. Statutory Authority

Under 18 U.S.C. § 3563(b)(8), the court may provide that the defendant "refrain from possessing a firearm, destructive device, or other dangerous weapon."

B. Standard Condition Language

You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed or was modified for the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers).

C. Purpose

1. This condition serves the statutory sentencing purpose of public protection. 18 U.S.C. § 3553(a)(2)(C).

2. By allowing the probation officer to supervise the defendant without risk to safety caused by the possession of weapons, this condition enables the probation officer to satisfy the statutory requirements to keep informed as to the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

3. This condition promotes the public safety and reduces safety risks posed by the defendant to the community and the probation officer, and it assists in ensuring that the defendant is complying with other conditions such as the prohibition on committing new crimes, including the prohibition on possession of certain weapons for defendants convicted of certain crimes.

D. Method of Implementation

1. At the beginning of the supervision process, the probation officer explains the types of firearms, ammunition, destructive devices, and other dangerous weapons that are prohibited and inquires whether the defendant possesses any of these items in his or her place of residence or employment or vehicle(s).

2. For the purpose of implementing this condition, the terms "firearm," "ammunition," "destructive device," and "dangerous weapon" are defined as follows:

   a. The term "firearm" means any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosive, the frame or receiver of any such weapon, or any firearm muffler or firearm silencer.[18]

   b. The term "ammunition" means ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm.[19]

   c. The term "destructive device" includes:

      i. any explosive, incendiary, or poison gas – bomb, grenade, rocket having a propellant charge of more than four ounces, missile having an explosive or incendiary charge of more than one-quarter ounce, mine, or device similar to any of these devices; and

---

[18] *See* 18 U.S.C. § 921(a)(3).
[19] *See* 18 U.S.C. § 921(a)(17)(A).

ii.  any type of weapon (other than a shotgun or a shotgun shell, which the Attorney General finds is generally recognized as particularly suitable for sporting purposes) by whatever name known that will, or that may be readily converted to, expel a projectile by the action of an explosive or other propellant, and that has any barrel with a bore of more than one-half inch in diameter.[20]

d.  The term "dangerous weapon" is defined as anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person (e.g., nunchakus or tasers).

3.  In some cases, the defendant may have possession of, or access to, these prohibited items before supervision commences. Legal prohibition against possessing firearms does not deprive a person of his or her remaining ownership interest in seized or surrendered firearms.[21] Therefore, the probation officer coordinates with the defendant to facilitate removal of the items from areas over which the defendant has access or control by making a temporary seizure and maintaining custody of the items until the term of supervision expires (for misdemeanor cases); by instructing the defendant to temporarily (for misdemeanor cases) or permanently transfer the items to another person who has a lawful right to possess them and provides adequate assurances that the defendant will not retain any influence over their use; or by consulting the court of jurisdiction for direction on the appropriate equitable disposition when the defendant is legally, permanently prohibited from possessing the items.

4.  If the defendant is legally prohibited from possessing certain types of weapons (*see, e.g.,* 18 U.S.C. § 922), the probation officer explains the additional potential exposure to criminal liability for a violation of this condition.

5.  Throughout the term of supervision, the probation officer conducts home visits with the defendant (see: Chapter 2, Section VI).  Should the probation officer observe a prohibited firearm, ammunition, destructive device, or dangerous weapon in plain view, the probation officer may remove the item(s).

6.  Certain defendants may be subject to a special condition authorizing search and seizure (see: Chapter 3, Section XV).  In these cases, a probation officer may conduct a search if reasonable suspicion exists to believe the defendant is in possession of a prohibited firearm, ammunition, destructive device, or dangerous weapon.

## XI.  Acting as Confidential Human Source Informant

### A.  Statutory Authority

---

[20] *See* 18 U.S.C. § 921(a)(4).
[21] *Henderson v. United States,* 135 S.Ct. 1780 (2015).

Under 18 U.S.C. § 3563(b)(22), the court may provide that the defendant "satisfy such other conditions as the court may impose."

B.  Standard Condition Language

You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

C.  Purpose

1.  A confidential human source or informant is a defendant who engages in the prohibited activity of associating with persons engaged in criminal activity for the purpose of furnishing information to or acting as an agent for a law enforcement or intelligence agency. Since the inception of the federal criminal justice system, prosecutors have used defendants supervised in the community as confidential human sources or informants.

2.  The activities required of confidential informants or human sources, however, may potentially conflict with conditions normally imposed by a court. Acting as a confidential informant or human source is generally inconsistent with the rehabilitative and re-integrative goals of supervision.

3.  Such activities may also pose risks to the probation officers who supervise these individuals, especially when they have limited knowledge or no knowledge of the nature of the informant's activities.

4.  There are rare occasions, however, when the law enforcement benefits to the community justify permitting the defendant to engage in this high-risk activity.

5.  In these cases, strict monitoring by the court/probation office is necessary for the safety of the community, the defendant, and the supervising probation officer.

D.  Method of Implementation

1.  Probation officers establish a systematic, coordinated approach to supervise a confidential informant or human source in order to improve probation officer safety and reduce the risk for the defendant or others in the community.

2.  There should be a written agreement that clearly defines the roles, duties, and reporting responsibilities of the probation office, the defendant, the United States Attorney's Office, and the law enforcement agent during the period approved. This agreement should describe the conditions of supervision that are suspended as a result of the cooperation (i.e., some criminal association) and those that are not.

XII.    **Notification of Risk Posed by Defendant**

A.  Statutory Authority

Under 18 U.S.C. § 3563(b)(22), the court may provide that the defendant "satisfy such other conditions as the court may impose."

B.  Standard Condition Language

If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

C.  Purpose

1.  This condition serves the statutory sentencing purpose of public protection. 18 U.S.C. § 3553(a)(2)(C).

2.  This condition enables the probation officer to satisfy the statutory requirements to keep informed about the conduct and condition of the defendant and report the defendant's conduct and condition to the sentencing court. 18 U.S.C. §§ 3603(2).

3.  The purpose of this condition is to notify others of physical or financial harm that may be caused by the defendant to provide them with the necessary information to avoid risk of victimization.

4.  This condition allows the officer to implement supervision methods demonstrated by social science to be effective at achieving positive outcomes. Research suggests that for a criminal opportunity to exist, two ingredients must converge in time and space. First, there must be a person motivated to commit a criminal act. Second, the person must have the opportunity to commit a crime. Opportunity theories of crime focus not on why people commit crimes but rather on why opportunities to commit crime exist. They examine the lifestyles or routines – how it is that defendants and potential victims or targets arrive at the same place at the same time, thereby making criminal offenses possible. The advice to reduce crime opportunities often leads to a focus on aspects of the environment that are most easily manipulated. Probation officers may prevent crimes by notifying potential victims of potential risks posed by defendants under supervision (see: Chapter 1, Section III(A)(4)).

D.  Method of Implementation

1.  In light of the "special relationship" between probation officers and the people they supervise, probation officers have a duty to warn when the probation officer

determines that the person under supervision presents a reasonably foreseeable risk of harm to a third party.[22]

2. The Administrative Office of the United States Courts, Office of the General Counsel, has provided guidelines to assist probation officers in complying with obligations to warn third parties. The guidelines for disclosure of information concerning third-party risk include the following:

   a. The circumstances of all defendants under supervision should be reviewed periodically to determine whether they might pose a reasonably foreseeable danger to a third party.

   b. Guidelines for disclosure of third-party risk information are selective. A warning is not required in every case, only where a reasonably foreseeable risk of harm to a specific third party is believed to exist.

   c. The requirement that a defendant under supervision refrain from engaging in a particular type of employment or inform his or her employer or another specified third party about the defendant's criminal conviction generally should be imposed, if necessary, by the court as a formal special condition of probation.[23]

   d. A disclosure requirement must be reasonably related to the correctional treatment of the defendant and the protection of the public.

   e. If the officer determines that a reasonably foreseeable risk exists, then the officer should decide, based on the seriousness of the risk created and the possible jeopardy to the defendant's employment or other aspects of rehabilitation, whether to (i) give no warning but increase the defendant's supervision sufficiently to minimize the risk; (ii) give no warning but preclude the defendant from the employment; or (iii) give a confidential warning to the specific third party sufficient to put the party on notice of the risk.

---

[22] Courts have applied the "special relationship" analysis set out in The Restatement (Second) of Torts § 315 (1965) and articulated in *Tarasoff v. Regents of the University of California*, 551 P. 2d 334 (Cal. 1976) (psychiatrists have "special relationships" with patients), to the relationship between a probation or parole officer and a person under supervision. *See, e.g., Reiser v. District of Columbia*, 563 F.2d 462 (D.C. Cir. 1977).

[23] Judicial Conference policy states that the requirement that a defendant refrain from engaging in a particular type of employment generally should be imposed by the court as a formal special condition of supervision; *See also United States v. Peterson*, 248 F.3d 79, 87 (2d Cir. 2001) ("[T]o the extent that the conditions contemplate employer notification of the offense of conviction, we believe . . . that the court must determine, rather than leaving to the discretion of the probation officer, whether such notification is required. If the court believes such notification should be mandatory for certain types of employment but not others, the court may specify guidelines to direct the probation officer, but may not simply leave the issues of employer notification to the probation officer's unfettered discretion."); *United States v. Doe*, 79 F.3d 1309 (2d Cir. 1996) (requiring probation officers to secure court approval prior to making a warning that could result in loss of employment).

  f. The officer may permit the defendant to make the disclosure with the understanding that the probation officer will verify it.

## XIII. Following Instructions Related to Conditions of Supervision

A. Statutory Authority

  Under 18 U.S.C. § 3563(b)(22), the court may provide that the defendant "satisfy such other conditions as the court may impose."

B. Standard Condition Language

  You must follow the instructions of the probation officer related to the conditions of supervision.

C. Purpose

  1. This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).

  2. This condition allows the probation officer to satisfy the statutory requirements to keep informed as to the conduct and condition of the defendant on supervision, report his or her conduct and condition to the sentencing court, and use all suitable methods to aid the defendant and bring about improvements in his conduct and condition. 18 U.S.C. § 3603(2)-(3).

  3. This condition enables the probation officer to provide enforceable instructions that reasonably derive from or are necessary to ensure compliance with the court-imposed conditions of supervision.

D. Method of Implementation

  1. The initial interview with the defendant is focused on orienting defendants to the supervision process, establishing rapport with the defendant, exploring the defendant's goals, establishing initial expectations regarding the defendant's conduct and responsibilities, and developing supervision objectives. The probation officer discusses the expectations of the defendant to comply with the supervision conditions and explains the methods that the probation officer may use to ensure compliance with the conditions.

  2. Throughout the term of supervision, the probation officer assesses numerous factors to remain aware of the defendant's conduct and condition, to report to the court, and to use suitable methods to change the defendant's conduct and condition. These factors include the defendant's residence (e.g., the identity of other residents, the identity of frequent visitors), employment (e.g., work hours, reasons for any absences from work), and financial statements (e.g., changes in cash inflows or outflows, unusual expenditures). In order to assess these factors,

the probation officer may instruct the defendant to provide supporting documentation such as mortgage statements, rental agreements, paystubs, or banking statements.

3.  The probation officer may instruct the defendant to abide by rules that are required to satisfy other conditions of supervision. These may include instructing the defendant to provide tax returns or other documentation to ensure that the defendant is complying with the condition to not commit another federal, state, or local crime (see: Chapter 1, Section II); enforcing the condition restricting travel by instructing a defendant permitted to travel outside of the district to call the probation officer upon his or her return (see: Chapter 2, Section III); enforcing the condition prohibiting weapon possession by instructing the defendant to temporarily or permanently transfer the weapons to another person (see: Chapter 2, Section X); and enforcing the condition requiring lawful employment by instructing defendants to report daily or weekly on their job search activities (see: Chapter 2, Section VII).

# Chapter 3: Special Conditions of Supervision

**I.**     **Substance Abuse Treatment, Testing, and Abstinence**

A.  Statutory Authority

Under 18 U.S.C. § 3563(b)(7), the court may provide that the defendant "refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802), without a prescription by a licensed medical practitioner."

Under 18 U.S.C. § 3563(b)(9), the court may provide that the defendant "undergo available medical, psychiatric, or psychological treatment, including treatment for drug or alcohol dependency, as specified by the court, and remain in a specified institution if required for that purpose."

Under 18 U.S.C. § 3563(b)(22), the court may provide that the defendant "satisfy such other conditions as the court may impose."

B.  Sample Condition Language

You must participate in an [inpatient/outpatient] substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.).  [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the program.]]

You must participate in an [inpatient/outpatient] alcohol abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the program.]]

You must not use or possess any controlled substances without a valid prescription. If you do have a valid prescription, you must disclose the prescription information to the probation officer and follow the instructions on the prescription.

You must submit to substance abuse testing to determine if you have used a prohibited substance. [[You must pay the costs of the testing.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the testing.]] You must not attempt to obstruct or tamper with the testing methods.

You must not use or possess alcohol.

You must not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances (e.g., synthetic marijuana, bath salts, etc.) that impair a person's physical or mental functioning, whether or not intended for human consumption, except with the prior approval of the probation officer.

C. Purpose

1. This condition serves the statutory sentencing purposes of public protection, deterrence, and rehabilitation. 18 U.S.C. § 3553(a)(2)(B)-(D).

2. By providing for the ability to require substance abuse treatment, testing, and abstinence, this condition enables the probation officer to satisfy the statutory requirements to keep informed of the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

3. Social science research suggests that correctional interventions that follow the principles of evidence-based practices (e.g., the risk principle, the need principle, and the responsivity principle) promote positive change in the defendant and reduce the probability of recidivism. Under the need principle, correctional interventions should be rooted in empirical knowledge about the sources of criminal conduct and should target known predictors of crime and recidivism that can be changed (also known as "dynamic risk factors" or "criminogenic needs"). They are human deficits directly related to the propensity to commit crime that can be changed in rehabilitation programs. Research has shown that criminogenic needs include substance abuse. Research has also shown that substance abuse is interrelated with other criminogenic needs. Illicit substance abuse draws one to antisocial others, exposes one to antisocial attitudes, interferes with prosocial relationships, hampers success at employment, and leads to impulsive decision making (see: Chapter 1, Section III(A)(1)).

