**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CR-20521-RNS-1**

UNITED STATES OF AMERICA

    **v.**

THEODORE FARNSWORTH,

        **Defendant.**

_____ /

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S RECONSIDERATION MOTION

The defendant is a serial fraudster who schemed to evade supervision while on pre-trial release.  He is currently detained, because after full briefing by the parties and an evidentiary hearing, the Court found he "consistently violated his conditions of release, in the manner of a person that does not believe the rules apply to him," and he "will not abide by any conditions of release."  (Order, ECF 94 at 4.)  Based on a robust record, the Court found "ample evidence that [the defendant] has no respect for the law or Court orders, that he has an established pattern of withholding and concealing information from law enforcement and others, and that neither his indictment nor his conditions of release deterred him from committing new crimes." (*Id*.)

While the defendant seeks reconsideration of the Court's Order, most of the record is not in dispute.  Rather, he moves on narrow grounds.  The Court should deny his motion, because even if his few arguments had merit (which they do not), they relate to only a fraction of the misconduct that led the Court to revoke his bond and would not change the outcome.  The Court should also deny his motion because it merely repeats and expands upon arguments the Court has already considered and rejected, and amounts to no more than disagreement with the Court's reasoning and ultimate conclusions in the revocation order, which are not proper grounds for reconsideration.

1

## BACKGROUND[1]

### *The Defendant Is Charged with Committing a Serious Fraud*

The indictment alleges that the defendant – who was the Chief Executive Officer and Chairman of a publicly traded company – played a leading role in an enormous fraud by repeatedly lying to investors about his company's core business and operations.  (*See* ECF 3.)  He knowingly promoted product offerings, technologies and capabilities that his company, Helios & Matheson Analytics Inc. ("HMNY"), did not have, serially making false and misleading statements in press releases, print and televised interviews.  (*Id*.)  And when he succeeded in manipulating the company's stock price and attracting new investors, the defendant used the company's newly-raised money to fund a lavish lifestyle.  (*Id*.)[2]

### *The Court Released the Defendant Subject to Certain Conditions*

On November 2, 2022, the defendant was indicted in this case, and on November 17, 2022, he was arraigned in this District.  The defendant's bond was set at $1,000,000.00 personal surety, and he was released with the following conditions:

- "Must not violate any federal, state or local law while on release in this case."
- "Should the defendant come in contact with law enforcement, he shall notify the U.S. Probation Officer within 72 hours."

---

[1] "Mot." refers to the Government's Motion to Revoke the Pre-trial Release of Defendant Theodore Farnsworth, filed under seal August 8, 2023 (redacted version filed at ECF 99-1); "Opp." refers to Defendant Theodore Farnsworth's Opposition to the Government's Motion to Revoke Pre-trial Release, filed under seal August 22, 2023 (redacted version filed at ECF 102-1); "Reply" refers to the Reply in Further Support of the Government's Revocation Motion, filed under seal August 29, 2023 (redacted version filed at ECF 99-3); "GEX" refers to the government's exhibits; "DEX" refers to the defendant's exhibits; and "Order" refers to the Court's Order on the Government's Motion to Revoke Pretrial Release of the Defendant Theodore Farnsworth, entered on October 4, 2023 (ECF 94).

[2] After HMNY petitioned for bankruptcy, the subsequently appointed bankruptcy trustee sued the defendant for breaching his fiduciary duties as CEO and Chairman by engaging in "reckless and self-indulgent spending" while the company suffered "massive losses".  *See generally In re HMNY*, Case No. 20-10242-smb, Adv. Proc. No. 20-1182-smb (filed June 5, 2020) (S.D. N.Y. Bankr.) (ECF 91).  In connection with his role as HMNY's CEO and Chairman, the defendant was also sued by: (i) the Federal Trade Commission ("FTC") for engaging in deceptive marketing of a subscription service and then deploying deceptive tactics aimed at preventing subscribers from using the service as advertised; and (ii) the U.S. Securities and Exchange Commission ("SEC") for securities fraud.  *See In the Matter of Farnsworth, et al.*, Docket No. C-4751 (filed Oct. 1, 2021) (FTC); *S.E.C. v. Farnsworth, et al.*, Case No. 22-cv-8226-KPF (filed Sept. 26, 2022) (S.D. N.Y.).

- "The defendant may travel to the Southern District Florida, the Northern District of New York, the Southern District of New York for purposes of conducting business, and the District of Columbia metropolitan area for purposes of meeting with counsel. He is also authorized to travel as needed to go between these districts."[3]
- "The defendant may travel throughout the United States as authorized by Pretrial Services in advance of any such travel, but without further leave of Court."
- "Report to Pretrial Services … as directed."

(ECF 13.)  The defendant signed his bond and expressly acknowledged that he had carefully read and understood his bond, knew he was obligated by law to comply with all of the terms of his bond, and was aware of the sanctions for violations of the bond (which include revocation of release and entry of an order of detention pursuant to 18 U.S.C. § 3148).  (*Id.* at 6.)