4. Drug testing deters the defendant from possessing illegal drugs by making him or her aware that unlawful possession can be discovered at any time through drug testing, protects the public by enhancing the ability of the probation officer to detect unlawful substances and by assisting with substance abuse treatment, and assists with substance abuse treatment by providing a barometer for change.

5. Abstinence from alcohol use may be necessary because research shows that alcohol use is likely to trigger a recovering drug addict's return to drug use. Additionally, substance-dependent defendants may substitute alcohol for their drug of choice.

6. Social science evaluations of drug treatment programs indicate positive effects on recidivism. Almost consistently, research demonstrates that correctional programs that are based on a cognitive-behavioral model are more effective than other

modes of treatment. Cognitive-behaviorism assumes that cognitions affect behavior, people can monitor and alter their cognitive activity, and changes in cognitions will lead to changes in behavior (see: Chapter 1, Section III(A)(1); Chapter 3, Section X).

D.  Method of Implementation

1.  Considerations for Recommendation of Special Conditions

   a.  The special condition requiring the defendant to participate in substance abuse treatment should be worded to permit the probation officer, in consultation with the treatment provider, to adjust the modality, duration, and intensity of treatment to the risk and needs presented by the defendant.

   b.  When testing or treatment services are ordered, defendants should be required to pay for these services to the degree that they are able. The collection of reasonable co-payments for services meets both administrative and treatment objectives. It provides good stewardship of public money and ensures that limited funding resources are used for maximum benefit. Collection also meets the treatment purpose of providing a symbol for defendants of their investment in the treatment process. Research has shown that if a defendant feels invested in the treatment process, he or she is more likely to achieve success. It is also important that the wording of the requirement to contribute to the cost of treatment does not inadvertently delegate the establishment of the amount of the co-payment to the probation officer. Districts are encouraged by Judicial Conference policy to establish a court-approved sliding scale for treatment services that is responsive to changes in a defendant's financial circumstances.

   c.  The treatment condition should also include a provision requiring the defendant to submit to drug testing during and after formal treatment services are provided. It is advisable to get a separate drug testing condition, even when the mandatory drug testing requirements have been imposed (see: Chapter 1, Section II(A)(1)). Circuits vary in their wording requirements for the drug testing condition. Probation officers are directed to their local court policies to adopt wording that meets circuit requirements.

   d.  Most treatment programs also require a defendant to abstain from alcohol during the course of treatment.

   e.  There may be cases where defendants have a history of substance abuse, but are nevertheless categorized by an actuarial or screening/assessment instrument as low risk. If the instrument does not indicate a dynamic risk factor for substance abuse, and there are no positive mandatory drug tests (see: Chapter 1, Section II(A)(1)), probation officers should request that the court remove or suspend the special condition.

44

2. Correctional Interventions and Strategies

    a. A thorough understanding of the nature and severity of the defendant's substance abuse problem is an essential first step toward establishing an effective plan for correctional intervention. Developing this understanding may require two stages: screening and assessment.

    b. The screening process places the defendant in one of two categories – a well-documented substance abuser or an uncertain substance abuser. Defendants who come to supervision with a recent and well-documented history of substance abuse do not require the administration of a validated screening instrument. By using the available documentation, probation officers can determine decisions about further assessment and treatment placement. Defendants who come to supervision with indications of substance use or a distant history of substance abuse require the administration of a validated screening instrument.

    c. When screening and/or other case information indicates substance dependence, a clinical assessment is typically the next step. An assessment is more comprehensive than a screening and is generally conducted by a clinically trained substance abuse professional or probation officer. The assessor identifies the defendant's substance abuse severity, strengths, weaknesses, and readiness for treatment and provides a written recommendation for the appropriate level of services.

    d. The treatment plan should be collaboratively developed by the treatment provider, the probation officer, and the defendant. It should address the modality, intensity, and anticipated duration of treatment. Although the development of the treatment plan is a collaborative process, the probation officer is ultimately responsible for approving contracted services. All probation officers are expected to have sufficient knowledge about addiction and available treatment services to make informed decisions.

    e. The treatment plan should include long-term and short-term goals. Tying measurable objectives to these goals assists the provider, probation officer, and defendant to monitor progress. Outlining achievable milestones that the defendant completes as he or she works towards treatment termination ensures that the treatment is goal directed.

    f. In keeping with the underlying supervision philosophy of proportional intervention (see: Chapter 1, Section II(C)(1)), it is important that the intensity of treatment match the specific treatment needs of a defendant. Research indicates that providing services more intensive than needed can make defendants more likely to commit future crimes. There should be ongoing assessment of risk and needs.

g.  Once a treatment referral is initiated, the probation officer should arrange a meeting with the defendant and the clinician, during which an individualized treatment plan should be developed. The probation officer should use this meeting to address any concerns the defendant has and discuss how compliance will be monitored and the consequences of noncompliance. The probation officer should clearly state his or her role in monitoring the treatment plan.

h.  For substance-dependent defendants, abstinence from alcohol during the term of supervision is critical to facilitate positive outcomes. If a defendant does not have an alcohol restriction condition, Judicial Conference policy recommends that the probation officer ask for this modification to the defendant's conditions.

i.  Probation officers are to use positive incentives to encourage prosocial behavior and reinforce progress toward objectives. The usefulness of positive incentives should not be underestimated; research indicates that rewards are more effective than sanctions when seeking to achieve long-term behavior change. Incentives must be implemented in a swift, consistent, and graduated manner. Incentives are provided by adding a positive reinforcement or taking away an existing sanction or restriction. Officers must modify supervision plans to reflect earned achievement incentives such as reduced restrictions or less frequent contact.

j.  The most reliable method of drug testing is urinalysis. Random testing may be implemented by the probation officer during unannounced visits to the home. Automated systems (code-a-phone) may also be used to notify defendants to report to the probation office for random testing.

k.  The sweat patch is a device that detects the presence of drugs in perspiration. Although the sweat patch does not produce the immediate results of on-site urinalysis, the methodology provides a means of continuous detection and is less intrusive.

l.  Alcohol abstinence conditions are to be monitored through contacting the defendant's family and associates who have daily opportunity to observe the defendant's behavior and through random breathalyzer testing.

m.  All substance-abusing defendants, even those who are making significant progress in their recovery, are susceptible to relapse. The process of recovery often includes relapses; thus, they are likely, unavoidable, and not necessarily indicative of long-term failure. Examples of behaviors that can be early warning signs that a relapse is imminent include the sudden loss of a job, change in mood, choosing to associate with others who are abusing substances, and going back to places where drugs were purchased or used.

46

The probation officer should be well acquainted with these behaviors and relapse prevention techniques.

n.  The behavioral change process is full of trial and error. The balanced use of correctional and controlling strategies for drug use can prevent a return to criminality. Substance abuse treatment and case planning is a dynamic process and should be adjusted throughout the course of supervision in response to the defendant's current risk and needs. The probation officer can accomplish this through regular reviews and updates to the supervision plan and by making contact with the defendant's social network.

o.  To assist in the transition from a formal treatment relationship to a community-based aftercare program, the probation officer must participate in a final meeting between the defendant and the clinical provider. The probation officer must be aware of community-based programs and services that aim to help defendants with treatment needs or provide support. Ongoing communication with the defendant's social network is essential when formal treatment services conclude to ensure that the defendant is in compliance with the aftercare plan in the community.

## II.   Mental Health Treatment

### A.  Statutory Authority

Under 18 U.S.C. § 3563(b)(9), the court may provide that the defendant "undergo available medical, psychiatric, or psychological treatment, including treatment for drug or alcohol dependency, as specified by the court, and remain in a specified institution if required for that purpose."

### B.  Sample Condition Language

You must participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the program.]]

You must take all mental health medications that are prescribed by your treating physician. [[You must pay the costs of the medication.] [You must pay [$___ per ___ (e.g., week, month)] or [___ % of the costs of the medication.]]

### C.  Purpose

1.  This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).

47

2. This condition enables the probation officer to satisfy the statutory requirements to keep informed as to the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

3. Social science research suggests that correctional interventions that follow the principles of evidence-based practices (e.g., the risk principle, the need principle, and the responsivity principle) promote positive change in the defendant and reduce the probability of recidivism. According to the responsivity principle, interventions should be delivered in a style and mode that is specifically responsive to the learning styles and abilities of defendants. Defendants with mental health disorders may have different learning styles and thus respond more readily to some techniques than others. Mental health disorders may be a barrier to effective correctional intervention (see: Chapter 1, Section III(A)(1)).

4. Social science research indicates that people diagnosed with a mental health disorder and no substance abuse issues are no more likely to become violent than the general population. Nevertheless, there is an ethical responsibility to assist in the improvement of an individual's stability and ability to function in a deinstitutionalized setting.

5. Social science research indicates that people diagnosed with co-occurring disorders (i.e., mental health disorders and substance dependence) show rates of violence greater than the general population.

6. Defendants who suffer from mental disorders may be hampered in their ability to respond to supervision requirements, for example, by cognitive impairments, delusions, and side effects from medications. Defendants who suffer from mental disorders often require more intensive monitoring and specialized treatment. Supervision may stabilize them so that they do not present a danger to themselves or others and reduce the risk that they will commit future crimes.

D. Method of Implementation

1. Considerations for Recommendation of Special Conditions

   a. The condition should clearly indicate that the order for evaluation and treatment is a court order or directive and not inadvertently delegate this authority to the probation office. Probation officers should avoid language ordering the defendant to participate in evaluation and/or treatment "if directed by the probation officer." They should, however, use language that permits the probation officer discretion in determining how, when, and where treatment is to occur.

b. The condition should be so worded that the probation officer, in consultation with the treatment provider, can adjust the modality, duration, and intensity of treatment to the risk and needs presented by the defendant.

c. When evaluation and treatment services are ordered, defendants should be required to pay for these services to the degree that they are financially able. The collection of reasonable co-payments for services meets both administrative and treatment objectives. It provides good stewardship of public money and ensures that limited funding resources are used for maximum benefit. Collection also meets the treatment purpose of providing a symbol for defendants of their investment in the treatment process. Collecting even minimal co-payment supports this latter purpose and has been shown to improve treatment outcomes. It is also important that the wording of the requirement to contribute to the cost of treatment does not inadvertently delegate the establishment of the amount of the co-payment to the probation officer. Districts are encouraged to establish a court-approved sliding scale for treatment services that is responsive to changes in a defendant's financial circumstances.

d. When medication is ordered by the physician, the defendant must comply with the medication regime. Defendants may experience negative side-effects from psychotropic medications. Probation officers cannot allow or give permission to defendants to alter or terminate a medication regime. If negative side-effects are identified, probation officers must report this information to the prescribing physician for follow up.

e. There may be cases where defendants have a history of mental health problems, but are nevertheless categorized by an actuarial instrument as low-risk. After a professional assessment has been completed and if treatment is not recommended, the probation officer should consider requesting that the court remove or suspend the special condition.

2. Correctional Interventions and Strategies

a. A mental health disorder is a condition in which a defendant exhibits behaviors or feelings that deviate substantially from the norm. Mental health disorders may range from anxiety and depression to more chronic disorders such as bipolar disorder and schizophrenia.

b. The supervision demands of defendants with mental health disorders may require additional monitoring and supervision, specialized treatment, more flexibility and patience on the part of the probation officer, and communications strategies that are firm yet non-confrontational.

c. Depending on the type and severity of the problem, defendants with mental health disorders may present a danger to themselves, family members, the

probation officer, and/or the community and may be limited in their ability to associate actions with consequences and/or to conform their behavior to meet supervision objectives and expectations.

d.   The American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition* defines the symptoms and behaviors of mental disorders. This manual is the authority in classifying mental health disorders. Probation officers working with defendants with mental health disorders should be familiar with this manual to help them interpret information found in psychiatric or psychological evaluation reports, communicate with treatment providers, and identify individuals with mental disorders.

e.   For individuals who are released to the community after a period of detention or imprisonment, case planning should start as soon as the probation officer receives the case. Attempts should always be made to ensure a seamless transition so the continuum of care is not broken. This is especially important when managing a mental health treatment case. The unique needs of the mental health defendant must be considered, such as medication management, availability of psychiatric treatment, and past relationships with therapeutic providers.

f.   Reentry planning is especially important for defendants requiring ongoing psychotropic medication management. Defendants being released from the Bureau of Prisons should have up to a 60-day supply of all medications currently prescribed. Probation officers must make appropriate referrals for evaluation and treatment to ensure that the defendant will be provided with prescriptions for medications as needed.

g.   A thorough understanding of the defendant's mental health issues and current status is an essential first step in establishing an effective supervision plan. Developing this understanding may require two processes: screening and assessment. The screening process places the defendant in one of two categories – a well-documented mental health disorder or an uncertain mental health disorder. Defendants who come to supervision with a recent and well-documented history of mental health disorder(s) do not require an initial screening. Using the available documentation, the probation officer can make decisions about further assessment. Defendants who come to supervision with indications of a mental health disorder or a distant history of a mental health disorder, but no special condition for mental health services, may require the administration of a validated screening instrument. This screening can be conducted by a probation officer using a validated instrument or by a qualified mental health professional. When screening and/or other case information indicates the possibility of a mental health disorder, a clinical assessment by a clinician is typically the next step in the correctional intervention process.