### *The Court Issued an Arrest Warrant with No Bond*

On July 28, 2023, the Probation Office submitted a pretrial service violation petition and, on that same day, the Court signed an arrest warrant with no bond.  (*See* Violation Memorandum dated July 28, 2023 ("Vio. Memo.").)  On August 1 and August 2, 2023, a Probation Officer repeatedly attempted to contact the defendant to arrange for him to come into the Probation Office and he did not respond.  As a result of the defendant's non-responsiveness, on August 2, 2023, law enforcement went to look for the defendant and, upon finding him, executed the arrest warrant.[4]

---

[3] The government did not object to allowing the defendant to travel from NDNY to SDFL.  (Opp. at 10-11.)  However, the government's acquiescence to the defendant's request that he be allowed to travel to SDFL was based on the defendant's representation that he had a second residence in Miami.  (*Id.*)  As recorded phone calls later revealed, the defendant did not have a home in SDFL.  Specifically, while in custody, the defendant made numerous recorded calls in which he implored his associates to help him obfuscate this falsehood by renting an apartment in his name as soon as possible.  (*See* Reply at 5, n.4 (citing GEX 24 at 15, 34, 39, 49-52).)  The defendant needed the rental so he could falsely claim that he had a residence in Miami when, in truth, he did not.  (*Id.*)

[4] On August 4, 2023, at the defendant's request (ECF 60), the Court amended the arrest warrant to permit the defendant to be temporarily released from custody on the morning of August 7, 2023 for the limited purpose of permitting him to participate in his mother's funeral services, which were scheduled to take place on August 7, 2023 and August 8, 2023 (ECF 63, 64).  The defendant was directed to self-surrender to the U.S. Marshals in the SDFL by August 9, 2023 at 3pm Eastern, which he did.  (*Id.*)

***The Revocation Hearing***

At the defendant's request, the Court scheduled the revocation hearing for September 7, 2023. (ECF 73.) As a result, the defendant and his counsel had around 30 days to prepare. In the month leading up the hearing, the parties submitted extensive briefing to the Court, including dozens of exhibits. (*See* Mot., Opp. and Reply; GEX 1-4, 6-12, 14-19, 21-30, 32, 33, 34, 35; DEX 1-6 and ECF 62.) At the revocation hearing, the government presented testimony from two witnesses: Probation Officer Michael Christopher (who supervised the defendant), and FBI Special Agent Todd Kaneshiro. Both were subject to vigorous cross-examination by defense counsel. (Sept. 7, 2023 Revocation Hearing Transcript ("09/07/2023 Tr.") at 6:13 – 98:9.) The revocation hearing lasted more than three hours.

At the conclusion, the Court found by clear and convincing evidence the defendant violated his conditions on multiple occasions. (*Id*. at 130 – 132.) The Court also found there are not any conditions of release that are sufficient. (*Id*. at 132.) Based on these findings, the Court revoked the defendant's pre-trial release and ordered him detained pending trial. (*Id*.)

***The Court's Order Revoking Bond and Detaining the Defendant***

In a written order dated October 3, 2023, the Court memorialized its findings and conclusions from the September 7, 2023 revocation hearing. (ECF 94.) Specifically, the Court found the government has shown by clear and convincing evidence that the defendant violated his conditions on multiple occasions and provided a "non-exhaustive" list of violations, including: (i) the defendant violated the condition requiring him to report as directed when he traveled from NDNY (where he resided) to SDFL (where he purportedly had a second residence) on multiple occasions without providing notice to PO Christopher; (ii) the defendant violated the condition requiring him to report as directed when he failed to provide to PO Christopher basic information

about his whereabouts when in SDFL; (iii) the defendant violated the condition requiring him to notify his Probation Officer within 72 hours of coming into any contact with law enforcement when he failed to report repeated law enforcement contacts arising from a series of domestic disputes; (iv) the defendant provided false information in written Pretrial Services Supervision Reports when he stated that he had no law enforcement contact when, in truth, he had; and (v) the defendant was dishonest with PO Christopher on multiple other occasions.  (*Id.* at 2-4.)  The evidence supporting each violation set forth in the Court's Order is set forth below:

<u>Violation No. 1</u>

The defendant's conditions required he report to his Probation Officer as directed.  (ECF 13.)  At the revocation hearing, PO Christopher testified that, at the defendant's initial intake meeting on November 22, 2022, PO Christopher directed the defendant to report when the defendant was leaving NDNY, including to travel to SDFL.  (Rev. Hr'g. Tr. at 9:5 – 9:19; 10:14 – 10:19; 80:14 – 80:21.)  PO Christopher's testimony, which the Court found credible (ECF 94 at 2), was corroborated by his contemporaneous notes from the meeting  (GEX 26).  PO Christopher explained that having basic information – like knowledge of the defendant's general whereabouts – was essential for him to properly supervise the defendant.  (Rev. Hr'g. Tr. at 9:24 – 10:6.)

PO Christopher further testified that, at his second meeting with the defendant on November 29, 2022, PO Christopher again directed the defendant to report when he was leaving NDNY, including to travel to SDFL.  (*Id.* at 12:19 – 13:17.)  This testimony too was corroborated by PO Christopher's contemporaneous notes from the meeting. (GEX 27.) PO Christopher explained he repeated the direction to report whenever the defendant leaves NDNY "because [the defendant's] case was a little bit different where he had the condition allowing him to travel to

other districts, which is not just a normal practice.  Usually when someone's released, they usually get to reside in the one distinct that they're released to."  (Rev. Hr'g. Tr. at 13:2 – 13:8.)