50

h.  The type of treatment that is provided to a defendant can make a significant difference in the degree of success that is realized. The goal is to match the defendant to a treatment that best addresses his or her risk and needs. Probation officers are responsible for being sufficiently knowledgeable about mental health disorders and available mental health services. The probation officer acts as a broker of services for defendants with mental health disorders.

i.  The mental health provider decides the particular treatment approach. The treatment plan should be collaboratively developed by the treatment provider, the probation officer, and the defendant. It should address the modality, intensity, and anticipated duration of treatment. Although the development of the treatment plan is a collaborative process, the probation officer is ultimately responsible for ensuring that the provider is aware of any changes in the defendant and his or her environmental, social, and/or supervision status.

j.  In keeping with the underlying supervision philosophy of proportional intervention (see: Chapter 1, Section II(C)(1)), it is important that the intensity of treatment match the specific treatment needs of a defendant.

k.  Once a treatment referral is initiated, the probation officer should arrange a meeting with the defendant and the clinician. During this initial meeting, an individualized treatment plan should be developed that clearly outlines the goals and objectives of treatment and the methods that will be used to achieve those goals. The defendant should use this meeting to address any concerns the defendant has and help strengthen the relationship between the defendant and the clinician. The probation officer should clearly state his or her role in monitoring the treatment plan.

l.  Defendants with co-occurring disorders (i.e., mental health disorder and substance dependence) should receive services in an integrated fashion. When receiving integrated treatment services, defendants' needs are treated by the same clinician and/or team in the same location. When an integrated treatment approach is not available, it is essential that the officer ensure effective communication and consistency between treatment providers.

m.  Counseling alone is not always effective. Medication-assisted treatment may provide the necessary symptom stabilization to improve the success of treatment. These medications must be prescribed by a psychiatrist, other medical doctor, or a qualified practitioner with prescriptive authority. Probation officers should be familiar with the intended effects and side effects of medications taken by the defendants they supervise. Probation officers should contact the prescribing physician or pharmacy for information regarding medication uses, side effects, and potential problems.

n.  Probation officers are to use positive incentives to encourage prosocial behavior and reinforce progress toward objectives. The usefulness of positive incentives should not be underestimated. Research indicates that rewards are more effective than sanctions at influencing long-term behavior change. Incentives must be implemented in a swift, consistent, and graduated manner. Incentives are provided by adding a positive reinforcement or taking away an existing sanction or restriction. Probation officers must modify supervision plans to reflect earned achievement incentives, such as reduced restrictions or less frequent contact.

o.  Although defendants diagnosed with mental health disorders are no more violent than the general population, when a defendant begins to show signs of decompensation, his or her risk of violence may increase. If the probation officer observes or receives information that a defendant is exhibiting behavior consistent with mental health decompensation, the probation officer must take steps to ensure the safety of the defendant, the community, and himself or herself.

p.  Probation officers must always take threats of violence against themselves or others seriously and must respond immediately to any indication that the individual may be suicidal or homicidal. The probation officer's role in any mental illness decompensation leading to threats of violence is to ensure the safety of the defendant, the community, and himself or herself. The strategies include ceasing home contacts, notifying the local mental health crisis unit or local police department for a health and welfare check (e.g., to assess for emergency mental health commitment), notifying the treatment provider, and notifying any third party at risk.

q.  To assist the defendant in transitioning from a formal treatment relationship to a community-based aftercare program that is managed by the defendant and monitored by the probation officer, the probation officer should be aware of community-based programs and services that aim to help defendants with treatment needs or provide support. Ongoing communication with the defendant's social network is essential after formal treatment services conclude to ensure that the defendant is in compliance with the aftercare plan in the community.

## III.   Financial Requirements and Restrictions

### A.  Statutory Authority

Under 18 U.S.C. § 3563(b)(2), the court may provide that the defendant "make restitution to a victim of the offense."

Under 18 U.S.C. § 3563(b)(22), the court may provide that the defendant "satisfy such other conditions as the court may impose."

52

Under 18 U.S.C. § 3603(7), the probation officer shall "keep informed concerning the conduct, condition, and compliance with any condition of probation, including the payment of a fine or restitution of each probationer under his supervision and report thereon to the court placing such person on probation and report to the court any failure of a probationer under his supervision to pay a fine in default within thirty days after notification that it is in default so that the court may determine whether probation should be revoked."

Under 18 U.S.C. § 3664(d)(3), each defendant "shall prepare and file with the probation officer an affidavit fully describing the financial resources of the defendant, including a complete listing of all assets owned or controlled by the defendant as of the date on which the defendant was arrested, the financial needs and earning ability of the defendant and the defendant's dependents, and such other information that the court requires relating to such other factors as the court deems appropriate."

B.  Sample Condition Language

You must provide the probation officer access to any requested financial information and authorize the release of any financial information. The probation office may share financial information with the U.S. Attorney's Office.

You must not incur new credit charges, or open additional lines of credit without the approval of the probation officer.

If the judgment imposes a financial penalty, you must pay the financial penalty in accordance with the Schedule of Payments sheet of this judgment. You must also notify the court of any changes in economic circumstances that might affect the ability to pay this financial penalty.

C.  Purpose

1.  This condition serves the statutory sentencing purposes of deterrence, public protection, and rehabilitation. 18 U.S.C. § 3553(a)(2)(B)-(D). For probation cases, this condition may serve the statutory purposes of reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment for the offense. 18 U.S.C. § 3553 (a)(2)(A).

2.  This condition enables the probation officer to satisfy the statutory requirements to keep informed of the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

3. Special conditions such as financial disclosure and prohibitions against incurring new credit may help the probation officer set the appropriate collection parameters for monetary conditions, deter and detect economic crimes, verify and monitor self-employment, or assist disorganized, impulsive defendants to gain control of their financial situation.

D. Method of Implementation

1. Investigating Financial Status

   a. In cases with conditions requiring payment of monetary penalties or obligations and those with identified problems related to finances, probation officers are to conduct ongoing verification of the defendant's financial status and, as necessary, provide assistance in securing and managing income.

   b. Probation officers are to obtain a signed authorization from the defendant to obtain financial records. When obtaining this authorization, officers notify defendants that the authorization provides officers with ongoing access to credit reports for 90 days from the date of the authorization and authorizes the transfer of financial information obtained by the probation officer to the U.S. Attorney's Office for the collection of outstanding monetary penalties.

   c. Probation officers are to update cash flow information and net worth statements by having the defendant complete a questionnaire. Any new information provided by the defendant should be compared with records obtained from other independent sources.

2. Enforcing Monetary Penalties

   a. When a defendant sentenced to a term of supervision is also sentenced to pay a special assessment, fine, and/or restitution, payment of the financial penalty is routinely added as a condition of supervision. The condition also requires defendants to notify the court of any material changes in their economic circumstances that might affect their ability to pay.

   b. Probation officers are to assist in the execution of financial sentences by updating financial information, determining necessary living expenses, recommending lump-sum payments and/or payment schedules designed to collect the maximum amount of money reasonably possible in the shortest period of time, and using graduated interventions designed to bring defendants into compliance when they fail to pay their outstanding penalties.

   c. Establishing Payment Parameters

      i. After updating the financial investigation, probation officers are to determine the defendant's current ability to pay a lump sum and, if not able

54

to pay in full, a recommended payment schedule. Unless otherwise ordered by the court, the payment plan should reflect the maximum payment that the defendant can reasonably manage given documented income and necessary expenses. Compliant defendants who cannot legitimately pay their obligation during the term of supervision, despite their best efforts, should be permitted to terminate their terms of supervision as otherwise appropriate. If the required payments are less than would be necessary to pay the total financial penalty before expiration of supervision, contact should be made with the United States Attorney, who may submit a petition for remission or pursue collection of the unpaid balance after expiration (18 U.S.C. § 3573).

d.  Probation officers may need to request modification of the conditions, as necessary, to modify or set the payment schedule, provide the investigative tools required to maintain appropriate verification of and control over financial status (e.g., financial disclosure, travel restrictions), and/or modify the requirements of other conditions that may unnecessarily impede the defendant's ability to meet the terms of financial sentences.

3.  Monitoring and Intervention

a.  Probation officers can maintain an ongoing picture of a defendant's financial condition by close scrutiny of the financial information submitted by the defendant and independent verification (e.g., credit checks, review of external sources of financial information, home visits, and contacts with employers). Probation officers should periodically conduct a comparative assessment of the financial documents obtained to review their consistency; identify any unusual deposits, withdrawals, or purchases; and determine spending patterns.

b.  If needed, probation officers should also assist in job referrals, employment counseling, or social services.

c.  Probation officers should encourage defendants to record how their income is spent and should audit defendant spending patterns. Once the spending pattern is determined, probation officers can suggest ways to reduce unnecessary expenses to help a defendant reduce debt, stay within a budget, and meet other monetary obligations; or they can refer the defendant for more in-depth financial or employment counseling. If monitoring and intervention activities reveal the existence of non-committed cash flow or additional assets, the payment plan should be revised accordingly.

d.  Probation officers are also to respond immediately to indications of heightened risk by formulating strategies designed to prevent or ameliorate the effects of noncompliant behavior. Among the early warning signs that a defendant may be at risk for recidivating are unexplained assets or a lifestyle that does not match income.

55

4. Low-Risk Defendants

For defendants who qualify for low-risk supervision standards under Judicial Conference policy (see: Chapter 1, Section II(C)(1)), in lieu of the requirements described above regarding enforcing monetary penalties and monitoring and intervention, probation officers or other probation office staff (under the direction of probation officers) should review the defendant's written supervision reports to assess the defendant's payment ability and/or examine electronic payment reporting systems four times per year to assess the defendant's compliance with payment requirements. Probation officers or other probation office staff (under the direction of probation officers) should initiate contact with the U.S. Attorney's Office as soon as practicable.

## IV.   Employment Restrictions

A. Statutory Authority

Under 18 U.S.C. § 3563(b)(5), the court may provide that the defendant "refrain, in the case of an individual, from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances."

B. Sample Condition Language

You must not engage in an occupation, business, profession, or volunteer activity that would require or enable you to _____ without the prior approval of the probation officer.

You must not work in any type of employment without the prior approval of the probation officer.

C. Purpose

1. This condition serves the statutory sentencing purposes of public protection. 18 U.S.C. § 3553(a)(2)(C). Defendants may be prohibited from working in certain industries (e.g., financial, medical, legal) to prevent future criminal offenses.

2. This condition enables the probation officer to satisfy the statutory requirements to keep informed of the conduct and condition of the defendant and report the defendant's conduct and condition to the sentencing court. 18 U.S.C. § 3603(2).

D. Method of Implementation

1. The requirement that a defendant refrain from engaging in a particular type of employment generally should be imposed by the court as a formal special condition of supervision.

2. Probation officers verify compliance with this condition by contacting the defendant's employer to determine whether the defendant's job complies with the employment restriction.[24]

3. For the condition requiring that all employment must be approved in advance, the probation officer may request that the defendant provide information about the prospective employment prior to commencing employment and may in some cases contact the prospective employer to arrange a visit to confirm that the location is appropriate and assess any risk factors.

4. Probation officers also remain aware of the defendant's activities through community observation, which is fieldwork that does not involve a direct contact with the defendant or the defendant's social network. It may be the preferred way to unobtrusively monitor compliance with specific conditions in a way that does not intrude on the activity itself. For example, observation of a defendant's work site may be appropriate in some cases. Although occasional observations of this nature may be productive, prolonged fieldwork such as this is generally not appropriate under Judicial Conference policy.

5. Probation officers verify compliance with employment restrictions by close scrutiny of the financial information submitted by the defendant and independent verification (e.g., credit checks, home visits). Probation officers should periodically conduct a comparative assessment of the financial documents obtained to review their consistency; identify any unusual deposits, withdrawals, or purchases; and determine spending patterns.

6. The physical and psychological harm caused by sex offenses is particularly traumatic, and probation officers should give priority to minimizing the impact on victims and to preventing new sex crimes from occurring. Not all persons with a history of committing sex offenses are alike. Rather, they present a spectrum of criminogenic risk and therapeutic need. Supervision techniques should vary accordingly. Certain types of employment may not be appropriate for certain defendants with a history of sex offenses, particularly positions that place the defendant within close proximity to children.

## V.    Association and Contact Restrictions

### A.  Statutory Authority

Under 18 U.S.C. § 3563(b)(6), the court may provide that the defendant "refrain from . . . associating unnecessarily with specified persons."

---

[24] For a further discussion of third-party notification, see Chapter 2, Section XII.

B.  Sample Condition Language

You must not have direct contact with any child you know or reasonably should know to be under the age of 18, [including][not including] your own children, without the permission of the probation officer. If you do have any direct contact with any child you know or reasonably should know to be under the age of 18, [including][not including] your own children, without the permission of the probation officer, you must report this contact to the probation officer within 24 hours. Direct contact includes written communication, in-person communication, or physical contact. Direct contact does not include incidental contact during ordinary daily activities in public places.

You must not communicate, or otherwise interact, with any known member of the _____ gang, without first obtaining the permission of the probation officer.

You must not communicate, or otherwise interact, with [name of victim], either directly or through someone else, without first obtaining the permission of the probation officer.

C.  Purpose

1.  This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).

2.  This condition enables the probation officer to satisfy the statutory requirements to keep informed of the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition 18 U.S.C. §§ 3603(2)-(3).

3.  This condition allows the probation officer to implement supervision methods demonstrated by social science to be effective at achieving positive outcomes.

a.  Research suggests that correctional interventions that follow the principles of evidence-based practices promote positive change in the defendant and reduce the probability of recidivism. One of the principles is that probation officers should address criminogenic needs, including antisocial associates (see: Chapter 1, Section III(A)(1)).

b.  Research suggests that exposure to antisocial associates increases the probability of recidivism. Antisocial associates provide opportunities to learn the techniques of crime and also antisocial attitudes (see: Chapter 1, Section III(A)(2)).

    c.   Research suggests that the probability of recidivism is reduced when defendants develop and maintain prosocial bonds to prosocial individuals and institutions (see: Chapter 1, Section III(A)(3)).

    d.   Research suggests that for a criminal opportunity to exist, two ingredients must converge in time and space. First, there must be a person motivated to commit a criminal act. Second, the person must have the opportunity to commit a crime. Probation officers may work with defendants on supervision, family members, neighbors, other community members, and law enforcement agencies to structure and monitor the defendant's routine activities and reduce the extent to which defendants come into contact with criminal opportunities. Probation officers may also prevent criminal opportunities by monitoring defendants through contacts with the defendant and his or her social network, verifying employment, restricting travel, and providing positive reinforcement for prosocial routine activities. By seeking to prohibit contact with specific people, probation officers may try to disrupt activities that increase crime opportunities (see: Chapter 1, Section III(A)(4)).