PO Christopher further testified that his direction was, in his view, "pretty simple" and that the defendant did not raise any issues or concerns at either the November 22 or November 29, 2023 meetings.  (*Id.* at 13:13 – 13:15.)

On July 10, 2023, PO Christopher unsuccessfully attempted to conduct a visit of the defendant at his NDNY residence.  (Vio. Memo. at 2.)  An individual at the residence, who identified himself as an employee of the defendant, told PO Christopher that the defendant was in Florida.  (*Id.*)  PO Christopher exchanged emails with the defendant but was not able to make contact with him by telephone until the next day.

When they eventually spoke, the defendant admitted that he was in Miami, Florida and told PO Christopher that: (i) he was unsure when he had arrived in Miami but believed it was around July 6 or 7; (ii) he was there on business; and (iii) he was not staying at his secondary residence but elsewhere.  (Rev. Hr'g. Tr. at 18:21 – 19:13.)  The defendant also told PO Christopher he was in Miami "working on his case".  (DEX 1 at 122.)  Evidence presented at the revocation hearing established that the defendant's statements to PO Christopher were false and misleading because, in truth: (i) the defendant had been in Miami between around May 26, 2023 and at least June 30, 2023; (ii) for at least part of his Miami trip, the purpose was to spend time with a male escort; and (iii) the defendant did not have a secondary residence in Miami or anywhere else in SDFL.  (Reply at 3-5, n.4 (citing GEX 18, 19, 23, and 24 at pp. 23, 34, 50, 69-70); Rev. Hr'g Tr. at 83:25 – 88:9.))

Based on this record, the Court correctly found that, "[d]espite [PO] Christopher's admonition, [the defendant] violated his conditions of release by traveling to Miami on multiple occasions without notifying [PO] Christopher".  (ECF 94 at 2.)

<u>Violation No. 2</u>

After the July 11, 2023 telephone call with the defendant, PO Christopher emailed the defendant three times directing him to provide records confirming what he had told PO Christopher about the nature and purpose of his July 2023 trip to Miami, the duration of his stay, and where he stayed.  (Rev. Hr'g. Tr. at 30:12 – 31:8; GEX 28, 29 and 30.)  The defendant ignored PO Christopher's directions.  (Rev. Hr'g. Tr. at 31:5 – 31:7.)  At the revocation hearing, PO Christopher explained why having such basic information about the defendant was necessary to effectively supervise the defendant:

> [I]f we have no knowledge of the Defendant's whereabouts under supervision and we don't know where he's living, where he's staying, where he's working, essentially, he's going unsupervised for an amount of time, which would be the equivalent of someone absconding more or less. We have no knowledge of their whereabouts. I could not be tracking police reports in another district if I don't know he's there. I couldn't be tracking, you know, any other types of concerns of ours if I have no clue where the person is.

(Rev. Hr'g. Tr. at 21:7 – 21:15.)  Even after the defendant was taken into custody, defense counsel still failed to provide to Probation or produce to the Court information corroborating what the defendant had told PO Christopher.  (ECF 94 at 3 ("to date, Farnsworth has yet to provide any of the requested information, despite the fact that he has had plenty of time to do so").)  The evidence the government produced at the revocation hearing makes clear why the defendant withheld this information from PO Christopher and the Court: it would have demonstrated that he had been lying to PO Christopher.  (Reply at 3-5, n.4 (citing GEX 18, 19, 23, and 24 at pp. 23, 34, 50, 69-70); Rev. Hr'g. Tr. at 83:25 – 88:9.))

Based on this record, the Court correctly found the defendant violated the condition requiring him to report as directed because he failed to provide PO Christopher with basic information about his whereabouts.  (ECF 94 at 3.)

Violation No. 3

At the revocation hearing, PO Christopher testified that, in his initial meetings with the defendant, he discussed the requirement that he must notify Probation within 72 hours of any law enforcement contact.  (Rev. Hr'g. Tr. at 13:18 – 15:21.)  PO Christopher further testified to his "normal practice" for explaining this condition:  "any time I speak with anyone on a pretrial or post supervision to explain to them law enforcement contact means anything … I tell them it's as simple as calling 911, a traffic accident.  I even go to the extent of telling people if you're calling 911 for a cat stuck in a tree, that's something you still report to a probation officer."  (*Id.*)

Beginning on or around May 5, 2023, the defendant had contact with law enforcement arising from domestic disputes with an individual, M.M..  (GEX 1, 2.)  The defendant and M.M., who lived together for years, accused each other of domestic violence and sought restraining orders against each other.  (*Id.*)  The defendant met with local law enforcement at the police department to submit a criminal complaint against M.M..[5]  Later the defendant was served by a deputy sheriff with the restraining order obtained by M.M..  (GEX 1 at  3-5; 90:8 – 91:17; GEX 35.)