D.  Method of Implementation

    1.   Special conditions may be fashioned to prohibit contact with particular individuals or groups associated with the risk factors in the individual case. The probation officer may recommend a condition limiting or prohibiting, or otherwise monitoring the contact with victims, minors, co-defendants, or other associates that may increase the probability that defendants will reoffend.

    2.   Probation officers remain informed of the defendant's activities by interviewing members of the defendant's social network. The probation officer should develop a network of people in the community who have frequent contact with the defendant. Examples of important potential partners in the supervision process are family members, friends, neighbors, employers, coworkers, service providers, clergy, police officers assigned to the defendant's neighborhood, and other local law enforcement and community corrections personnel. Probation officers may also consider involving the defendant's attorney, whose interest in the defendant's success coincides with the purpose of supervision and whose position as an advocate may help reinforce the defendant's understanding of his or her legal obligations. Collaboration with on-the-scene supervision partners is essential for efficient verification of compliance with conditions and for early warning signs that may require the probation officer's intervention.

    3.   Probation officers also remain aware of the defendant's activities through community observation, which is fieldwork that does not involve a direct contact with the defendant or the defendant's social network. It may be the preferred way to unobtrusively monitor compliance with specific conditions in a way that does not intrude on the activity itself. For example, observation of a defendant's work site or residence during the start or end time of his or her reported work schedule

may be appropriate in some cases. Although occasional observations of this nature may be productive, prolonged fieldwork such as this is generally not appropriate under Judicial Conference policy.

4. The strategies for monitoring a defendant's associations with others also include inquiring into the identities of unknown persons present during visits by the probation officer to the defendant's home or elsewhere in the community, noting the license plate numbers of unknown vehicles seen during visits to the defendant's home for verification of ownership, randomly checking telephone toll records, and/or investigating the identity and criminal history of prospective employers or employees.

5. Compliance with this condition may also be monitored through location monitoring technology (see: Chapter 3, Section XII).

6. If there is an identified victim, the probation officer may recommend that the defendant be prohibited from having any contact with the victim without prior approval of the probation officer. This may include contact through letters, communication devices, audio or visual devices, visits, social networking sites, or third parties. The probation officer may contact the victim(s), the victim's family, or a designated representative to ensure that the defendant is complying with conditions of supervision prohibiting contact with the victim.

7. The physical and psychological harm caused by sex offenses is particularly traumatic, and probation officers should give priority to minimizing the impact on victims and to preventing new sex crimes from occurring. Not all persons with a history of committing sex offenses are alike. Rather, they present a spectrum of criminogenic risk and therapeutic need. Supervision techniques should vary accordingly.

## VI.   Place Restrictions

### A.  Statutory Authority

Under 18 U.S.C. § 3563(b)(6), the court may provide that the defendant "refrain from frequenting specified kinds of places."

### B.  Sample Condition Language

You must not knowingly enter [name of neighborhood, city, county, subdivision, park, or other geographic entity with clearly defined boundary] without first obtaining the permission of the probation officer.

You must not knowingly enter any [bar, tavern, etc.] without first obtaining the permission of the probation officer.

You must not go to, or remain at any place where you know controlled substances are illegally sold, used, distributed, or administered without first obtaining the permission of the probation officer.

You must not go to, or remain at, any place where you know children under the age of 18 are likely to be, including parks, schools, playgrounds, and childcare facilities.

You must not go to, or remain at, a place for the primary purpose of observing or contacting children under the age of 18.

C. Purpose

1. This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D). It also assists the probation officer in preventing risk of harm to third parties (see: Chapter 2, Section XIII).

2. This condition prevents the defendant from being in an environment where crimes are occurring, antisocial associates are present, there is an increased risk of substance abuse, or there may be potential victims.

3. This condition enables the probation officer to satisfy the statutory requirements to keep informed of the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

4. This condition allows the probation officer to implement supervision methods demonstrated by social science to be effective at achieving positive outcomes.

   a. Research suggests that correctional interventions that follow the principles of evidence-based practices promote positive change in the defendant and reduce the probability of recidivism. One of the evidence-based practices principles is that probation officers should address criminogenic needs, including substance abuse problems and antisocial associates (see: Chapter 1, Section III).

   b. Research suggests that exposure to antisocial associates increases the probability of recidivism (see: Chapter 1, Section III).

   c. Research suggests that the probability of recidivism is reduced when defendants develop and maintain prosocial bonds to family, school, and work (see: Chapter 1, Section III).

   d. Research suggests that for a criminal event to occur there must be an opportunity to commit a crime. Probation officers may work with defendants

on supervision, family members, neighbors, other community members, and law enforcement agencies to structure and monitor the defendant's routine activities and reduce the extent to which defendants come into contact with criminal opportunities. Probation officers may also monitor defendants through contacts with the defendant and his or her social network, verifying employment, restricting travel, and providing positive reinforcement for prosocial routine activities. By seeking to prohibit travel to specific places or access to specific establishments, probation officers may try to disrupt activities that increase crime opportunities (see: Chapter 1, Section III(A)(4)).

D. Method of Implementation

1. The probation officer ensures that the defendant understands the locations and/or geographical boundaries described in the condition and also the procedure for requesting and approving permission to be at these locations.

2. Probation officers remain informed of the defendant's activities by interviewing members of the defendant's social network. The probation officer should develop a network of people in the community who have frequent contact with the defendant. Examples of important potential partners in the supervision process are family members, friends, neighbors, employers, coworkers, service providers, clergy, police officers assigned to the defendant's neighborhood, and other local law enforcement and community corrections personnel. Probation officers may also consider involving the defendant's attorney, whose interest in the defendant's success coincides with the purpose of supervision and whose position as an advocate may help reinforce the defendant's understanding of his or her legal obligations. Collaboration with on-the-scene supervision partners is essential for efficient verification of compliance with conditions and for early warning signs that may require the probation officer's intervention.

3. Probation officers also remain aware of the defendant's activities through community observation, which is fieldwork that does not involve a direct contact with the defendant or the defendant's social network. It may be the preferred way to unobtrusively monitor compliance with specific conditions in a way that does not intrude on the activity itself. For example, observation of a defendant's work site or residence during the start or end time of his or her reported work schedule may be appropriate in some cases. Although occasional observations of this nature may be productive, prolonged fieldwork such as this is generally not appropriate under Judicial Conference policy.

4. Compliance with this condition may also be monitored through location monitoring technology (see: Chapter 3, Section XII).

5. The physical and psychological harm caused by sex offenses is particularly traumatic, and probation officers should give priority to minimizing the impact on victims and to preventing new sex crimes from occurring. Not all persons with a

62

history of committing sex offenses are alike. Rather, they present a spectrum of criminogenic risk and therapeutic need. Supervision techniques should vary accordingly.

## VII.   Supporting Dependents

### A.  Statutory Authority

Under 18 U.S.C. § 3563(b)(1), the court may provide that the defendant "support his dependents and meet other family responsibilities."

Under 18 U.S.C. § 3563(b)(20), the court may provide that the defendant "comply with the terms of any court order or order of an administrative process pursuant to the law of a State, the District of Columbia, or any other possession or territory of the United States, requiring payments by the defendant for the support and maintenance of a child or of a child and the parent with whom the child is living."

### B.  Sample Condition Language

If you are ordered by the government to make child support payments or to make payments to support a person caring for a child, you must make the payments and comply with the other terms of the order.

You must meet any legal obligation to support or make payment toward the support of any person, including any dependent child, the co-parent or caretaker of a dependent child, or a spouse or former spouse.

### C.  Purpose

The purpose of this condition is to ensure that the defendant complies with court orders and avoids collateral consequences for not complying with court orders such as lost driver's license, garnishment of wages, and loan ineligibility.

### D.  Method of Implementation

The probation officer verifies that payments have been made by contacting the child support enforcement agency, social workers assigned to the defendant's case, and members of the defendant's family. The probation officer may also assist with establishing a payment schedule.

## VIII.   Gambling-Related Conditions

### A.  Statutory Authority

Under 18 U.S.C. § 3563(b)(22), the court may provide that the defendant "satisfy such other conditions as the court may impose."

B.  Sample Condition Language

> You must participate in a gambling addiction treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the program.]]
>
> You must not engage in any form of gambling (including, but not limited to, lotteries, on-line wagering, sports betting) and you must not enter any casino or other establishment where gambling is the primary purpose (e.g., horse race tracks, off-track betting establishments).

C.  Purpose

1.  This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).

2.  This condition enables the probation officer to satisfy the statutory requirements to keep informed of the conduct and condition of the defendant and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

3.  This condition also assists with the collection of monetary penalties by ensuring that discretionary income is not spent on gambling.

D.  Method of Implementation

1.  The probation officer implements the treatment condition by referring the defendant to an agency providing gambling addiction treatment.

2.  The probation officer implements the gambling ban condition by reviewing financial documentation relating to the defendant's expenditures (bank records, credit reports, etc.) and contacting state gaming commissions to inquire whether the defendant has entered casinos.

IX.  **Community Service**

A.  Statutory Authority

> Under 18 U.S.C. § 3563(b)(12), the court may provide that the defendant "work in community service as directed by the court."

B.  Sample Condition Language

You must complete ___ hours of community service within ___ months. The probation officer will supervise the participation in the program by approving the program (agency, location, frequency of participation, etc.). You must provide written verification of completed hours to the probation officer.

You must be employed and complete community service for a combination of 30 hours per week. The probation officer will supervise the participation in the community service program by approving the program (agency, location, frequency of participation, etc.).  You must provide written verification of completed community service hours to the probation officer.

C.  Purpose

1.  This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).

2.  This condition enables the probation officer to satisfy the statutory requirements to keep informed as to the conduct and condition of the defendant and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

3.  Community service is a versatile condition that can serve multiple purposes. It can, for example, serve as the publicly discernible penalty in probation cases or as a negative consequence for noncompliance with conditions of supervision, as a controlling strategy that requires defendants to be productively occupied, or as a correctional strategy that provides a way for defendants to acquire job readiness skills and job experience or broaden their network of associates in a more productive direction. In addition to the specific sentencing purpose to be served, the desired by-product of community service is always to benefit the community.

4.  Probation officers should strive to have all defendants productively occupied throughout the year, and no defendants should be permitted to be idle for a prolonged period unless excused due to disability or earned retirement. Probation officers should consider requesting a period of community service for those defendants who are not productively occupied.

D.  Method of Implementation

1.  Community service placements are to be purposeful, realistic, appropriate, reliable, and designed to benefit the community. Defendants are not compensated for their community service. Probation officers are always to disclose the defendant's criminal history so that the potential placement agency may make an informed decision to accept a placement.

2.  Defendants should be required to complete their community service obligation promptly unless there is a reasonable basis to delay the placement. For example,

65

initiation of community service may be delayed to allow employed defendants to complete an imposed term of home confinement, to allow for intensive corrective treatment, to stabilize a drug-abusing defendant, or to allow the defendant to meet short-term extraordinary personal or family responsibilities. If an extensive delay is contemplated, the probation officer should either request that the special condition be removed or notify the court of the anticipated delay in implementation.

3.  Factors to be considered in making placements include the sentencing objective(s) of the court; the characteristics, skills, and abilities of the defendant; the needs of the community; third-party risk (see: Chapter 2, Section XII); and logistical considerations, such as the availability of transportation and the time necessary to complete the required hours vis-à-vis the defendant's other employment, family, and financial responsibilities.

4.  The community service site selected should provide non-denominational services to the community. For example, a defendant should not receive community service credit for serving as a deacon in his or her church; however, the defendant may perform community service at a church soup kitchen open to all members of the community.

5.  The site selected should also have a reliable manager who is willing to work with the probation officer to provide accurate information regarding the defendant's attendance and participation.

6.  Compliance with community service hours may be verified by on-site monitoring, contacting the service agency, and/or reviewing documentation provided by the service agency. The degree of personal or on-site contact with the service agency will depend on the degree and nature of the risk presented by the defendant and the extent to which the probation office has developed an ongoing relationship with the service agency.

7.  For defendants who qualify for low-risk supervision standards under Judicial Conference policy (see: Chapter 1, Section II(C)(1)), probation officers may rely exclusively on documentation review for monitoring the community service, though increased verification (written, telephonic, or personal) may be required in appropriate cases (e.g., insufficient documentation). Probation officers should direct these defendants (who otherwise have no supervision issues) to complete their community service as quickly as possible without compromising other prosocial activities (e.g., employment).

## X.  Cognitive Behavioral Treatment

A.  Statutory Authority

Under 18 U.S.C. § 3563(b)(9), the court may provide that the defendant "undergo available medical, psychiatric, or psychological treatment, including treatment for drug or alcohol dependency, as specified by the court, and remain in a specified institution if required for that purpose."

Under 18 U.S.C. § 3563(b)(22), the court may provide that the defendant "satisfy such other conditions as the court may impose."

B.  Sample Condition Language

You must participate in a cognitive behavioral treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). Such programs may include group sessions led by a counselor or participation in a program administered by the probation office. [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the program.]]

C.  Purpose

1.  This condition serves the statutory sentencing purposes of public protection, deterrence, and rehabilitation. 18 U.S.C. § 3553(a)(2)(B)-(D).