At the hearing, PO Christopher testified that the defendant did not report any of these law enforcement contacts to Probation.  (Rev. Hr'g. Tr. at 23:12 – 28:6.  *See also* Vio. Memo. at 2.)  When, on July 11, 2023, PO Christopher questioned the defendant about whether he had any law enforcement contacts, the defendant initially lied and falsely claimed that he had not.  (Rev. Hr'g. Tr. at 23:12 – 23:23.)  After PO Christopher questioned him further, the defendant mentioned he

---

[5] As explained in detail in the Government's Motion and Reply, documentary evidence shows that the defendant submitted a false affidavit under penalty of perjury to initiate a criminal complaint against M.M.  (*See* Mot. at 13; Reply at 5-8; GEX 1 at 11-12.)  Specifically, evidence clearly shows that the defendant lied to police when he claimed that M.M. stole the defendant's 2021 Cadillac Escalade; in truth, the defendant purchased that car for M.M. as a gift.  (*See* Mot. at 13; Attachment A; Reply at 5-8; GEX 4, 7, 8, and 9.)  Moreover, audio and video recordings of the defendant's subsequent encounter with M.M. further support the inference that the defendant's allegations that M.M. stole his car were false and vindictive.  (GEX 21, 22.)

had called the police on M.M. and lied again, falsely claiming that he had reported this fact to PO Christopher when he had not.  (*Id.* at 23:20 – 25:13.)  PO Christopher later confirmed the defendant had not previously reported any law enforcement contacts.  (*Id.* at 26:8 – 26:24.)

At the revocation hearing, PO Christopher further testified that the information the defendant had concealed from Probation was critical to his supervision:

> Q. What would you have done differently if you had been given this information either on the form or within 72 hours?
>
> A. The whole situation, the law enforcement contact, would have been investigated. I would have contacted police and possibly victims and obviously reported this information to the Court if it was raised to that level.
>
> Q. How would it factor into your analysis in making recommendations to the probation office here and the Court about the Defendant's ability to remain on supervision?
>
> A. It would have impacted -- it would have definitely impacted if he reported that information and there was definitely concerns about is it possibly like a violence or any type of noncompliance going on with law enforcement or anything along those lines. That's information that would have affected his status.

(*Id.* at 35:10 – 35:24.)

Based on this record, the Court correctly found the defendant violated the condition requiring him to report to Probation within 72 hours any law enforcement contact.  (ECF 94 at 3.)  The Court found it "particularly egregious" the defendant lied to PO Christopher about the fact that he had not been in contact with law enforcement when, in truth, he had.  (ECF 94 at 3.)

<u>Violation No. 4</u>

In addition to lying to PO Christopher directly, the defendant repeatedly lied on written forms he was required to sign under penalty of perjury and submit to Probation as part of his supervision.  The forms, which the defendant was required to submit monthly (Rev. Hr'g. Tr. at 14:24 – 15:8), asked whether he had "been questioned by law enforcement or arrested since" his last report and prompted him to explain by providing additional details if the answer was "yes".

The defendant always marked "no" – even after he had contact with law enforcement as part of the ongoing domestic disputes with M.M.  (GEX 33, 34.)  And the defendant falsely signed a certification which each form stating: "I certify that all answers are complete and correct. I understand that a false statement may result in revocation of my release, in addition to prosecution under 18 U.S.C. § 1001." (*See* GEX 32, 33, 34; Rev. Hr'g. Tr. at 26:25 – 28:6; 31:11 – 36:18.)[6]

Based on this record, the Court found that the defendant again violated the condition requiring him to report to Probation within 72 hours any law enforcement contact.  (ECF 94 at 3.)

<u>Violation No. 5</u>

The defendant also engaged in a pattern of deception in his dealings with his probation officer, lying to him on multiple occasions.  For example, when questioned by PO Christopher about whether he was a defendant in any civil actions, the defendant falsely responded "no".  (Rev. Hr'g. Tr. at 28:7 – 30:8.)  When PO Christopher questioned the defendant about a specific matter, the defendant acknowledged that he was involved in a lawsuit with a construction company.  (*Id.*) The defendant, however, omitted to mention that he had also been sued for fraud in connection with the role he played in Vinco Ventures Inc. (which, like HMNY, was a publicly traded company).  (*Id.* at 88:10 – 90:7.)  In particular, the defendant lied about four actions accusing him of fraud: (i) *Vick v. Vinco Ventures*, No. A-23-868781-C (Nev. Dist. Ct. April 11, 2023); (ii) *Coulibaly v. Vanderbilt*, No. A-23-871337-B (Nev. Dist. Ct. May 25, 2023); (iii) *Ma v. Vinco Ventures, Inc.*, No. A-23-869011-B (Nev. Dist. Ct. April 20, 2023); and (iv) *Ficto Holdings LLC v. Zash Global Media and Entertainment Corp.*, No. 22-STCV-11217 (Cal. Sup. Ct. August 23, 2022).  The practical effect of concealing these civil actions from PO Christopher was to conceal new fraud allegations similar to those alleged in the pending indictment in this case.

---

[6] Every time the defendant made these false statements, he committed new crimes which constituted additional, independent violations of his conditions.