2.  This condition enables the probation officer to satisfy the statutory requirements to keep informed as to the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

3.  Social science research suggests that correctional interventions that follow the principles of evidence-based practices (e.g., the risk principle, the need principle, and the responsivity principle) promote positive change in the defendant and reduce the probability of recidivism. According to the responsivity principle, interventions should be generally responsive, meaning that they should use the treatment modality that is capable of changing the major known predictors of recidivism. Research has demonstrated that the most effective approach is to use cognitive-behavioral techniques. Cognitive-behavioral treatment involves exercises and instructions designed to alter the dysfunctional thinking patterns exhibited by many defendants (see: Chapter 1, Section III(A)(1)).

D.  Method of Implementation

1.  When and where available, cognitive-behavioral treatment should be the default choice of treatment for substance-dependent defendants (see: Chapter 3, Section X).

67

2. Cognitive-behavioral treatment is also one of the most widely accepted treatment modalities for sex offense-specific services (see: Chapter 3, Section XVIII).

3. Cognitive-behavioral treatment has broader application than for substance abusing defendants or defendants with a history of sexual offenses. Cognitive-behaviorism assumes that cognitions affect behavior, people can monitor and alter their cognitive activity, and changes in cognitions will lead to changes in behavior. Probation officers may recommend cognitive behavioral treatment for any defendant with dysfunctional thinking patterns that may lead to future criminal behavior.

4. Cognitive-behavioral treatment can be broken into two different types: clinical and manualized. Clinical treatment is counseling led by a trained and certified counselor. Manualized treatment is an intervention led by a trained facilitator in a group setting. These groups can be facilitated by the probation officer or a contract provider.

## XI.    Educational or Vocational Services

A. Statutory Authority

Under 18 U.S.C. § 3563(b)(4), the court may provide that the defendant "pursue conscientiously a course of study or vocational training that will equip him for suitable employment."

B. Sample Condition Language

You must participate in an educational services program and follow the rules and regulations of that program. Such programs may include high school equivalency preparation, English as a Second Language classes, and other classes designed to improve your proficiency in skills such as reading, writing, mathematics, or computer use. [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the program.]]

You must participate in a vocational services program and follow the rules and regulations of that program. Such a program may include job readiness training and skills development training. [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the program.]]

C. Purpose

1. This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).

2. This condition enables the probation officer to satisfy the statutory requirements to keep informed of the conduct and condition of the defendant and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

3. The purpose of this condition is to develop or enhance the skills needed to obtain and maintain gainful employment in order to protect the public and promote the reintegration of the defendant into the community.

4. This condition allows the officer to implement supervision methods demonstrated by social science to be effective at achieving positive outcomes.

   a. Research suggests that correctional interventions that follow the principles of evidence-based practices promote positive change in the defendant and reduce the probability of recidivism. One of the evidence-based practices principles is that officers should address criminogenic needs, including deficits in educational, vocational, and employment skills. Education may increase one's employability and ability to obtain and maintain a job and economic stability. Criminal behavior increases with frequent unemployment and longer periods of unemployment. There is also evidence for the importance of obtaining meaningful, long-term employment in desisting from crime. Vocational training programs include classroom-based education, job training, and apprenticeships and may also offer life skills components to improve time management skills and work ethic (see: Chapter 1, Section III(A)(1)).

   b. Research suggests that exposure to antisocial associates increases the probability of recidivism. Educational and vocational training in a suitable environment may reduce access to antisocial peers and increase associations with prosocial peers (see: Chapter 1, Section III(A)(2)).

   c. Research suggests that the probability of recidivism is reduced when defendants develop and maintain prosocial bonds to work, which may be facilitated through educational and vocational programs (see: Chapter 1, Section III(A)(3)).

   d. Research suggests that for a criminal event to occur there must be an opportunity to commit a crime. Probation officers may work with defendants on supervision, family members, neighbors, other community members, and law enforcement agencies to structure and monitor the defendant's routine activities and reduce the extent to which defendants come into contact with criminal opportunities. Probation officers may also monitor defendants through contacts with the defendant and his or her social network, verifying employment, restricting travel, and providing positive reinforcement for prosocial routine activities. Participation in educational or vocational training programs may reduce criminal opportunities by providing prosocial activities

and by increasing monitoring by prosocial individuals (see: Chapter 1, Section III(A)(4)).

D.  Method of Implementation

    1.  Probation officers may recommend educational or vocational services conditions when there is a need to develop or enhance the skills needed to obtain and maintain gainful employment. These skills include reading, writing, mathematics, computer use, or language proficiency.

    2.  The probation officer may refer the defendant directly to an agency providing educational or vocational services, or the probation officer may collaborate with the state education or employment agency to facilitate such a placement.

    3.  The probation officer verifies participation in the educational or vocational programs by interviewing the defendant, contacting the agency providing the services, and requesting educational transcripts or other official records.

## XII.  Location Monitoring

A.  Statutory Authority

    Under 18 U.S.C. § 3563(b)(6), the court may provide that the defendant "refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons."

    Under 18 U.S.C. § 3563(b)(13), the court may provide that the defendant "reside in a specified place or area, or refrain from residing in a specified place or area."

    Under 18 U.S.C. § 3563(b)(14), the court may provide that the defendant "remain within the jurisdiction of the court, unless granted permission to leave by the court or a probation officer."

    Under 18 U.S.C. § 3563(b)(19), the court may provide that the defendant "remain at his place of residence during non-working hours and, if the court finds it appropriate, that compliance with this condition be monitored by telephonic or electronic signaling devices, except that a condition under this paragraph may be imposed only as an alternative to incarceration."

    Under 18 U.S.C. § 3563(b)(22), the court may provide that the defendant "satisfy such other conditions as the court may impose."

B.  Sample Condition Language

    You will be monitored by the form of location monitoring technology indicated below for a period of __ months, and you must follow the rules and regulations of

the location monitoring program. [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., week, month)] or [___ % of the costs of the program.]]

__ Location monitoring technology at the discretion of the probation officer
__ Radio Frequency (RF) Monitoring
__ GPS Monitoring (including hybrid GPS)
__ Voice Recognition

This form of location monitoring technology will be used to monitor the following restriction on your movement in the community:

__You are restricted to your residence every day from _____ to _____ (Curfew).

__You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the officer (Home Detention).

__You are restricted to your residence at all times except for medical necessities and court appearances or other activities specifically approved by the court (Home Incarceration).

__You must comply with the following condition: _____.

C.  Purpose

1.  This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C) and (D).

2.  This condition enables the probation officer to satisfy the statutory requirements to keep informed of the conduct and condition of the defendant, and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

3.  The purposes of location monitoring technology include verifying approved defendant locations at home or in the community; providing information about the defendant's movement in the community; managing or mitigating risks, including detecting behavioral patterns based on travel and location and addressing the risk a defendant may present to a specific person; and enforcing and monitoring other court-ordered conditions of supervision.

4.  This condition allows the probation officer to implement supervision methods demonstrated by social science to be effective at achieving positive outcomes.

    a.  Research suggests that correctional interventions that follow the principles of evidence-based practices promote positive change in the defendant and reduce the probability of recidivism. One of the evidence-based practices principles is that officers should address criminogenic needs. Location monitoring technology can assist in ensuring that defendants are complying with other conditions designed to address criminogenic needs (see: Chapter 1, Section III(A)(1)).

    b.  Research suggests that exposure to antisocial associates increases the probability of recidivism. Location monitoring technology can assist with ensuring compliance with other conditions designed to reduce the defendants access to antisocial peers and increase associations with prosocial peers (see: Chapter 1, Section III(A)(2)).

    c.  Research suggests that the probability of recidivism is reduced when defendants develop and maintain prosocial bonds to work and other prosocial institutions. Location monitoring technology can assist with ensuring compliance with other conditions designed to facilitate the development and maintenance of prosocial bonds (see: Chapter 1, Section III(A)(3)).

    d.  Research suggests that for a criminal event to occur there must be an opportunity to commit a crime. Probation officers may work with defendants on supervision, family members, neighbors, other community members, and law enforcement agencies to structure and monitor the defendant's routine activities and reduce the extent to which defendants come into contact with criminal opportunities. Probation officers may also monitor defendants through contacts with the defendant and his or her social network, verifying employment, restricting travel, and providing positive reinforcement for prosocial routine activities. Location monitoring technology can assist with ensuring that defendants avoid places with crime opportunities (see: Chapter 1, Section III(A)(4)).

5.  Location monitoring technology may allow defendants on supervision to continue to support their families and pay their taxes; in addition, it is less costly than incarceration.

D.  Method of Implementation

  1.  Types of Restrictions

    a.  Curfew: Curfew requires the defendant to remain at home during set time periods of the day (e.g., between 8:00 p.m. and 6:00 a.m.).

    b.  Home Detention: Home detention requires the defendant to remain at home at all times except for pre-approved and scheduled absences for employment, education, religious activities, treatment, attorney visits, court appearances,

court-ordered obligations, or other activities as approved by the probation officer.

c.   Home Incarceration: Home incarceration requires 24-hours-a-day lock-down except for medical necessities and court appearances or other activities specifically approved by the court.

d.   Stand-alone monitoring: This refers to when the court orders the use of location monitoring technology without placing the defendant on curfew, home detention, or home incarceration. The purpose is to use any type of location monitoring technology for supervision purposes and to monitor and enforce any other condition of supervision (e.g., employment, association, or travel restrictions).

2.   Types of Monitoring Technology.

a.   Voice recognition: These systems can be used to place or receive random telephone calls to defendants to verify their presence at an approved location, which is typically their home.

b.   Radio frequency monitoring: This technology includes monitoring equipment and 24-hour electronic surveillance designed to alert a probation officer when a participant leaves a specific location (usually the home), returns home late (or leaves early) from a pre-approved schedule, or tampers with the electronic monitoring equipment. While subject to electronic monitoring, the participant wears a non-removable transmitting device around the wrist or ankle 24 hours a day. This technology only reports when a participant enters or leaves the equipment's range — not where the participant has gone or how far the participant has traveled.

c.   Global positioning system (GPS) satellite monitoring: While subject to GPS monitoring, the defendant's location is detected by GPS satellites that transmit signals to location monitoring equipment on the ground. Each GPS satellite transmits data that indicates its location and current time.

3.   Considerations When Selecting Type of Technology

a.   When determining the type of technology, probation officers should always consider the purpose for its use and how the technology will mitigate risks and fulfill sentencing objectives.

b.   The least invasive and most cost-effective type of technology should be recommended based on the nature of the offense, criminal history, and the defendant's risk level. Location monitoring technology can create supervision efficiencies by providing a better allocation of time and therefore avoid under-

supervising high-risk defendants and avoid over-supervising low-risk defendants.

    c.  The type of restriction imposed should be considered when selecting the type of location monitoring technology. For example, if a defendant is placed on a curfew coupled with an employment and travel restriction and it has been determined that he or she poses a risk to community safety, global positioning systems (GPS) technology should be considered to monitor both the curfew and the employment and travel conditions. If the defendant is placed on home incarceration, radio frequency (RF) technology should be considered, as the technology provides a more cost-effective solution to verifying a defendant's location in the home.

4.  Location monitoring technologies have advantages and limitations. For example, while location monitoring technologies may be used to verify a defendant's location at a specific location or area during a prescribed time, the information provided by the technology will not necessarily be sufficient to make conclusions regarding compliant and/or noncompliant behavior. The information must be corroborated through other supervision strategies such as visits to the defendant and his or her social network in the community.

5.  Location monitoring technology should be dynamic in that probation officers should consistently evaluate the need for the technology, the level of monitoring, and the type of technology used or recommended.

6.  The use of location monitoring technology can be an effective sanction or action when addressing violations of conditions of supervision. However, it should only be recommended to address specific risks associated with a violation. For example, if a defendant has violated conditions of supervision by failing to be at his or her employment location at the time of an officer's visit or other attempts to verify, location monitoring can be recommended as a sanction. In this example, location monitoring is a controlling strategy and provides enhanced defendant accountability.

7.  For defendants who qualify for low-risk supervision standards under Judicial Conference policy (see Chapter 1, Section II(C)(1)), contacts with the defendant and his or her social network in the community are not required, and GPS technology should not be used. For these defendants, probation officers should request that the court amend conditions requiring monitoring by GPS to allow for more appropriate monitoring technology (e.g., radio frequency or voice verification).

## XIII.  Residential Reentry Center

    A.  Statutory Authority

Under 18 U.S.C. § 3563(b)(11), the court may provide that the defendant "reside at, or participate in the program of, a community corrections facility (including a facility maintained or under contract to the Bureau of Prisons) for all or part of the term of [supervision]."

B.  Sample Condition Language

You must reside in a residential reentry center for a term of _____ days. You must follow the rules and regulations of the center.

C.  Purpose

1.  This condition serves the statutory sentencing purposes of deterrence, public protection, and rehabilitation.  18 U.S.C. § 3553(a)(2)(B)-(D).

2.  This condition enables the probation officer to satisfy the statutory requirements to keep informed as to the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition.  18 U.S.C. § 3603(2)-(3).

3.  For probation cases, this condition may serve the statutory purposes of reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment for the offense.  18 U.S.C. § 3553(a)(2)(A).

4.  Placement in a residential reentry center (RRC) is a versatile condition that can serve multiple purposes.  It can, for example, provide temporary housing and services for a defendant transitioning from a custodial sentence with no identifiable or appropriate residence, or for a defendant who unexpectedly becomes homeless or experiences an episode of instability during a term of probation or supervised release.  It may also serve as a negative consequence or controlling intervention in response to noncompliance with conditions of release.