Based on this record, the Court found the defendant's responses to PO Christopher's questions "clearly appear[] calculated to obfuscate the truth" and that "nobody with [the defendant's] background and level of preparation could have honestly believed that they were providing a complete response to their probation officer in these circumstances." (ECF 94 at 3-4.) The Court noted, the defendant also lied to PO Christopher on other occasions.  For example, the defendant lied about having a second residence in SDFL when he did not.  (*Compare* Rev. Hr'g. Tr. at 12:19 – 13:17 *with* Reply at 3-5, n.4 (citing GEX 24 at 15, 34, 39, 49-52, 69-70).)[7]

At the hearing, the defendant also argued he should be given the opportunity to relocate to SDFL subject to the supervision of a new probation officer in the District and be required to seek Probation's preauthorization before leaving SDFL for any reason.  (Rev. Hr'g. Tr. at 128:25 – 129:24.)  The Court rejected the defendant's argument, finding the government had established by a preponderance of the evidence that the defendant will not abide by any conditions of release. (ECF 94 at 4.)  Specifically, the Court held that "the Government has provided ample evidence that [the defendant] has no respect for the law or Court orders, that he has an established pattern of withholding and concealing information from law enforcement and others, and that neither his indictment nor his conditions of release deterred him from committing new crimes."  (*Id.*)

The "ample evidence" the government presented at the revocation hearing included false and misleading statements the defendant made *in the last year* in several documents that he signed under penalty of perjury including: (i) the annual compliance report the defendant submitted as part of his settlement of the FTC's fraud suit against him (GEX 15); (ii) the affidavit he submitted

---

[7] In addition to the violations on which the Court expressly based its ruling, the government also presented evidence that the defendant committed state and federal crimes while on pre-trial release including: (i) knowingly making false statements in a sworn affidavit submitted to law enforcement in violation of Section 210.45 of the Penal Law of the State of New York; (ii) knowingly making false statements in monthly supervision reports in violation of 18. U.S.C. § 1001; (iii) patronizing an escort in violation of Section 230.04 of the Penal Law of the State of New York; and (iv) knowingly transporting an escort between Nevada, Florida and New York to pay him for sex in violation of 18 U.S.C. § 2421.  (*See, e.g.*, Mot. at 6, 12-14 (summarizing evidence); Reply at 5-8 (summarizing evidence); GEX 33, 34.)

to local law enforcement to initiate a criminal complaint against his former partner (GEX 1); (iii) the pretrial supervision reports he submitted to PO Christopher (GEX 33, 34); and (iv) the declaration he submitted to this Court in connection with these proceedings (DEX 2).  In his declaration to this Court, the defendant lied about employing M.M. (*id*. ¶ 5); lied about his ownership of the car that was the subject of his criminal complaint (*id*. ¶ 6); lied about the circumstances of his purported relationship with V.L. (*id*. ¶ 7); and lied about his communications with the Probation Office (*id*. ¶ 9).  The defendant also lied to the Court when he claimed he had a "home" in Florida when, in truth and in fact, he does not.  (*Compare* Opp. 11-13 *with* GEX 24 at 15, 34, 39, 49-52.)

In addition, in recorded calls the defendant made while in custody, he disparaged PO Christopher, calling him an "asshole" who wants to "bust his chops" because it is a "busy case", and he hatched a plan to evade PO Christopher's supervision by moving full time from NDNY to SDFL, where he believed Probation will be more lenient.  (GEX 24 at 6, 15, 17, 63)  The defendant told one associate: "if I have to move next to Miami, I will do it in a heartbeat if I fall under Miami jurisdiction. [T]his guy up here [USPO Christopher] is just an absolute prick."  (*Id.* at 7.)

### The Defendant's Motion for Reconsideration

On November 15, 2023, the defendant filed an unopposed motion asking District Judge Robert N. Scola, Jr. to retain jurisdiction of this matter for the limited purpose of hearing his anticipated reconsideration motion.  (ECF 107.)  The next day, on November 16, 2023, Judge Scola denied the defendant's motion, explaining that "[t]he Court does not lightly revoke a defendant's bond and did so in this case only after full briefing by the parties and a full hearing. Thus, this Court is highly unlikely to re-instate a bond."  (ECF 108.)

After waiting nearly three months, the defendant filed his anticipated reconsideration motion. (ECF 125.)  The defendant's motion only challenges the Court's findings with respect to two of the five violations of his conditions of release.  (*Id.*)  The defendant does not ask the Court to reconsider its findings that there was clear and convincing evidence that the defendant failed to notify PO Christopher about multiple law enforcement contacts, made false and misleading statements in written pretrial supervision reports, and repeatedly lied to Probation.  Moreover, the defendant repeats his request to be released in SDFL on modified conditions, but without addressing the Court's finding that the defendant will not abide by any conditions of release.  (*Id.*)