5.  This condition allows the probation officer to implement supervision methods demonstrated by social science to be effective at achieving positive outcomes.

    a.  Research suggests that correctional interventions that follow the principles of evidence-based practices promote positive change in the defendant and reduce the probability of recidivism. One of the evidence-based practices principles is that officers should address criminogenic needs. Placement in an RRC can provide a structured living environment to ensure that defendants are addressing relevant criminogenic needs (see: Chapter 1, Section III(A)(1)).

    b.  Research suggests that for a criminal event to occur there must be an opportunity to commit a crime. Probation officers may work with defendants on supervision, family members, neighbors, other community members, and

law enforcement agencies to structure and monitor the defendant's routine activities and reduce the extent to which defendants come into contact with criminal opportunities. Probation officers may also monitor defendants through contacts with the defendant and his or her social network, verifying employment, restricting travel, and providing positive reinforcement for prosocial routine activities. Placement in an RRC can assist in ensuring that defendants avoid criminal opportunities in the community and can provide control and monitoring by correctional officials (see: Chapter 1, Section III(A)(4)).

D.  Method of Implementation

1.  When the primary purpose of an RRC placement is controlling in response to noncompliance with conditions of supervision or an increase in risk level, the probation officer may seek placement in a structured residential setting. Conversely, when the primary purpose is to provide reintegrative services, the probation officer may seek placement in an RRC, although a less restrictive program may be more appropriate. Before determining the appropriate placement, the probation officer verifies the necessary services and level of confinement that will be available.

2.  Once the court imposes a condition requiring RRC placement, the probation officer submits a referral packet (including the court's order of RRC placement, judgment form, and presentence report) to the Bureau of Prisons so that it can designate the defendant to the appropriate facility.

3.  Once the defendant is designated, the probation officer provides reporting instructions. Probation officers communicate clearly to both the defendant and facility staff the purpose and goals of the RRC placement. They establish and maintain ongoing communication among all parties focused on identifying steps necessary to achieve the defendant's successful reintegration into the community and compliance with the conditions of supervision.

4.  Probation officers work with facility staff to identify correctional strategies during an RRC placement, which may include assistance in securing an appropriate residence; assistance in seeking or preparing to seek employment, vocational training, or educational services; financial education or credit counseling; or therapeutic services to stabilize a mental health condition or manage a substance abuse relapse.  The probation officer monitors progress toward the programming goals through regular communication with the defendant and facility staff.

5.  Probation officers also work with facility staff to identify controlling strategies during an RRC placement. These include the requirement that the defendant abide by the rules and regulations of the program, which exist not only as a sanction for some defendants but also to ensure the safe, effective operation of the facility and protection of facility residents, staff, and public. The rules and regulations may

include limits on movement in the community, restrictions on association or visitation, curfews, administrative searches, or random substance abuse testing. The facility staff may impose additional restrictions or sanctions on defendants who violate the rules and regulations of the program. The probation officer monitors the defendant's compliance with the rules and regulations and intervenes as necessary.

## XIV.   Intermittent Confinement

A.  Statutory Authority

Under 18 U.S.C. § 3563(b)(10), the court may provide that the defendant "remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, during the first year of the term of probation or supervised release."

Under 18 U.S.C. § 3583(e)(2), the court may modify the conditions of supervised release "at any time prior to the expiration or termination of the term of supervised release" (see: Chapter 1, Section II(A)(3)).

B.  Sample Condition Language

You must serve a total of _____ days of intermittent confinement. The intermittent confinement shall be served for _____ consecutive (weekends or days) at the _____ facility beginning on (day), (date) at (time) and ending on (day), (date), no later than (time). You must follow the rules and regulations of the_____ facility.

C.  Purpose

1.  This condition serves the statutory sentencing purposes of deterrence, public protection, and rehabilitation.  18 U.S.C. § 3553(a)(2)(B)-(D).

2.  For probation cases, this condition may serve the statutory purposes of reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment for the offense.  18 U.S.C. § 3553(a)(2)(A).

3.  In some circumstances this condition may prevent a defendant from losing employment, or allow a defendant to avoid the complete removal from role of provider or caretaker for dependents and other family members that would result from a traditional term of incarceration.  Similarly, this condition may benefit a defendant with a medical or psychiatric diagnosis requiring regular, consistent care by a physician.

D.  Method of Implementation

1. Once the court imposes a condition requiring intermittent confinement, the probation officer submits a referral packet (including the court's order of intermittent confinement, judgment form, and presentence report) to the Bureau of Prisons so that it can designate the defendant to the appropriate facility.

2. Probation officers communicate clearly to the defendant the designated schedule of confinement. The defendant is required to abide by the rules and regulations of the facility during the periods of confinement, and the facility staff may impose additional restrictions or sanctions on defendants who violate the rules and regulations. The probation officer maintains regular communication with the BOP and/or facility staff to monitor the defendant's compliance with both the schedule of confinement and facility rules and regulations, and intervenes as necessary.

## XV.   Search and Seizure

A. Statutory Authority

Under 18 U.S.C. § 3563(b)(22), the court may provide that the defendant "satisfy such other conditions as the court may impose."

Under 18 U.S.C. § 3563(b)(23), the court may provide that the defendant, "if required to register under the Sex Offender Registration and Notification Act, submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of probation or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions."

Under 18 U.S.C. § 3583(d), the court may provide "for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions."

B. Sample Condition Language

You must submit your person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer.  Failure to submit to a search may be

grounds for revocation of release.  You must warn any other occupants that the premises may be subject to searches pursuant to this condition.

The probation officer may conduct a search under this condition only when reasonable suspicion exists that you have violated a condition of supervision and that the areas to be searched contain evidence of this violation.  Any search must be conducted at a reasonable time and in a reasonable manner.

C.  Purpose

1.  This condition serves the statutory sentencing purposes of deterrence, public protection, and rehabilitation. 18 U.S.C. § 3553(a)(2)(B)-(D).

2.  This condition allows the probation officer to promote public safety through effective oversight of higher-risk defendants and by assisting with rehabilitation efforts. The condition may also deter criminal conduct and permit a probation officer to intervene quickly when reasonable suspicion exists that a defendant has engaged in criminal conduct or otherwise violated a condition of supervision.

3.  This condition enables the probation officer to satisfy the statutory requirements to keep informed as to the conduct and condition of the defendant and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

D.  Method of Implementation

1.  Probation officers may recommend a condition authorizing search and seizure when a defendant is convicted of, or exhibits a history of, certain types of offenses (e.g., violent offenses, weapons offenses, drug distribution offenses, sexual offenses, offenses related to terrorism, or sophisticated financial offenses); when the defendant has a history of unsuccessful attempts at completing a term of supervision within the criminal justice system; or when a defendant exhibits some other personal trait or characteristic indicating the potential for a higher risk of recidivism or threat to public safety.

2.  The supervision planning process begins with an initial investigation during which probation officers review documentation, meet with defendants, conduct on-site examinations of their residences, and develop contacts with defendants' social networks. Due to the inherently intrusive nature of searches and seizures, probation officers discuss search conditions in detail with potential occupants of a defendant's proposed residence during the planning process whenever possible.

3.  When supervision begins, the probation officer advises the defendant of the search condition and explains the procedures followed in conducting a search. During the initial home visit (see: Chapter 2, Section VI), the probation officer provides similar information to all other occupants of the residence and answers

questions regarding the condition and the procedures to be expected should a search be conducted.

4. The probation officer limits enforcement of this condition to situations where he or she can articulate reasonable suspicion that items prohibited by the conditions of supervision or evidence of a violation of the conditions of supervision may be found at the place or in the item being searched. Searches are not to be conducted absent such suspicion of violation behavior.

5. In deciding whether to conduct a search, the probation officer considers alternative, less intrusive interventions to suspected violation behavior; the potential negative consequences a search may have on the rapport the probation officer has developed with the defendant and other occupants; the level and type of risk posed by the defendant; the seriousness of the suspected violation behavior; the risk of harm that the search could pose to the probation officer or others; and the effective use of resources necessary to conduct the search. The probation officer will recommend or conduct a search only after determining that the search is necessary to enforce other conditions of release or to achieve the desired outcomes of supervision.

6. The probation officer is generally required to seek approval for a search from his or her supervisor(s) and the chief probation officer. To obtain such approval, the probation officer must submit details regarding the defendant, the basis for the probation officer's reasonable suspicion of violation behavior, the object of the search, and other details to ensure that the search is conducted in a reasonable manner.

7. At all times during the search, the probation officer continues to consider the goals of supervision, the need to maintain rapport with the defendant and other occupants of the residence, and the appropriate degree of intrusion warranted by the individual traits and circumstances of the defendant and the nature of the suspected violation behavior.

8. Following completion of a search, the probation officer submits a post-search report detailing the execution and outcome of the search and any planned follow up. Information or evidence gathered during the course of a search may be used in the regular course of managing noncompliance, which may include increasing treatment services or the intensity of supervision, notifying the court of the results of the search, seeking revocation or modification of the conditions of release, or reporting serious criminal conduct to another law enforcement agency.

## XVI. Immigration-Related Requirements

A. Statutory Authority

Under 18 U.S.C. 3563(b)(21), the court may provide that the defendant "be ordered deported by a United States district court, or United States magistrate judge, pursuant to a stipulation entered into by the defendant and the United States under section 238(d)(5) of the Immigration and Nationality Act, except that, in the absence of a stipulation, the United States district court or a United States magistrate judge, may order deportation as a condition of probation, if after notice and a hearing pursuant to such section, the Attorney General demonstrates by clear and convincing evidence that the alien is deportable."

Under 18 U.S.C. § 3563(b)(22), the court may provide that the defendant "satisfy such other conditions as the court may impose."

Under 18 U.S.C. § 3583(d), if the defendant is subject to deportation, the court may provide that he "remain outside the United States" and "be delivered to a duly authorized immigration official for such deportation."

B.  Sample Condition Language

You must [immediately report, continue to report, or surrender] to U.S. Immigration and Customs Enforcement and follow all their instructions and reporting requirements until any deportation proceedings are completed.

If you are ordered deported from the United States, you must remain outside the United States, unless legally authorized to re-enter. If you re-enter the United States, you must report to the nearest probation office within 72 hours after you return.

You must seek proper documentation from U.S. Immigration and Customs Enforcement authorizing you to work in the United States.

C.  Purpose

1.  This condition serves the statutory sentencing purposes of public protection. They also serve the statutory sentencing purpose of affording adequate deterrence to criminal conduct by ensuring that the defendant is notified of the possibility of deportation and his or her potential exposure to criminal penalties arising from violations of immigration and naturalization statutes (*see, e.g.*, 8 U.S.C. §§ 1325 and 1326). 18 U.S.C. § 3553(a)(2)(B)-(C).

2.  This condition enables the probation officer to satisfy the statutory requirements to  keep informed of the conduct and condition of the defendant and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. § 3603(2)-(3).

D.  Method of Implementation

1. This condition is recommended when a defendant is suspected or confirmed to be an illegal alien in the United States who may be subject to deportation proceedings, or when a defendant's residency status is under investigation by United States Immigration and Customs Enforcement (ICE) at the time of sentencing.

2. When a defendant remains in the administrative custody of ICE following sentencing, or when a defendant is transferred to the administrative custody of ICE following service of a sentence of imprisonment, the probation officer initiates and maintains contact with ICE until he or she confirms the outcome of deportation proceedings, including the date, location, and method of deportation. The officer documents this information in the chronological record of the case file and submits a Federal Bureau of Investigation flash notice highlighting the supervision sentence, requesting notification of new criminal conduct, and notifying law enforcement officers of the defendant's status and the probation office's interest in the case.

3. The probation officer identifies the defendant's case file as "inactive" and ceases supervision efforts.  After six months, and annually thereafter until expiration of the term of supervision, a criminal records check is conducted to detect any activity not discovered through use of the flash notice.

4. When a defendant subject to a term of supervised release illegally reenters the United States following deportation and is arrested in another district, the probation officer initiates a transfer of jurisdiction to the district court where the defendant is discovered and requests that the prosecution of any new charges be consolidated with violation proceedings.

5. When a defendant reenters the United States following deportation, or is released from administrative custody pending resolution of deportation proceedings, and reports to the probation office as required, the probation officer begins active supervision pending confirmation of the defendant's legal presence in the jurisdiction.

6. If the probation officer confirms that the deported or temporarily released defendant is legally authorized to remain in the United States due to a formal change (or pending petition for a change) in his or her alien status, the officer secures written verification from ICE of the status change. The documentation should detail the defendant's authorization to maintain residency in the United States and, when applicable, secure employment. The probation officer continues to actively supervise the defendant as directed by the court and coordinates with ICE until the defendant's alien status is fully resolved.

## XVII.  Restrictions on Viewing Sexually Explicit Materials

A.  Statutory Authority

82

Under 18 U.S.C. § 3563(b)(22), the court may provide that the defendant "satisfy such other conditions as the court may impose."

B.  Sample Condition Language

You must not view or possess any "visual depiction" (as defined in 18 U.S.C. § 2256), including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of "sexually explicit conduct" (as defined in 18 U.S.C. § 2256).

You must not view or possess any "visual depiction" (as defined in 18 U.S.C. § 2256) including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of "sexually explicit conduct" (as defined in 18 U.S.C. § 2256), that would compromise your sex offense-specific treatment.

C.  Purpose

1.  This condition serves the statutory sentencing purpose of rehabilitation. 18 U.S.C. § 3553(a)(2)(B)-(D).

2.  This condition enables the probation officer to satisfy the statutory requirements to: aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. § 3603(3).

3.  Prohibiting the viewing of sexually-explicit material may be necessary in some cases as part of sex offense-specific treatment.

4.  Social science research suggests that viewing adult pornography may increase the probability of recidivism depending on the characteristics and offense history in individual cases. In some cases, such as when defendants test high on measures of sexual aggression but have no sexual interest in minors, viewing adult pornography may not be a risk factor that needs to be addressed. In other cases, such as when a defendant tests high for sexual interest in minors, viewing adult pornography is correlated with an increased probability of recidivism.

D.  Method of Implementation

1.  Probation officers ensure compliance with this condition by interviewing the defendant, polygraph examinations (see: Chapter 3, Section XIX), search and seizure conditions (see: Chapter 3, Section XV), and computer monitoring conditions (see: Chapter 3, Section XX).