## STANDARD

Reconsideration is "an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002).  A court may grant reconsideration only when there is:  (i) "an intervening change in controlling law", (ii) "the availability of new evidence', or (iii) "the need to correct clear error or prevent manifest injustice".  *United States v. Dorvil*, No. 18-cr-60178, 2021 U.S. Dist. LEXIS 66432, at *1-2 (S.D. Fla. Apr. 6, 2021) (citing *Hood v. Perdue*, 300 Fed. Appx. 699, 700 (11th Cir. 2008)).  A motion to reconsider is "appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Kapila v. Grant Thornton, LLP*, No. 14-61194-CIV, 2017 U.S. Dist. LEXIS 134931, at *1 (S.D. Fla. Aug. 23, 2017) (quoting *Z.K. Marine Inc. v. M/V Archegetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (internal quotation marks omitted)).  A motion for reconsideration "is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." *Hood*, 300 Fed. Appx. at 700 (citation omitted).  "[T]he movant must do more than simply restate his or her previous arguments,

and any arguments the movant failed to raise in the earlier motion will be deemed waived." *Compania de Elaborados de Cafe v. Cardinal Cap. Mgmt., Inc.*, 401 F. Supp. 2d 1270, 1283 (S.D. Fla. 2003); *see also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (a party may not use a motion for reconsideration to "relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.") (quoting *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005)).

## ARGUMENT

### I.     THE DEFENDANT FAILS TO SET FORTH ANY GROUND WARRANTING RECONSIDERAITON

Reconsideration is not appropriate here because it would not change the Court's ultimate decision to revoke the defendant's pre-trial release and order him detained.  In its written order, the Court found that it was established by clear and convincing evidence that the defendant violated his conditions on multiple occasions and provided a "non-exhaustive" list of five violations.  (ECF 94.)  In his reconsideration motion, the defendant only challenged the Court's findings with respect to two violations.  (ECF 125.)  That is not a sufficient basis to warrant reconsideration of the Court's ultimate determination because the defendant does not dispute the Court's findings with respect to the remaining three violations – each of which is serious and constitutes an independent basis to revoke the defendant's pre-trial release.[8]

Reconsideration is also not warranted here because the defendant raises the same arguments that the Court has already considered and rejected in its order and merely expands upon them.  For example, the defendant previously argued:

> Mr. Farnsworth did not violate any travel-related bail condition imposed by the Court. The only times he did not notify his Probation Officer about his travel were when he traveled to Districts to which he was expressly authorized to travel without pre-approval, including

---

[8] The "new crimes" that the Court also found the defendant committed while on pre-trial release (ECF 94 at 4) also compel revocation.  (*See supra* n. 7.)

the Southern District of Florida. … The Government also argues Mr. Farnsworth violated some non-judicially imposed, unmemorialized condition because he did not provide information about the purpose of his recent Miami trip to his Probation Officer. We need not litigate what additional conditions were purportedly imposed by the Probation Officer. Whatever they may be, they were not violations of the Court's Bail Order and should not be a basis for revocation of pre-trial release.

(Opp. at 10-11.)  The defendant's reconsideration arguments are based on the same claim, namely defendant asserts that the Court-imposed conditions did not require him to provide Probation with notice when he was leaving NDNY to travel to SDFL or confirmation of his whereabouts; rather, these requirements were unilaterally – and improperly – imposed by Probation.  (*See, e.g.*, ECF 125 at 7.)   While the defendant now expands upon his earlier argument by claiming that Probation's imposition of these requirements was improper because it violated the defendant's due process, that does not change the defendant's core claim, which was previously considered and rejected by the Court.  *Dorvil*, 2021 U.S. Dist. LEXIS 66432, at *3 (denying reconsideration motion where defendant raised the same arguments that the court has already considered and rejected in its order and merely expands upon them).

At most, the defendant disagrees with the Court's interpretation of the condition that he report to Probation "as directed", which the Court understood to be a proper basis for his probation officer to require that the defendant provide notice when leaving NDNY to travel to SDFL.[9]   The Court also understood this condition to be a proper basis for the defendant's probation officer to require supporting documentation.  (Rev. Hr'g. Tr. at 130:17 – 130:21 ("I do believe he did not follow the directions of the probation officer by failing to submit verification of his Airbnb hotel and business purposes of his trip to the southern district in July and he had plenty of time to do so

---

[9] *See* ECF 94 at 2-3 ("Among Farnsworth's conditions of release was the requirement that he must report to Pretrial Services, as directed. [PO] Christopher testified that he informed Farnsworth that, as part of his conditions of release, he was required to notify Christopher prior to any travel outside of the Northern District of New York, including travel to the Southern District of Florida …. Despite Christopher's admonition, Farnsworth violated his conditions of release by traveling to Miami on multiple occasions without notifying Christopher.").

before his bond was revoked.")  Such disagreement is also not a proper ground for reconsideration. *Dorvil*, 2021 U.S. Dist. LEXIS 66432, at *3 (denying defendant's reconsideration motion where it "amounts to no more than disagreement  with the Court's reasoning and ultimate conclusions in the Order, which is not a proper basis for reconsideration"); *see also United States v. Guerriero*, No. 15-cr-60317, 2022 U.S. Dist. LEXIS 12526, at *3-4 (S.D. Fla. Jan. 24, 2022) ("[W]hen there is mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.") (quotations and citations omitted).  For any of these reasons, the defendant's reconsideration motion should be denied.