2.  Due to the complex and individualized nature of sex offense-specific risk factors, probation officers should not recommend this condition until there has been an

83

assessment of sexual deviance and risk by a sex offense-specific treatment provider. Probation officers should recommend this condition in consultation with the sex offense-specific treatment provider based on the specific risks in the individual case.

3.  When this condition is imposed, probation officers should meet with the defendant and sex offense-specific treatment provider to discuss the defendant's specific risks associated with viewing pornography.

4.  Probation officers and sex offense-specific treatment providers should assess the need for this condition on an ongoing basis and modify the condition if treatment progress and goals of supervision indicate a modification is appropriate.

**XVIII. Sex Offense-Specific Assessment, Treatment, and Physiological Testing**

A.  Statutory Authority

1.  Under 18 U.S.C. § 3563(b)(9), the court may provide that the defendant "undergo available medical, psychiatric, or psychological treatment."

2.  Under 18 U.S.C. § 3563(b)(22), the court may provide that the defendant "satisfy such other conditions as the court may impose."

B.  Sample Condition Language

You must participate in a sex offense-specific assessment. [[You must pay the costs of the assessment.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the assessment.]]

You must participate in a sex offense-specific treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the program.]]

You must participate in plethysmograph testing as part of the required participation in a sex offense-specific assessment and/or treatment.

You must participate in visual response testing as part of the required participation in a sex offense-specific assessment and/or treatment.

C.  Purpose

1.  This condition serves the statutory sentencing purposes of public protection and rehabilitation. 18 U.S.C. § 3553(a)(2)(C)-(D).

2. This condition enables the probation officer to satisfy the statutory requirements to keep informed as to the conduct and condition of the defendant; report the defendant's conduct and condition to the sentencing court; and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

3. The purposes of sex offense-specific assessments are to assess a defendant's risk for reoffending and current amenability for treatment; guide and direct specific recommendations for the defendant's conditions of treatment and supervision; provide information that will help to identify the optimal setting, intensity of intervention, and level of supervision; and assess the potential dangerousness of the defendant.

4. The purposes of sex offense-specific treatment are to help those who have committed sex offenses accept responsibility for sexually deviant thoughts and behavior; develop an increased level of recognition and focus on details of actual sexual behavior; and recognize the arousal patterns, fantasies, planning, and rationalizations of their sexually deviant thoughts and behavior.

5. Physiological testing including plethysmograph testing and visual reaction testing may be beneficial as an adjunct to sex offense-specific treatment and may allow the probation officer and the treatment provider to ascertain the arousal pattern of the defendant and to assess defendant progress in treatment.

6. Social science research suggests that correctional interventions that follow the principles of evidence-based practices (e.g., the risk principle, the need principle, and the responsivity principle) promote positive change in the defendant and reduce the probability of recidivism. Under the need principle, correctional interventions should be rooted in empirical knowledge about the sources of criminal conduct and should target known predictors of crime and recidivism that can be changed (also known as "dynamic risk factors" or "criminogenic needs"). They are human deficits directly related to the propensity to commit crime that can be changed. Research has shown that criminogenic needs include antisocial thoughts and attitudes, which can be addressed through cognitive-behavioral treatment. Cognitive-behaviorism assumes that cognitions affect behavior, people can monitor and alter their cognitive activity, and changes in cognitions will lead to changes in behavior (see: Chapter 1, Section III; Chapter 3, Section X).

D. Method of Implementation

1. The physical and psychological harm caused by sex offenses is particularly traumatic, and probation and pretrial services officers should give priority to minimizing the impact on victims and to preventing new sex crimes from occurring. Not all persons charged with or convicted of sex offenses are alike. Rather, they present a spectrum of criminogenic risk and therapeutic need. Officers' investigation and supervision techniques should vary accordingly.

2. Traditional mental health treatment should not be used in place of sex offense-specific treatment. However, a defendant with a mental health disorder may require mental health-specific treatment interventions in conjunction with sex offense-specific treatment (see: Chapter 3, Section II).

3. The probation officer should meet with the defendant and the clinician to develop an individualized treatment plan that clearly outlines the goals and objectives of treatment and the methods that will be used to achieve those goals. The probation officer should use this meeting to address any concerns the defendant has, discuss how compliance will be monitored, and explain the consequences of noncompliance. The probation officer should clearly state his or her role in monitoring the treatment plan.

4. There are various types of sex offense-specific treatments. Group treatment is the preferred treatment modality, but individual sessions may be used as an adjunct to group treatment to address specific issues that arise.

5. Cognitive-behavioral and medication-assisted treatment are the most widely accepted treatment modalities for sex offense-specific services. The pharmacological options include three categories of drugs: (1) anti-androgens used to lower testosterone (e.g., Depo Provera); (2) anti-androgens used to lower testosterone to castrate levels (e.g., Lupron and Zoladex); and (3) antidepressants (called selective serotonin reuptake inhibitors–SSRIs) used to treat depression and obsessive-compulsive symptoms (e.g., Prozac and Paxil). Medication is not appropriate for all defendants with a history of sex offenses and is not an isolated treatment (i.e., it is administered in conjunction with psychotherapy).

6. Effective supervision of defendants with a history of sex offenses requires close collaboration between treatment providers and probation officers. It is the responsibility of the probation officer to coordinate this communication with the therapist and include the defendant in this process. The defendant must be aware that the therapist and probation officer maintain regular communication throughout the course of treatment. The probation officer should have at least monthly contact (in person or by telephone) with the treatment provider. The amount of contact may need to be higher based on the level of risk and the needs of the defendant. The probation officer should reduce the contact based on the defendant's progress in treatment and reassessment of the defendant's risk and needs.

7. The condition should be worded to allow for a co-payment amount for sex offense-specific treatment if the defendant is financially able. Having the defendant pay for services promotes the defendant's personal investment in his or her treatment.

8. Sex offense-specific evaluations or treatment may include physiological testing such as the plethysmograph, visual reaction testing, or the clinical polygraph.

9. The plethysmograph assesses sexual arousal patterns in males. Deviant sexual arousal is revealed by physiological responses to audio or visual sexual stimuli. Deviant sexual arousal patterns provide the framework to develop an individualized treatment plan tailored to arrive at a more comprehensive understanding of the defendant's sexual interests. Results can help identify defendants at higher risk for sexual re-offending. Plethysmograph results should not be used as the sole criterion for estimating risk of engaging in sexually abusive behavior. The results should be considered in conjunction with other evaluative measures. The results of the plethysmograph should not be used to initiate any revocation proceedings.

10. Visual reaction time is a sexual interest assessment used to assess both normal and deviant sexual attraction. It requires interpretation and scoring by the private company that developed the tests. Sexual attraction is measured by recording the length of time an image is viewed. Multiple images are presented to the person being tested. The person rates the attractiveness of the images while the viewing time for each photograph is measured. The person also completes questionnaires related to social desirability and cognitive distortions. The results should not be used as the sole criterion for estimating risk of engaging in sexually abusive behavior. The results should be considered in conjunction with other evaluative measures.

11. In some cases (e.g., when there is a clear and documented history of sexual attraction to children), physiological testing mechanisms such as the plethysmograph or visual reaction time may not be necessary.

12. In some cases, probation officers may not determine that physiological testing mechanisms such as the plethysmograph or visual reaction time are necessary until after sentencing and release from imprisonment. Probation officers continually evaluate supervision and treatment plans throughout the course of supervision. If a clinical assessment after release from imprisonment reveals that physiological testing mechanisms such as the plethysmograph or visual reaction time are necessary, the probation officer may recommend that the court modify the conditions of supervision, and there is no requirement that the modification be predicated upon a violation of an existing condition or a change in the defendant's circumstances (see: Chapter 1, Sections II(A)(3) and II(B)(3)).

## XIX.   Polygraph for Sex Offender Management

A.  Statutory Authority

Under 18 U.S.C. § 3563(b)(9), the court may provide that the defendant "undergo available medical, psychiatric, or psychological treatment."

Under 18 U.S.C. § 3563(b)(22), the court may provide that the defendant "satisfy such other conditions as the court may impose."

B.  Sample Condition Language

You must submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure that you are in compliance with the requirements of your supervision or treatment program.

C.  Purpose

1.  This condition serves the statutory sentencing purposes of public protection, deterrence, and rehabilitation. 18 U.S.C. § 3553(a)(2)(B)-(D).

2.  The polygraph examination is used to provide historical information about the defendant's past behaviors, which is used for assessing risks and targeting treatment interventions, and to increase disclosure of activities, which may serve as a deterrent to re-offending behavior during the supervision period.

3.  This condition enables the probation officer to satisfy the statutory requirements to keep informed as to the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

D.  Method of Implementation

1.  The physical and psychological harm caused by sex offenses is particularly traumatic, and probation and pretrial services officers should give priority to minimizing the impact on victims and to preventing new sex crimes from occurring. Not all persons charged with or convicted of sex offenses are alike. Rather, they present a spectrum of criminogenic risk and therapeutic need. Officers' investigation and supervision techniques should vary accordingly.

2.  The polygraph test measures and records physiological responses such as heart rate, blood pressure, breathing patterns, and galvanic skin response while a person is asked and responds to specific questions. Testing consists of taking physiological measurements, interpreting the results, and offering an opinion by a professional polygraph examiner regarding deception.

3.  Types of Polygraph Examinations

a.  Sexual History Disclosure: A sexual history disclosure examination is used to investigate the examinee's lifetime history of involvement in unknown or unreported offenses and other sexual compulsion, sexual preoccupation, or

88

sexual deviancy behaviors. The instant offense may also be examined if the defendant exhibits denial regarding the commission of, or circumstances surrounding, the crime of conviction.

    b. Maintenance and Monitoring:

        i. A maintenance examination is used to verify the defendant's compliance with treatment and supervision conditions. Maintenance examinations are administered periodically, usually every six months. Maintenance polygraph examinations cover a wide variety of sexual behaviors and compliance issues that may be related to victim selection, deviancy activities, or high-risk behaviors.

        ii. A monitoring examination may be used to investigate the possibility of new unlawful sexual behavior while on supervision based on concerns expressed by the supervision and treatment team. Other relevant questions dealing with behaviors related to probation and treatment compliance should not be included.

    c. Issue-Specific: Issue-specific examinations can be used to follow up on previous unresolved/deceptive maintenance/monitoring examinations.

4. The probation officer should collaborate with the polygraph examiner in the design of the questions presented during a polygraph test. The questions should consider any treatment issues (if the defendant is in treatment), behavior that is not in compliance with the conditions of supervision, and other supervision concerns.

5. Polygraph examinations, which consist of interviews before, during, and after the polygraph test itself, may detect deception from the person's demeanor during the interviews, deter unwanted activities by persons who know they will be asked about such activities, and elicit admissions or confessions of undesired activity.[25]

6. Under approved judiciary procedures, polygraph results may be used to increase the level of supervision, modify treatment plans, or generate a separate investigation. A polygraph result may not be used as the sole basis to revoke supervision.[26]

7. If the defendant refuses to answer a specific question during the polygraph examination or in any other interview on the grounds that it is incriminating, the

---

[25] National Research Council, *The Polygraph and Lie Detection* (Washington, D.C.: The National Academies Press, 2003).

[26] For a further discussion of guidance provided to federal probation officers during polygraph examinations, which has been endorsed by the Criminal Law Committee of the Judicial Conference of the United States, *see* Stephen E. Vance, *Looking at the Law: An Updated Look at the Privilege Against Self-Incrimination in Post-Conviction Supervision*, 75 Fed. Probation 33, 37 (June 2011).

probation officer may not compel (e.g., through threat of revocation) the defendant to answer the question. If there is uncertainty about whether the question may lead to a realistic chance of incrimination, the probation officer should refer the matter to the court to make this determination.[27]

8. Probation officers must be aware of situations that may lead to reasonably foreseeable risk of harm to a third party (see: Chapter 2, Section XII), which may include information received during a polygraph examination.

9. After the polygraph test is administered, the probation officer should interview the defendant to discuss the results and future treatment and supervision needs.

## XX.   Computer and Internet Restrictions

A.  Statutory Authority

Under 18 U.S.C. § 3563(b)(23), the court may provide that the defendant, "if required to register under the Sex Offender Registration and Notification Act, submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of probation or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions."

Under 18 U.S.C. § 3563(b)(22), the court may provide that the defendant "satisfy such other conditions as the court may impose."

B.  Sample Condition Language

You must not possess and/or use computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communications or data storage devices or media.

You must not access the Internet.

You must not access the Internet except for reasons approved in advance by the probation officer.

You must submit your computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communications or data storage devices or media, to a search. You must warn any other people who use these computers or devices capable of accessing the Internet that the devices may be subject to searches pursuant to this condition. A probation officer may conduct a search pursuant to this condition only when reasonable suspicion exists that there is a violation of a condition of

---

[27] *Id.*

supervision and that the computer or device contains evidence of this violation. Any search will be conducted at a reasonable time and in a reasonable manner.

You must allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) you use.

To ensure compliance with the computer monitoring condition, you must allow the probation officer to conduct initial and periodic unannounced searches of any computers (as defined in 18 U.S.C. § 1030(e)(1)) subject to computer monitoring. These searches shall be conducted to determine whether the computer contains any prohibited data prior to installation of the monitoring software, whether the monitoring software is functioning effectively after its installation, and whether there have been attempts to circumvent the monitoring software after its installation. You must warn any other people who use these computers that the computers may be subject to searches pursuant to this condition.

C. Purpose

1. This condition serves the statutory sentencing purposes of deterrence, public protection, and rehabilitation. 18 U.S.C. § 3553(a)(2)(B)-(D).

2. This condition enables the probation officer to satisfy the statutory requirements to keep informed of the conduct and condition of the defendant and aid the defendant and bring about improvements in his or her conduct and condition. 18 U.S.C. §§ 3603(2)-(3).