## II.   THE NOTICE REQUIREMENT WAS NOT IMPROPER AND DID NOT VIOLATE THE DEFENDANT'S DUE PROCESS RIGHTS

The defendant first argues that the magistrate judge did not impose as a condition a requirement that the defendant provide notice when leaving NDNY and that, instead, it was unilaterally imposed by Probation.  (ECF 125 at 8-13.)  The Court disagreed (ECF 94 at 2-3; Rev. Hr'g. Tr. at 130:17 – 130:21) – and for good reason.  In this case, the magistrate judge imposed a condition that the defendant report to Probation "as directed" (ECF 13), and in so doing, left it to Probation's discretion to determine how and when the defendant should report to his probation officer.  As explained by one of the authorities on which the defendant relies, "[r]eporting by the defendant to the probation officer is a core supervision strategy required for the probation officer to stay informed and implement controlling and correctional supervision strategies."  (ECF 125-3 at 16-19 ("Reporting to Probation Officer").)  Such a reporting requirement "imposes an obligation on the defendant to maintain contact with the probation officer" that "enables the probation officer to satisfy the statutory requirements to be responsible for any defendant known to be in the judicial district, instruct the defendant about the conditions of supervision specified by the sentencing court, keep informed of the conduct and condition of the defendant, report the defendant's conduct

and condition to the sentencing court, and aid the defendant and bring about improvements in his or her conduct and condition." (*Id.* at 16.)  The "required manner of reporting" and the "required frequency of reporting" is left to the discretion of the probation officer and includes requesting "supporting documentation" to verify basic facts about the defendant.  (*Id.* at 18 ("Supporting documentation to reporting may include, as appropriate, written documents to verify change in residence, employment, expenses, community service hours, attendance at a community-sponsored drug or alcohol support program, or automobile registration.").)  Here, the defendant's probation officer directed that the defendant provide notice when he was leaving the NDNY to travel to SDFL and that, upon his return, the defendant provide supporting documentation verifying basic facts about the defendant's trip.   This was an appropriate means of implementing the judicially-imposed condition that the defendant report to Probation "as directed" and the defendant does not cite to any authority that suggests otherwise.[10, 11]

The defendant next argues that the requirement he provide notice when leaving NDNY to travel SDFL restricted his right to travel freely and violated his due process rights.  (ECF 125 at 13-16.)  This too lacks merit.   The Eleventh Circuit has expressly rejected the defendant's argument that notice restricts travel.  *McGuire v. Marshall*, 50 F.4th 986, 1020 (11th Cir. 2022) ("Because a registrant may give notice immediately before departing on a trip, we reject Mr. McGuire's argument that the provision resembles probation or parole by restricting spontaneous travel.")  And none of the cases on which he purports to rely concerns a similar notice requirement, let alone finds that notice restricts travel.   The few cases cited by the defendant that relate to pre-

---

[10] The section of the "Overview of Probation and Supervised Release Conditions" that the defendant relies on relates to a condition not imposed here: a requirement that the defendant obtain preauthorization when leaving NDNY.  (ECF 125 at 10-11 (citing 125-3 at 19-21).)  As explained above, by requiring mere notice of his travel, the defendant's probation officer was properly implementing the reporting requirement imposed by the Court.

[11] The fact that the magistrate judge imposed on defendant's co-defendant a different set of conditions that expressly required notice when his co-defendant traveled to certain locations (including Mexico), does not undermine the legal basis for PO Christopher's direction that the defendant provide notice when leaving NDNY to travel to SDFL.

trial release concern restrictions on the places to which a defendant may travel or preauthorization requirements, not mere notice.  (*See* ECF 125 at n. 16 (citing *Evans v. Ball*, 168 F.3d 856, 861 (5th Cir. 1999); *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998)).[12]

The defendant also argues that any uncertainties should be resolved in the defendant's favor because "notice" is an ambiguous word.  (ECF 125 at 16-17.)  This argument should be rejected for several reasons.  *First*, it is directly contradicted by the record.  PO Christopher confirmed that he twice explained the notice requirement to the defendant in November 2022.  (Rev. Hr'g. Tr. at 13:13 – 13:15.)  And PO Christopher further confirmed that the defendant did not raise any issues or concerns on either occasion.  (*Id*.)  *Second*, if the defendant was actually confused about the meaning of the word "notice" after speaking with PO Christopher, the defendant could have moved the Court to clarify, modify or even eliminate the notice requirement.  He did not.  *Finally*, the defendant's belated suggestion that he did not understand the meaning of the word "notice" is simply incredible and, in light of his history of making false statements to law enforcement, his probation officer, and this Court, appears to be false.

### III.  THE COURT CONSIDERED ADDITIONAL CONDITIONS AND PROPERLY REJECTED THEM ON THE GROUND THAT THE DEFENDANT WAS UNLIKELY TO ABIDE

The defendant also argues that the Court erred by failing to consider additional conditions of pre-trial release prior to revoking the defendant's bond.  (ECF 125 at 17-23.)  Like his other arguments, this too is directly contradicted by the record.  Both the revocation hearing transcript and the Court's Order prove the Court considered the additional conditions proposed by the defendant and rejected them on the ground that the government had established by a preponderance that the defendant will not abide by any conditions of release.  (Rev. Hr'g. Tr. at 130-132; ECF

---

[12] The defendant also claims that notice is akin to a mandatory curfew.  (ECF 125 at 15.)  He does not explain how. Nor can he.  Notice does not restrict travel, *McGuire*, 50 F.4th at 1020; a mandatory curfew may.