3. This condition enables the probation officer to allow the defendant access to computers and Internet-connected devices for a variety of reasons while monitoring and potentially deterring future violations of supervision.

4. In the case of an identified victim, a monitoring condition allows the probation officer to monitor the defendant's Internet access and be alerted to any attempts to locate the victim on the Internet or attempts to contact the victim through the Internet.

D. Method of Implementation

1. Computer-assisted offenses range from crimes that cannot be committed without a computer or Internet-capable device to the use of a computer or Internet-capable device to facilitate the commission of traditional crimes. The most common computer-assisted offenses in the federal system involve securities and credit card fraud, network manipulation, hacking, identity theft, on-line gambling, software

91

and recording piracy, child sexual exploitation, child pornography, cyber-stalking, and counterfeiting.[28]

2.  The nature of the specific crime will affect the types of special conditions that may be appropriate.

    a.  Computer as Object, Victim, or Target: Crimes in this category involve attacks on the confidentiality, integrity, or availability of a computer's information services (i.e., targeting a computer system to acquire stored information, steal services, corrupt data, or interfere with the accessibility of the computer server). A special condition prohibiting access to a computer may be appropriate for a hacker.

    b.  Computer as Subject or Storage Device: Unlawful conduct of this type involves using a computer or connected device to store data used in carrying out criminal activity (e.g., transmitting a computer program containing instructions to trigger a malicious act automatically). A special condition allowing computer search may be appropriate for some defendants in this class.

    c.  Computer as Instrument or Tool: With this type of criminal conduct, a computer or connected device is used to make traditional unlawful activity easier and faster. Appropriate special conditions to assist the officer in supervising this oftentimes sophisticated defendant might include prohibiting the defendant from owning or operating a computer; prohibiting the use of a device to access the Internet, bulletin board systems, or chat rooms; and computer search.

3.  Traditional supervision strategies can be effective for supervising defendants convicted of computer-related offenses as long as probation officers have a basic familiarity with computers and Internet terminology. These strategies include the use of targeted inquiry to develop information about defendants' computing environments and their purposes or patterns of use and review of telephone records to yield information about Internet providers. Specifically, probation officers should ascertain information from the defendant and the defendant's social network about: (1) what types of computer equipment they own or have access to at their residence and place of employment; (2) what Internet service providers they have on home and employment computers; (3) what web pages they operate or maintain; and (4) if a computer search or monitoring condition is in effect, what e-mail addresses, screen names, and passwords they use.

---

[28] For an overview of legal issues concerning the imposition and execution of computer-related special conditions, including a discussion of the factors examined by appellate courts when considering the conditions and a discussion of some technological and logistical issues concerning the imposition and execution of these conditions, *see* Stephen E. Vance, Federal Judicial Center, *Supervising Cyber Crime Offenders: A Guide for Judges* (http://www.fjc.gov/library/fjc_catalog.nsf/DPublication?openform&parentunid=B21AD64E47AE68F085257EEB0 06EC387).

4. Search and seizure special conditions may be necessary to monitor the defendant's compliance with other conditions of release, including conditions prohibiting the possession of sexually stimulating material and conditions banning or restricting computer/Internet use.

5. Computer and Internet Monitoring

   a. Computer and Internet monitoring is a method of recording activity on a computer system in order to reasonably ensure compliance with the conditions of supervision. Computer and Internet monitoring conditions may also be necessary to monitor the defendant's compliance with other conditions of release, including conditions prohibiting the possession of sexually stimulating material (see: Chapter 3, Section XVII) and conditions limiting the type of permissible computer/Internet use.

   b. In order to install computer monitoring software on computers, it is necessary to first conduct a search of the computer to determine whether it contains any prohibited data that may be detected by the monitoring software. It is also necessary to conduct subsequent searches of the computer to determine whether there have been any attempts to circumvent the software and to ensure it is functioning effectively.

   c. Monitoring computer and Internet activity is a supervision tool that not only serves as a deterrent to future criminal behaviors, but also permits defendants to use the Internet for legitimate and necessary reasons (i.e., employment and education) to facilitate rehabilitation and reintegration into the community.

   d. Computer and Internet monitoring may provide the least restrictive supervision method, as it permits Internet access as opposed to conditions that impose more restrictive bans or limits on access. Monitoring may allow the probation officer to control the defendant's access to websites, limit activity to specific time frames, and allow or block access to certain applications. Monitoring may enable the probation officer to customize each monitoring case based on risks associated with the defendant's offense history and other personal history and characteristics.

6. In supervising a defendant with a history of computer-related offenses, probation officers must be aware of situations that may lead to reasonably foreseeable risk of harm to a third party (see: Chapter 2, Section XII), which may include information gathered by computer monitoring (for example, that shows visits to pornography sites, use of unauthorized external devices, altered monitoring software, or questionable file names, e-mail content, or chat conversations).

## APPENDIX: CONDITION LANGUAGE

**STANDARD CONDITIONS**

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.[29]
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

---

[29] This condition applies to defendants released to the community after a period of imprisonment. For probation cases, the condition is: "You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of the time you were sentenced, unless the probation officer instructs you to report to a different probation office or within a different time frame."

## COMMON SPECIAL CONDITIONS: SAMPLE CONDITION LANGUAGE

1. **Substance Abuse Treatment, Testing, and Abstinence**

You must participate in an [inpatient/outpatient] substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.).  [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the program.]]

You must participate in an [inpatient/outpatient] alcohol abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.).  [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the program.]]

You must not use or possess any controlled substances without a valid prescription. If you do have a valid prescription, you must disclose the prescription information to the probation officer and follow the instructions on the prescription.

You must submit to substance abuse testing to determine if you have used a prohibited substance. [[You must pay the costs of the testing.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the testing.]]  You must not attempt to obstruct or tamper with the testing methods.

You must not use or possess alcohol.

You must not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances (e.g., synthetic marijuana, bath salts, etc.) that impair a person's physical or mental functioning, whether or not intended for human consumption, except with the prior approval of the probation officer.

2. **Mental Health Treatment**

You must participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the program.]]

You must take all mental health medications that are prescribed by your treating physician. [[You must pay the costs of the medication.] [You must pay [$___ per ___ (e.g., week, month)] or [___ % of the costs of the medication.]]

3. **Financial Requirements and Restrictions**

You must provide the probation officer with access to any requested financial information and authorize the release of any financial information. The probation office may share financial information with the U.S. Attorney's Office.

You must not incur new credit charges, or open additional lines of credit without the approval of the probation officer.

If the judgment imposes a financial penalty, you must pay the financial penalty in accordance with the Schedule of Payments sheet of this judgment. You must also notify the court of any changes in economic circumstances that might affect the ability to pay this financial penalty.

**4. Employment Restrictions**

You must not engage in an occupation, business, profession, or volunteer activity that would require or enable you to _____ without the prior approval of the probation officer.

You must not work in any type of employment without the prior approval of the probation officer.

**5. Association and Contact Restrictions**

You must not have direct contact with any child you know or reasonably should know to be under the age of 18, [including][not including] your own children, without the permission of the probation officer. If you do have any direct contact with any child you know or reasonably should know to be under the age of 18, [including][not including] your own children, without the permission of the probation officer, you must report this contact to the probation officer within 24 hours. Direct contact includes written communication, in-person communication, or physical contact. Direct contact does not include incidental contact during ordinary daily activities in public places.

You must not communicate, or otherwise interact, with any known member of the _____ gang, without first obtaining the permission of the probation officer.

You must not communicate, or otherwise interact, with [name of victim], either directly or through someone else, without first obtaining the permission of the probation officer.

**6. Place Restrictions**

You must not knowingly enter [name of neighborhood, city, county, subdivision, park, or other geographic entity with clearly defined boundary] without first obtaining the permission of the probation officer.

You must not knowingly enter any [bar, tavern, etc.] without first obtaining the permission of the probation officer.

You must not go to, or remain at any place where you know controlled substances are illegally sold, used, distributed, or administered without first obtaining the permission of the probation officer.

You must not go to, or remain at, any place where you know children under the age of 18 are likely to be, including parks, schools, playgrounds, and childcare facilities.

You must not go to, or remain at, a place for the primary purpose of observing or contacting children under the age of 18.

**7. Supporting Dependents**

If you are ordered by the government to make child support payments or to make payments to support a person caring for a child, you must make the payments and comply with the other terms of the order.

You must meet any legal obligation to support or make payment toward the support of any person, including any dependent child, the co-parent or caretaker of a dependent child, or a spouse or former spouse.

**8. Gambling-Related Conditions**

You must participate in a gambling addiction treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.).  [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the program.]]

You must not engage in any form of gambling (including, but not limited to, lotteries, on-line wagering, sports betting) and you must not enter any casino or other establishment where gambling is the primary purpose (e.g., horse race tracks, off-track betting establishments).

**9. Community Service**

You must complete ___ hours of community service within ___ months. The probation officer will supervise the participation in the program by approving the program (agency, location, frequency of participation, etc.). You must provide written verification of completed hours to the probation officer.

You must be employed and complete community service for a combination of 30 hours per week. The probation officer will supervise the participation in the community service program by approving the program (agency, location, frequency of participation, etc.).  You must provide written verification of completed community service hours to the probation officer.

**10. Cognitive Behavioral Treatment**

You must participate in a cognitive-behavioral treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). Such programs may include group sessions led by a counselor or participation in a program administered by the probation office. [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the program.]]

**11. Educational or Vocational Services**

You must participate in an educational services program and follow the rules and regulations of that program. Such programs may include high school equivalency preparation, English as a Second Language classes, and other classes designed to improve your proficiency in skills such as reading, writing, mathematics, or computer use. [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the program.]]

You must participate in a vocational services program and follow the rules and regulations of that program. Such a program may include job readiness training and skills development training. [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the program.]]

**12. Location Monitoring Technology to Monitor Compliance with Conditions of Supervision**

You will be monitored by the form of location monitoring technology indicated below for a period of __ months, and you must follow the rules and regulations of the location monitoring program. [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., week, month)] or [___ % of the costs of the program.]]

 __ Location monitoring technology at the discretion of the probation officer
 __ Radio Frequency (RF) Monitoring
 __ GPS Monitoring (including hybrid GPS)
 __ Voice Recognition

This form of location monitoring technology will be used to monitor the following restriction on your movement in the community:

  __You are restricted to your residence every day from _____ to _____ (Curfew).
  __You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the officer (Home Detention).
  __You are restricted to your residence at all times except for medical necessities and court appearances or other activities specifically approved by the court (Home Incarceration).
  __You must comply with the following condition: _____.

**13. Residential Reentry Center**

You must reside in a residential reentry center for a term of _____ days. You must follow the rules and regulations of the center.

**14. Intermittent Confinement**

You must serve a total of _____ days of intermittent confinement. The intermittent confinement shall be served for _____ consecutive (weekends or days) at the _____ facility beginning on (day), (date) at (time) and ending on (day), (date), no later than (time). You must follow the rules and regulations of the____ facility.

**15. Search and Seizure**

You must submit your person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation of release. You must warn any other occupants that the premises may be subject to searches pursuant to this condition.

The probation officer may conduct a search under this condition only when reasonable suspicion exists that you have violated a condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

**16. Immigration-Related Requirements**

You must [immediately report, continue to report, or surrender] to U.S. Immigration and Customs Enforcement and follow all their instructions and reporting requirements until any deportation proceedings are completed.

If you are ordered deported from the United States, you must remain outside the United States, unless legally authorized to re-enter. If you re-enter the United States, you must report to the nearest probation office within 72 hours after you return.

You must seek proper documentation from U.S. Immigration and Customs Enforcement authorizing you to work in the United States.

**17. Restrictions on Viewing Sexually Explicit Materials**

You must not view or possess any "visual depiction" (as defined in 18 U.S.C. § 2256), including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of "sexually explicit conduct" (as defined in 18 U.S.C. § 2256).

You must not view or possess any "visual depiction" (as defined in 18 U.S.C. § 2256) including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of "sexually explicit conduct" (as defined in 18 U.S.C. § 2256), that would compromise your sex offense-specific treatment.

**18. Sex Offense-Specific Assessment, Treatment, and Physiological Testing**

You must participate in a sex offense-specific assessment. [[You must pay the costs of the assessment.]  [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the assessment.]]

You must participate in a sex offense-specific treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). [[You must pay the costs of the program.] [You must pay [$___ per ___ (e.g., visit, week, month)] or [___ % of the costs of the program.]]

You must participate in plethysmograph testing as part of the required participation in a sex offense-specific assessment and/or treatment.

You must participate in visual response testing as part of the required participation in a sex offense-specific assessment and/or treatment.

**19. Polygraph for Sex Offender Management**

You must submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure that you are in compliance with the requirements of your supervision or treatment program.

**20. Computer and Internet Restrictions**

You must not possess and/or use computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communications or data storage devices or media.

You must not access the Internet.

You must not access the Internet except for reasons approved in advance by the probation officer.

You must submit your computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communications or data storage devices or media, to a search. You must warn any other people who use these computers or devices capable of accessing the Internet that the devices may be subject to searches pursuant to this condition. A probation officer may conduct a search pursuant to this condition only when reasonable suspicion exists that there is a violation of a condition of supervision and that the computer or device contains evidence of this violation. Any search will be conducted at a reasonable time and in a reasonable manner.

You must allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) you use.

To ensure compliance with the computer monitoring condition, you must allow the probation officer to conduct initial and periodic unannounced searches of any computers (as defined in 18 U.S.C. § 1030(e)(1)) subject to computer monitoring. These searches shall be conducted for the purposes of determining whether the computer contains any prohibited data prior to installation of the monitoring software; to determine whether the monitoring software is functioning effectively after its installation; and to determine whether there have been attempts to circumvent the monitoring software after its installation. You must warn any other people who use these computers that the computers may be subject to searches pursuant to this condition.