94 at 3-4.)  Specifically, the Court held "the Government has provided ample evidence that [the defendant] has no respect for the law or Court orders, that he has an established pattern of withholding and concealing information from law enforcement and others, and that neither his indictment nor his conditions of release deterred him from committing new crimes." (*Id.*)  That "ample evidence" included witness testimony and documentary evidence showing the defendant repeatedly lied to the FTC, local law enforcement, the Probation Office, and the Court.  (*See* GEX 1, 15, and 24 at 15, 34, 39, 49-52; DEX 2 ¶¶ 5, 6, 7, and 9; Opp. at 11-13.)[13,14]

The defendant argues the Court should ignore its prior findings that he consistently violated his conditions and is unlikely to abide by any conditions of release so that he may better participate in preparation for trial.  (ECF 125 at 20-21.)  There is nothing unique about the defendant or his circumstances that requires he be released to participate in his defense while other similarly situated defendants remain detained.  In addition, he had nearly one year to review discovery and otherwise prepare for trial before he was detained and, while in custody, has had continued access to counsel.  There is no basis for the defendant to be given the special treatment he seeks here.

---

[13] The defendant argues 18 U.S.C. 3148 does not impose a "strict liability" standard that requires revocation based solely on the Court's finding that the defendant violated a condition.  (ECF 125 at 18.)  The Court, however, did not revoke the defendant's bond based solely on a finding that he violated his conditions.  Rather, the Court applied the correct standard, which included a separate, additional determination that the preponderance of evidence established that the defendant was unlikely to abide by any condition of release.  (ECF 94 at 3-4.)

[14] The defendant's reliance on *United States v. Buelvas* and *United States v. Colbert* are misplaced.  (ECF 125 at 18-19.)  The question in *Buelvas* was whether the defendant posed a risk of danger to the community, not whether the defendant was unlikely to abide by her conditions.  No. 21-cr-20090-BLOOM, 2023 U.S. Dist. LEXIS 112966, at *7 (S.D. Fla. June 29, 2023).  Moreover, in *Buelvas*, the government admitted there was no evidence that the defendant had ever been prone to violence and no reason to believe the defendant was going to follow thru on her threats.  (*Id.*)  Here, in stark contrast, the government provided ample evidence that the defendant is unlikely to abide by any conditions of release.  (ECF 94 at 3-4.)  *Colbert* similarly focused on risk of danger to the community, not whether the defendant was unlikely to abide by his conditions.  No. 3:15cr36-MCR, 2017 U.S. Dist. LEXIS 69183, at *9 (N.D. Fla. May 3, 2017).  Moreover, in *Colbert*, the court declined to revoke bond because Probation did not believe the defendant had violated his conditions.  *Id.*  Here, PO Christopher believed that the defendant violated his conditions to such a degree that the defendant had effectively absconded.  (Rev. Hr'g. Tr. at 21:4 – 21:18; 81:25 – 82:3.)

The defendant also argues, because he has been in custody for approximately six months, he now understands the need to strictly adhere to his conditions and "deserves" a second chance. (ECF 125 at 21-22.)  Recorded calls from his time in custody, however, demonstrate he continued to scheme in an effort to defraud Probation and the Court by obfuscating the truth about the fact that he did not actually have a residence in SDFL and evading any possibility of further supervision by PO Christopher in NDNY by setting up a temporary residence in SDFL.  (GEX 24.)  Also while in custody, he committed perjury by signing and submitting to this Court a false and misleading declaration containing numerous lies.  (Rev. Hr'g. Tr. at 114:22 – 115:14; DEX 2 ¶¶ 5, 6, 7, and 9.)  Based on this robust record, there can be no serious question the defendant will not comply with any condition or combination of conditions of release.

## CONCLUSION

For the foregoing reasons, the government respectfully requests the Court deny the defendant's reconsideration motion.

Respectfully submitted,

GLENN S. LEON, CHIEF
U.S. DEPARTMENT OF JUSTICE CRIMINAL
DIVISION, FRAUD SECTION

By:  */s/ Christopher Fenton*
Christopher Fenton
Lauren Archer
Matthew Reilly
Trial Attorneys
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Phone: (202) 320-0539
christopher.fenton@usdoj.gov

## **CERTIFICATE OF SERVICE**

I, Christopher Fenton, hereby certify that on February 23, 2024, I caused the foregoing to be filed under seal with the Clerk of Court in person and that I will cause a copy of the filing to be sent via email to the parties who have entered an appearance in this case.

By:     */s/ Christopher Fenton*
        Christopher Fenton
        Trial Attorney
        Florida Special Bar Number A5502969 (Fenton)
        U.S. Department of Justice
        Criminal Division, Fraud Section
        1400 New York Avenue, N.W.
        Washington, D.C. 20005
        Phone: (202) 320-0539
        Christopher.Fenton@usdoj.gov